Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Jacob R. Rosenbaum (SBN 313,190)
jacob.rosenbaum@knobbe.com
Christian D. Boettcher (SBN 342,950)
christian.boettcher@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Trove Brands, LLC
d/b/a The Blenderbottle Company

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROVE BRANDS, LLC d/b/a THE BLENDERBOTTLE COMPANY, a Utah limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>TRRS MAGNATE LLC d/b/a HYDRA CUP,<br><br>                    Defendant. | No. 2:22-cv-02222-TLN-CKD<br><br>**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Hon. Troy L. Nunley |

**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................. 2

    A. BlenderBottle And Its Patented Designs .................................................... 2

    B. Hydra Cup And Its Infringing Products ..................................................... 3

    C. Procedural History ...................................................................................... 5

III. ARGUMENT .......................................................................................................... 5

    A. The Court Should Construe The Asserted Claims By Referring To The Patent Figures ............................................................... 5

    B. The Court Should Defer Analyzing Functionality And The Prior Art Until The Jury Instruction Stage ................................................. 8

        1. The Court may address functionality and the prior art in its jury instructions. ................................................................. 8

        2. Deferring addressing functionality is particularly appropriate where the factual record is incomplete. ...................... 9

IV. CONCLUSION ..................................................................................................... 11

**TABLE OF AUTHORITIES**

**Page No(s).**

*180s, Inc. v. Gordini U.S.A., Inc.*,
  699 F. Supp. 2d 714 (D. Md. 2010) .................................................................. 7, 9, 11

*Blackberry Ltd. v. Typo Prod. LLC*,
  2014 WL 6603126 (N.D. Cal. Nov. 20, 2014) ................................................................ 6

*Crocs, Inc. v. Int'l Trade Comm'n*,
  598 F.3d 1294 (Fed. Cir. 2010) ....................................................................................... 6

*Deckers Outdoor Corp. v. Rue Servs. Corp.*,
  2014 WL 12588481 (C.D. Cal. Aug. 29, 2014) ............................................................. 9

*Dexas Int'l, Ltd. v. Off. Max Inc.*,
  2009 WL 252164 (E.D. Tex. Jan. 30, 2009) ............................................................... 7, 9

*Dobson v. Dornan*,
  118 U.S. 10, 14, 6 S.Ct. 946, 30 L.Ed. 63 (1886) ......................................................... 6

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) (*en banc*) ............................................................. 6, 8, 9

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  796 F.3d 1312 (Fed. Cir. 2015) ....................................................................................... 7

*Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*,
  2018 WL 3773986 (S.D.N.Y. Aug. 9, 2018) ............................................................ 9, 11

*HR U.S. LLC v. Mizco Int'l, Inc.*,
  2009 WL 890550 (E.D.N.Y. Mar. 31, 2009) ................................................................. 7

*Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*,
  2012 WL 3031150 (S.D.N.Y. July 25, 2012) ................................................................ 7

*Mondo Polymers Techs., Inc. v. Monroeville Indus. Moldings, Inc.*,
  2009 WL 230123 (S.D. Ohio Jan. 30, 2009) ................................................................. 7

*Nike, Inc. v. Skechers U.S.A., Inc.*,
  2019 WL 12528983 (C.D. Cal. Mar. 28, 2019) ......................................................... 9, 10

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997) ....................................................................................... 7

*Richardson v. Stanley Works, Inc.*,
  597 F.3d 1288 (Fed. Cir. 2010) ....................................................................................... 7

*Sport Dimension, Inc. v. Coleman Co.*,
  820 F.3d 1316 (Fed. Cir. 2016) ....................................................................................... 8

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

*Vertical Tank, Inc. v. BakerCorp*,
 2019 WL 2207668 (E.D. Cal. May 22, 2019) ...................................................... 6, 9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26 ................................................................................5

Pursuant to the Court's May 10, 2023, Scheduling Order, Plaintiff Trove Brands, LLC ("BlenderBottle") hereby submits this memorandum on the construction of the design patent claims asserted in this case.

## I. <u>INTRODUCTION</u>

BlenderBottle brought this action after discovering that Defendant TRRS Magnate LLC ("Hydra Cup") had slavishly copied BlenderBottle's iconic design for shaker bottles. Shaker bottles, commonly known as "shakers," are beverage containers for mixing and consuming powders and liquids. Hydra Cup's blatant copying of BlenderBottle's shaker design infringes BlenderBottle's design patents, violates BlenderBottle's trade dress rights, and transgresses state unfair competition laws.

BlenderBottle has asserted three design patent claims in this action, one from each of the three asserted design patents. As is common in design patents, the asserted claims have almost no verbal content. They simply define the metes and bounds of the claimed ornamental design by pointing to the illustrations in the patents.

Hydra Cup has not revealed what claim constructions it intends to request from the Court. However, the Court should not construe the asserted claims by attempting to craft detailed written descriptions of the patented designs. The Federal Circuit has warned that doing so risks improperly emphasizing certain aspects of the claimed ornamental design when, in fact, a design patent claim covers the patented design as a whole. Mindful of this risk, many federal courts have eschewed verbal characterizations and construed design patent claims by pointing to the figures of the patent. That approach is appropriate here.

Hydra Cup has asked the Court to "limit[] the scope of the design patents to non-functional features as well as features not claimed by prior art." Dkt. 23 at 5. However, the Federal Circuit has flatly rejected the notion that courts should exclude features from a claim construction merely because they perform a function or appear in the prior art. Rather, the court has stated that district courts "may" guide the jury's infringement analysis by discussing the functionality of the claimed design or the prior art. But, as

-1-

numerous district courts have concluded, this guidance should be provided in jury instructions, not through a claim construction order early in the case. This is especially true where, as here, the record is insufficiently developed to assess the defendant's functionality defense. Accordingly, the Court should defer providing guidance to the jury on functionality and the prior art until it prepares its jury instructions.

## II.  FACTUAL BACKGROUND

### A.  BlenderBottle And Its Patented Designs

BlenderBottle is a pioneer in the shaker bottle industry. BlenderBottle has been developing and selling shakers for over twenty years. BlenderBottle's visually appealing shakers are wildly popular with outdoor enthusiasts, gym goers, and serious protein drinkers. They are sold in more than 90 countries worldwide and in over 60,000 retail locations, including in major retail chains such as Costco, Sam's Club, Target, Walmart, GNC, Amazon, Dick's Sporting Goods, and Vitamin Shoppe. BlenderBottle's shakers have been lauded by consumers and the media, including *Good Morning America*, *Reader's Digest*, *Self*, *the Today Show*, *Healthy Living*, *Better Homes & Gardens, Muscle & Fitness, Shape*, *Good Housekeeping* and *Men's Fitness*. Celebrities such as Justin Bieber, Hugh Jackman, Scarlett Johansson, Shia LaBeouf, and Terry Crews have been photographed using BlenderBottle shakers.

The United States Patent and Trademark Office ("USPTO") has granted BlenderBottle multiple design patents for its innovative shaker designs. At issue in this case are United States Design Patent No. D510,235 (the "D235 Patent"), which issued on October 4, 2005; United States Design Patent No. D696,551 (the "D551 Patent"), which issued on December 31, 2013; and United States Design Patent No. D697,798 (the "D798 Patent"), which issued on January 21, 2014. Exemplary figures from these design patents are shown below.

/ / /

/ / /

/ / /



**D235 Patent**               **D551 Patent**               **D798 Patent**

Declaration of Jacob R. Rosenbaum ("Rosenbaum Decl.") Exs. 4–6.[1]

**B.      Hydra Cup And Its Infringing Products**

Defendant Hydra Cup sells shakers that look nearly identical to BlenderBottle's iconic shaker designs. For example, images of Hydra Cup shakers are shown below next to figures from the D235 Patent and D551 Patent.



**D235 Patent**         **Hydra Cup**         **Hydra Cup**         **Hydra Cup**

---

[1] All numbered exhibits are attached to the Declaration of Jacob Rosenbaum ("Rosenbaum Decl.").

-3-




**D551 Patent Lid**             **Hydra Cup Lid**

Rosenbaum Decl. ¶¶ 3–8, Exs. 1–6. The incredible similarity between the parties' shaker bottles is all the more striking because the marketplace contains a great diversity of shaker bottle designs. A selection of third-party shakers is presented below. *Id.* ¶¶ 29–44, Exs. 17–24.



**Third-Party Shakers**

C. **Procedural History**

After BlenderBottle learned that Hydra Cup was infringing its design-patent and trade-dress rights by selling shaker products almost identical to BlenderBottle's shakers, BlenderBottle sent Hydra Cup a series of cease-and-desist letters. *Id.* ¶ 2, Exs. 1–3. BlenderBottle's attempts to resolve the parties' dispute without litigation were unsuccessful, and BlenderBottle was forced to commence the present action on December 14, 2022. Dkt. 1.

On April 25, 2023, the parties filed their joint report pursuant to Federal Rule of Civil Procedure 26(f). In that report, Hydra Cup requested a claim construction hearing and briefing schedule "to determine the meaning and scope of the asserted design patents, including by limiting the scope of the design patents to non-functional features as well as features not claimed by prior art." Dkt. 23 at 5. However, Hydra Cup did not identify the claim constructions it intends to seek from the Court. *Id.* at 4–6. As of the filing of this memorandum, Hydra Cup still has not revealed what constructions it wishes the Court to adopt. Moreover, notwithstanding BlenderBottle's interrogatories and its repeated requests for substantive responses to those interrogatories, Hydra Cup has only pointed to components of the design and dismissed them as "functional." Hydra Cup has not disclosed what functions it contends are performed by particular features, or where in the prior art features of the patented design may be found. Rosenbaum Decl. ¶¶ 9–27.

III. **ARGUMENT**

A. **The Court Should Construe The Asserted Claims By Referring To The Patent Figures**

Although Hydra Cup has not identified the claim constructions it seeks, it is clearly inviting the Court to prepare a verbal construction that "limit[s] the scope of the design patents" by describing which features are encompassed by the claim and which are not. Dkt. 23 at 5. The Court should decline the invitation.

///

-5-

In its seminal decision in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*), the Federal Circuit warned of the risks of trying to describe a patented design with words:

> As the Supreme Court has recognized, a design is better represented by an illustration "than it could be by any description and a description would probably not be intelligible without the illustration." *Dobson v. Dornan*, 118 U.S. 10, 14, 6 S.Ct. 946, 30 L.Ed. 63 (1886). The Patent and Trademark Office has made the same observation. *Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006) ("[A]s a rule the illustration in the drawing views is its own best description."). Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to "construe" a design patent claim by providing a detailed verbal description of the claimed design.

*Id.* at 679.

The court also emphasized "the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Id.* at 680. A construction that unduly emphasizes particular features of the claimed design, rather than the patented design as a whole, is legally erroneous and must be reversed. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302–03 (Fed. Cir. 2010) ("This case shows the dangers of reliance on a detailed verbal claim construction. The claim construction focused on particular features of the ′789 patent design and led the administrative judge and the Commission away from consideration of the design as a whole.").

Aware of the risks inherent in any written description of the claimed design, district courts routinely decline to construe design patent claims or simply construe them by referring to the figures of the patent. *See, e.g., Vertical Tank, Inc. v. BakerCorp*, 2019 WL 2207668, at *20 (E.D. Cal. May 22, 2019) (construing the claims by referring to the patents' figures); *Blackberry Ltd. v. Typo Prod. LLC*, 2014 WL 6603126, at *6

(N.D. Cal. Nov. 20, 2014) (declining to construe the claim verbally); *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, 2012 WL 3031150, at *5 (S.D.N.Y. July 25, 2012) ("The Court construes Hutzler's claims as the ornamental design for an onion container as shown in figures 1 through 3 of the '114 Patent"); *180s, Inc. v. Gordini U.S.A., Inc.*, 699 F. Supp. 2d 714, 728–30 (D. Md. 2010) ("I construe the '001 design patent claim as simply the seven figures included in the patent. A verbal construction is unnecessary as these illustrative figures speak for themselves."); *HR U.S. LLC v. Mizco Int'l, Inc.*, 2009 WL 890550, at *9 (E.D.N.Y. Mar. 31, 2009); *Mondo Polymers Techs., Inc. v. Monroeville Indus. Moldings, Inc.*, 2009 WL 230123, at *1–2 (S.D. Ohio Jan. 30, 2009); *Dexas Int'l, Ltd. v. Off. Max Inc.*, 2009 WL 252164, at *4–5 (E.D. Tex. Jan. 30, 2009).

This Court should likewise decline to construe the asserted claims with verbal descriptions and instead simply refer to the illustrations in the patents' figures. Thus, for example, the Court should construe the claim of the D235 Patent as "The ornamental design for a bottle, as shown in Figures 1–7 of the patent." *See* Ex. 4. The claim of the D551 Patent should be construed as "The ornamental design for a bottle lid with an integrated handle, as shown in Figures 1–6 of the patent." *See* Ex. 5. And the claim of the D798 Patent should be construed as "The ornamental design for a container, as shown in Figures 1–7 of the patent." *See* Ex. 6.

Hydra Cup's proposal to "limit[] the scope of the design patents to non-functional features" is contrary to law. A functional feature may be designed with ornamental aspects or contribute to the overall ornamental visual impression produced by the patented design. *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015)'; *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010) (functional elements of a multi-tool had protectable ornamental aspects, such as the diamond-shaped flare of the crowbar); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (functional tail fins contributed to a ball's ornamental, rocket-like appearance). Accordingly, it is error to exclude features from the scope of a design patent claim merely because they serve a functional purpose.

*Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016). Doing so "improperly convert[s] the claim scope of the design patent from one that covers the overall ornamentation to one that covers individual elements." *Id.* at 1322.

In sum, the Court should adopt the "preferable course" and decline to construe the asserted patent claims with written descriptions of the patented designs. The Court should instead construe the claims by referring to the patents' illustrations.

### B. The Court Should Defer Analyzing Functionality And The Prior Art Until The Jury Instruction Stage

Hydra Cup has urged the Court to identify aspects of the patented designs that are functional or that appear in the prior art. For the reasons discussed below, if the Court elects to analyze functionality or the prior art, it should do so in connection with preparing the jury instructions in this case.

#### 1. The Court may address functionality and the prior art in its jury instructions.

The Federal Circuit explained in *Egyptian Goddess* that, while the "preferable course" is to decline to construe design patent claims with verbal descriptions, a district court can guide the fact finder in understanding the prior art and the functional aspects of the patented design. *Egyptian Goddess*, 543 F.3d at 679–680. The court stated:

> While it may be unwise to attempt a full description of the claimed design, a court ***may find it helpful*** to point out, ***either for a jury or in the case of a bench trial*** by way of describing the court's own analysis, various features of the claimed design as they relate to the accused design and the prior art. … Apart from attempting to provide a verbal description of the design, ***a trial court can usefully guide the finder of fact*** by addressing a number of other issues that bear on the scope of the claim. Those include such matters as describing the role of particular conventions in design patent drafting, such as the role of broken lines; assessing and describing the effect of any representations that may have been made in the course of the prosecution history; and distinguishing between those features of the claimed design that are ornamental and those that are purely functional….

-8-

*Id*. at 680 (citations omitted) (emphasis added).

As the emphasized text shows, the Federal Circuit advised district courts that they "may find it helpful" to guide "a jury" or "the finder of fact" in considering a number of matters, including the relationship between features of the patented design and the prior art, and the distinction between ornamental features and purely functional features of the patented design. *Id.* Because the aim is to assist the jury, the logical time to perform such an analysis is during preparation of the jury instructions. Indeed, district courts routinely do just that. *See, e.g., Nike, Inc. v. Skechers U.S.A., Inc.*, 2019 WL 12528983, at *8 (C.D. Cal. Mar. 28, 2019) (declining to construe the claims, but stating that it "may, ultimately, be appropriate to guide jurors about the scope of the claim in other ways" such as in jury instructions addressing functionality); *Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 2018 WL 3773986, at *15 (S.D.N.Y. Aug. 9, 2018) (inviting the parties to address "whether the Court should take up the functional/nonfunctional analysis at summary judgment or in pretrial briefing concerning jury instructions"); *Deckers Outdoor Corp. v. Rue Servs. Corp.*, 2014 WL 12588481, at *3 (C.D. Cal. Aug. 29, 2014) ("At the appropriate time, the Court will provide instructions to guide the jury in making [the functionality] determination."); *180s, Inc. v. Gordini U.S.A., Inc.*, 699 F. Supp. 2d 714, 728–30 (D. Md. 2010); *Dexas Int'l, Ltd. v. Off. Max Inc.*, 2009 WL 252164, at *4–5 (E.D. Tex. Jan. 30, 2009). Thus, if this Court is inclined to address functionality or the prior art, it should do so at the jury-instruction stage of the case.

### 2. Deferring addressing functionality is particularly appropriate where the factual record is incomplete.

Deferring analyzing functionality is particularly appropriate where the factual record at the claim construction stage insufficiently developed to allow the Court to resolve the many fact issues involved in an assessment of functionality. *See Nike,* 2019 WL 12528983, at *8; *Vertical Tank,* 2019 WL 2207668, at *19–20.

/ / /

-9-

In *Nike*, the parties disputed whether the "toe spring" in Nike's patented shoe design was purely functional or whether its specific implementation in the Nike design was also ornamental. *Nike,* 2019 WL 12528983, at *6-7. However, as Skechers first raised the issue in its responsive brief, Nike was unable to address it. The court concluded that the "record is not sufficiently developed regarding the parties' specific disputes as to whether the 'toe springs' of the Asserted Patents are purely functional. To the extent the dispute continues and is relevant to the issue for trial, it is something best addressed through proposed jury instructions." *Id.* at *7.

As in *Nike*, the record in the present case is too undeveloped for the Court to determine which aspects of the patented designs are functional. Indeed, Hydra Cup has not even correlated specific aspects of the patented design with specific functions that those aspects allegedly perform. For example, Hydra Cup states in conclusory fashion that the "functional aspects of the design include" the "cylindrical cup." Ex. 7, 21:21–24. But Hydra Cup never explains what function the cylindrical cup allegedly performs. *See generally id.* Does the alleged function relate to the mixing process? Or perhaps to the consumer's ability to hold the shaker? Hydra Cup never explains its position. And while BlenderBottle has asked for a more meaningful response, Hydra Cup has simply flouted BlenderBottle's interrogatory and its repeated requests for a substantive response. Rosenbaum Decl. ¶¶ 11–27. As a result, the parties have conducted no meaningful discovery on Hydra Cup's still-undisclosed functionality defense. To say the record is undeveloped is therefore a gross understatement.

Hydra Cup itself has argued it is too early in the case to substantively address issues like functionality. Just three weeks ago, Hydra Cup provided the following third supplemental response to BlenderBottle's first set of interrogatories:

> Hydra Cup further responds to the Interrogatory as follows: Hydra Cup is diligently working on its Contentions and Disclosure that will properly answer this interrogatory, there are so many claims, defenses, and issues in this case that it is taking extra time to properly prepare the contentions

> and disclosure[s].  Additionally, both parties are just now producing their responsive documents to the respective opposing side, so Hydra Cup needs time to update its ongoing draft of its Contentions and Disclosures with the new information learned from BlenderBottle's produced documents.  Hydra Cup reserves the right to supplement its Response as discovery is in its early stages and ongoing.

Ex. 16; Rosenbaum Decl. ¶ 26.  Thus, just three weeks ago, Hydra Cup was unwilling to disclose its contentions on validity issues – such as what functions are allegedly performed by particular features of the patented designs – because "discovery is in its early stages." *Id.*  This confirms that construing the claims now, based on the current undeveloped record, would be premature.

If the Court elects to analyze the functionality of BlenderBottle's patented designs, it should do so in connection with preparing jury instructions.  By then, Hydra Cup presumably will have revealed its position on functionality, discovery will be complete, and the parties' experts will have had an opportunity to review and analyze the evidence adduced in discovery.  At present, as Hydra Cup itself observed, the case is still in its early stages.  Discovery will close on May 30, 2024, the deadline to file dispositive motions is July 18, 2024, and no specific trial date has been set.  Dkt. 29; Rosenbaum Decl. ¶ 28.  "[W]ith no trial on the immediate horizon, there remains ample time to sort out what guidance, if any, this Court ought to provide a jury." *Focus*, 2018 WL 3773986, at *15; *see also 180s*, 699 F. Supp. 2d at 730 (because discovery was ongoing, "[t]here is therefore no rush to distinguish the claim's ornamental and functional features").

## IV.  CONCLUSION

For the foregoing reasons, the Court should decline to construe the asserted claims with a verbal description or analyze the functionality of those claims.  The Court should instead construe the claims by referring to the figures in the patents, and should defer any analysis of the functionality issue until the jury-instruction stage.

/ / /

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 30, 2023    By: */s/ Jacob R. Rosenbaum*
                                Ali S. Razai
                                Jacob R. Rosenbaum
                                Christian D. Boettcher

Counsel for Plaintiff TROVE BRANDS, LLC d/b/a THE BLENDERBOTTLE COMPANY

# CERTIFICATE OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On November 30, 2023, I served **PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF** on defendant TRRS Magnate LLC d/b/a Hydra Cup shown below via EMAIL:

MEGHAN PRATSCHLER
meghan@meghantheattorney.com
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Telephone: (415) 335-9226

CASEY SCOTT MCKAY
casey@mclaw.io
1441 U St. NW, Suite 712
Washington, DC, D.C. 20009
Telephone: (202) 743-1972

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 30, 2023, at San Diego, California.

*/s/ Estefania Munoz*
Estefania Munoz