# EXHIBIT A

1 | ~~Paul A. Stewart (SBN 153,467)~~
   | ~~paul.stewart@knobbe.com~~
2 | Ali S. Razai (SBN 246,922)
   | ali.razai@knobbe.com
3 | Sean M. Murray (SBN 213,655)
   | sean.murray@knobbe.com
4 | Jacob R. Rosenbaum (SBN 313,190)
   | jacob.rosenbaum@knobbe.com
5 | Christian D. Boettcher (SBN 342,950)
   | christian.boettcher@knobbe.com
6 | KNOBBE, MARTENS, OLSON & BEAR, LLP
   | 2040 Main Street
7 | Fourteenth Floor
   | Irvine, CA  92614
8 | Phone: (949) 760-0404
   | Facsimile: (949) 760-9502
9 |
10 | Attorneys for Trove Brands, LLC
    | d/b/a The Blender~~B~~bottle Company
11 |
12 |
13 | IN THE UNITED STATES DISTRICT COURT
14 | FOR THE EASTERN DISTRICT OF CALIFORNIA
15 |

| | |
|---|---|
| TROVE BRANDS, LLC d/b/a THE BLENDERBOTTLE COMPANY, a Utah limited liability company, | ~~Civil Action~~ No. 2:22-cv-02222-TLN-CKD |
| Plaintiff, | **~~FIRST~~ SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESGINATION OF ORIGIN, AND UNFAIR COMPETITION** |
| v. | |
| TRRS MAGNATE LLC d/b/a HYDRA CUP, a California limited liability company, and Thomas Raymus, an individual, | **DEMAND FOR JURY TRIAL** |
| Defendant~~s~~. | Hon. Troy L. Nunley |

16
17
18
19
20
21
22
23
24
25
26
27
28

-1-

Plaintiff Trove Brands, LLC, d/b/a The BlenderBottle Company ("BlenderBottle®") hereby complains of TRRS Magnate LLC d/b/a Hydra Cup ("Hydra Cup" ~~or "Defendant"~~) and Thomas Raymus (collectively, "Defendants") and alleges as follows:

## I. NATURE OF THE ACTION

1. BlenderBottle® seeks injunctive relief and damages for acts of patent infringement, trade dress infringement, false designation of origin, and unfair competition, engaged in by Defendants in violation of the laws of the United States and the State of California.

## II. PARTIES

2. Plaintiff Trove Brands, LLC, doing business as the BlenderBottle Company is a limited liability company organized and existing under the laws of the State of Utah, with its principal place of business located at 250 South 850 East, Lehi, Utah 84043.

3. BlenderBottle® is informed and believes and, based thereon, alleges that Defendant TRRS Magnate LLC doing business as Hydra Cup is a limited liability company organized and existing under the laws of the State of California, with a principal place of business at 1433 Moffat Blvd., Ste. #13, Manteca, California 95336.

~~3.~~4. BlenderBottle® is informed and believes and, based thereon, alleges that Defendant Thomas Raymus is an individual who resides in this judicial district at 2328 Paramount Lane, Manteca, California 95337.

## III. JURISDICTION AND VENUE

~~4.~~5. This Court has original subject matter jurisdiction over the claims in this action that relate to patent infringement, trade dress infringement, false designation of origin, and federal unfair competition pursuant to 35 U.S.C. §§ 271 and 281, 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1114, 1116, 1121(a), and 1125(a), as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims that arise under state statutory and common law pursuant to 28 U.S.C. §

-1-   **SECOND** AMENDED COMPLAINT

1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

5.6. This Court has personal jurisdiction over Defendants because Defendants each reside in this judicial district or Defendant haves a principal place of business in this judicial district, and each of the Defendants has a continuous, systematic, and substantial presence within this judicial district. For example, Defendants haves been selling and offering for sale infringing products in this judicial district, and committing acts of infringement in this judicial district, including but not limited to, selling infringing products to consumers and/or retailers in this district and selling into the stream of commerce knowing such products would be sold in California and this district. These acts form a substantial part of the events or omissions giving rise to BlenderBottle®'s claims.

6.7. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (d), and 1400(b) because each of the Defendants resides in this judicial district, has a principal place of business located within this district, and because each of the Defendants has committed acts of infringement by offering to sell and/or selling infringing products in this judicial district, and because Defendant resides in this district.

## IV. GENERAL ALLEGATIONS

7.8. BlenderBottle® revolutionized the way dietary supplements are mixed and consumed. Through the tireless efforts of its designers and engineers over nearly two decades, BlenderBottle® has pioneered innovative technology and path-breaking designs to create premium products that help simplify everyday life. Available in more than 90 countries worldwide and in over 60,000 retail locations, BlenderBottle®'s shakers have become the go-to products for outdoor enthusiasts, gym goers, serious protein drinkers and more. Products embodying BlenderBottle®'s proprietary designs and technology have been lauded by consumers and the media, including *Good Morning America*, *Reader's Digest*, *Self*, *the Today Show*, *Men's Fitness*, and others.

8.9.    BlenderBottle® protects its substantial investment in innovation and design from imitators with its intellectual property rights.

9.10.   On October 4, 2005, the USPTO duly and lawfully issued United States Design Patent No. D510,235 (the "D235 Patent"), titled "BOTTLE."  BlenderBottle® is the exclusive licensee of the D235 Patent and has been granted all rights thereunder, including the right to sue for past infringement and standing to enforce the D235 Patent. A true and correct copy of the D235 Patent is attached hereto as **Exhibit 1**.

10.11. On December 31, 2013, the USPTO duly and lawfully issued United States Design Patent No. D696,551 (the "D551 Patent"), titled "BOTTLE LID HAVING INTEGRATED HANDLE."  BlenderBottle® is the exclusive licensee of the D551 Patent and has been granted all rights thereunder, including the right to sue for past infringement and standing to enforce the D551 Patent.  A true and correct copy of the D551 Patent is attached hereto as **Exhibit 2.**

11.12. On January 21, 2014, the USPTO duly and lawfully issued United States Design Patent No. D697,798 (the "D798 Patent"), titled "CONTAINER." BlenderBottle® is the exclusive licensee of the D798 Patent and has been granted all rights thereunder, including the right to sue for past infringement and standing to enforce the D798 Patent.  A true and correct copy of the D798 Patent is attached hereto as **Exhibit 3.**

12.13. Defendants manufactures, uses, sells, offers for sale, and/or imports into the United States shakers, agitators, and lids that have infringed BlenderBottle®'s patent rights, including the D235 Patent, D551 Patent, and D798 Patent.

13.14. BlenderBottle® manufactures and sells shakers bearing a distinctive trade dress in the overall design of its shaker bottle lid (the "Lid Trade Dress").  A picture of BlenderBottle®'s Lid Trade Dress is depicted below.

1
2
3
4
5



6   ~~14.~~15. BlenderBottle® has also obtained U.S. Trademark Registration No.

7   6,800,019 for its lid trade dress (the "Lid Trade Dress").  A true and correct copy of

8   U.S. Trademark Registration No. 6,800,019 is attached hereto as **Exhibit 4**.

9   ~~15.~~16. U.S. Trademark Registration No. 6,800,019 is valid, unrevoked, and on

10  the Principal Register.  As such, BlenderBottle® is entitled to a presumption that the Lid

11  Trade Dress is valid and enforceable.

12  ~~16.~~17. The Lid Trade Dress is a bottle lid with a recessed domed top from which

13  a conical spout protrudes on one side and a pair of brackets on the opposing side and

14  the brackets host a pivoting arm containing a circular spout closure element.

15  ~~17.~~18. BlenderBottle® manufactures and sells shakers bearing a distinctive trade

16  dress in the overall design of its shaker bottle (the "Bottle Trade Dress").  An example

17  of BlenderBottle®'s Bottle Trade Dress is depicted below.

18
19
20
21
22
23
24

25  ~~18.~~19. The Bottle Trade Dress includes, but is not limited to: a tall cylindrical

26  form; a top lid element with a tall shoulder; a recessed domed top from which a conical

27  spout protrudes on one side and a pair of brackets on the opposing side; and the brackets

28  host a pivoting arm containing a circular spout closure element.

-4-   **SECOND AMENDED COMPLAINT**

19.20. The Bottle Trade Dress serves to identify and distinguish BlenderBottle®'s products from those of others.  BlenderBottle® has strong common law rights in the Bottle Trade Dress.  The Bottle Trade Dress has acquired secondary meaning.

20.21. Customers readily recognize the Bottle Trade Dress as a distinctive designation of the origin of BlenderBottle®'s products.  The public recognizes that products bearing the Bottle Trade Dress constitute high-quality products that conform to the specifications created by BlenderBottle®.

21.22. Additionally, as a result of BlenderBottle®'s widespread use and display of the Bottle Trade Dress, the Bottle Trade Dress has established strong secondary meaning and extensive goodwill.  The Bottle Trade Dress has great value as a specific identifier of BlenderBottle®'s products.

22.23. BlenderBottle® has also obtained U.S. Trademark Registration No. 6,245,626 for its agitator trade dress (the "Agitator Trade Dress").  A true and correct copy of U.S. Trademark Registration No. 6,245,626 is attached hereto as **Exhibit 5**.

23.24. BlenderBottle® manufactures and sells agitators bearing its registered Agitator Trade Dress.  The Agitator Trade Dress is distinctive in its overall design.  A picture of BlenderBottle®'s Agitator Trade Dress is provided below.



24.25. The Agitator Trade Dress is a single length of metal wire formed to symmetrically define the shape of a sphere.

25.26. BlenderBottle® manufactures and sells shakers bearing a distinctive trade dress in its labeling (the "Label Trade Dress").  An example of BlenderBottle®'s Label Trade Dress is depicted below:

 

26.27. The Label Trade Dress includes: a label wrapping around the circumference of the bottle, a thick black center band, grey trimming on the top and bottom of the black band with a tab for displaying black text, and white text centered within a portion of the black band displaying a logo, company name, and product name.

27.28. The Label Trade Dress is inherently distinctive and serves to identify and distinguish BlenderBottle®'s products from those of others.  BlenderBottle® has strong common law rights in the Label Trade Dress.  The Label Trade Dress is not only inherently distinctive, but has also acquired secondary meaning.

28.29. Customers readily recognize the Label Trade Dress as a distinctive designation of the origin of BlenderBottle®'s products.  The public recognizes that products in packaging bearing the Label Trade Dress constitute high-quality products that conform to the specifications created by BlenderBottle®.

29.30. Additionally, as a result of BlenderBottle®'s widespread use and display of the Label Trade Dress, the Label Trade Dress has established strong secondary meaning and extensive goodwill.  The Label Trade Dress has great value as a specific identifier of BlenderBottle®'s products.

30.31. BlenderBottle®'s products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress are available in more than 90 countries worldwide and in over 60,000 retail locations.  For example, BlenderBottle®'s

products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress are sold in numerous major U.S. retailers such as Costco, Sam's Club, Target, Walmart, GNC, Amazon, Dick's Sporting Goods, and Vitamin Shoppe, among many others.

~~31.~~32. BlenderBottle®'s products bearing the Lid Trade Dress, Bottle Trade Dress, and Agitator Trade Dress have received significant media attention.  Products bearing the Lid Trade Dress, Bottle Trade Dress, and Agitator Trade Dress have been lauded by consumers and the media, including *Good Morning America*, *Shape*, *Good Housekeeping*, *Reader's Digest*, *Self*, *the Today Show*, *Muscle & Fitness*, *Men's Fitness*, *Nutrition Express*, *Amazing Wellness*, *Healthy Magazine*, *Outside Magazine*, *Backpacker Magazine*, *Daily Herald*, *EveryDay With Rachael Ray*, *Flex*, *Health & Beauty*, *Healthy Living*, *Muscle & Performance*, *Oxygen*, *Better Homes & Gardens*, *Climbing Magazine*, and others.

~~32.~~33. Numerous celebrities have been photographed using BlenderBottle®'s products bearing the Lid Trade Dress, Bottle Trade Dress, and Agitator Trade Dress including Justin Bieber, Hugh Jackman, Scarlett Johansson, Shia LaBeouf, and Terry Crews, among others.

~~33.~~34. BlenderBottle® extensively advertises and promotes its products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress including through its website and social media sites, trade shows, flyers, and advertisements.

~~34.~~35. BlenderBottle® has derived millions in revenues from sales of products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress.

~~35.~~36. As a result of BlenderBottle®'s widespread use and display of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress in association with its shaker bottles and agitators, (a) the public has come to recognize and identify shakers and agitators bearing the Lid Trade Dress, Bottle Trade Dress,

-7-     **SECOND AMENDED COMPLAINT**

Agitator Trade Dress, and Label Trade Dress as emanating from BlenderBottle®, (b) the public recognizes that shakers and agitators bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress constitute high quality products that conform to the specifications created by BlenderBottle®, and (c) the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress have established strong secondary meaning and extensive goodwill.

36.37. The Lid Trade Dress is not functional.  The design features embodied in the Lid Trade Dress are not essential to the function of the product.  The Lid Trade Dress is not in its particular shape because it works better in that shape.  There are alternative shapes and structures that perform as well as the Lid Trade Dress.  Alternatives to the Lid Trade Dress can be found in numerous commercially available products.

37.38. The Bottle Trade Dress is not functional.  The design features embodied by the Bottle Trade Dress are not essential to the function of the product.  A container that allows one to combine powders and liquids and that also serves as a drink dispenser can have many different forms and shapes.  The Bottle Trade Dress is not in its particular shape because it works better in that shape.  There are numerous alternative shapes and structures that allow a consumer to combine powders and liquids and use them as a drink dispenser.

38.39. Examples of commercially available alternatives to the Lid Trade Dress and Bottle Trade Dress are depicted in the table below:



| | |
|---|---|
| *"PUSHLIMITS Designed by Artoid"* product | *"Rubbermaid®️ SHAKER BOTTLE"* product |

| | |
|---|---|
|  | "*Contigo®*<br>*LEAK-PROOF*<br>*SHAKER BOTTLE*"<br>product |
|  | "*BluePeak*<br>*Shaker Bottle*"<br>product |
|  | "*Huel Shaker*<br>*Bottle*" product |
|  | "*Lava*<br>*Fitness Shaker*<br>*Bottle*" product |
|  | "*Vortex Shaker*<br>*Bottle*" product |
|  | "*Shakesphere*<br>*Tumbler View*<br>*Shaker Bottle*"<br>product |



"*WeightWatchers Shaker Bottle*" product



"*Aladdin Shaker Bottle*" product



"*Coleman Shaker Bottle*" product



"*Constant Contact Shaker Bottle*" product

~~39.~~40. These third-party products show that there are many different design decisions that go into creating a bottle and that the Lid Trade Dress and Bottle Trade Dress are the result of decisions regarding ornamentation. Further, BlenderBottle®'s exclusive right to use the Lid Trade Dress and Bottle Trade Dress does not put competitors at a significant non-reputation related disadvantage because there are numerous alternative designs.

~~40.~~41. Further, the design features of the Lid Trade Dress are not comparatively simple or inexpensive to manufacture because the elements are complex. The Lid Trade Dress is more expensive to manufacture than other lids. The design features of the Lid

Trade Dress do not affect the quality of the product. The design of the Lid Trade Dress is not a competitive necessity.

41.42. Similarly, the design features of the Bottle Trade Dress are not comparatively simple or inexpensive to manufacture because the elements are complex. For example, the lid shown in the Bottle Trade Dress is more expensive to manufacture than other lids. The design features of the Bottle Trade Dress do not affect the quality of the product. The design of the Bottle Trade Dress is not a competitive necessity.

42.43. The Agitator Trade Dress is not functional. The design features embodied by the Agitator Trade Dress are not essential to the function of the product. The Agitator Trade Dress is not in its particular shape because it works better in that shape. There are alternative shapes and structures that perform as well as the Agitator Trade Dress. Alternatives to the Agitator Trade Dress can be found in numerous commercially available products. Several examples of commercially available alternatives are depicted in the table below:

|  |  |  |
|---|---|---|
| Agitator from "*TOOFEEL SHAKER 700ML*" product | Agitator from "*PUSHLIMITS Designed by Artoid*" product | Agitator from "*PUSHLIMITS Designed by Artoid*" product |

| | | |
|---|---|---|
|  Agitator from "*Rubbermaid®  SHAKER BOTTLE*" product |  Agitator from "*BOTTLED JOY*" product |  Agitator from "*Muscle Pound*" product |
|  Agitator from "contigo®  *LEAK-PROOF SHAKER BOTTLE*" |  Agitator from "*MAINSTAYS  Shaker Bottle*" |  Agitator from "*UTOPIA  SHAKER BOTTLE*" |
|  Agitator from "*BluePeak Shaker Bottle*" product |  Agitator from "*BluePeak Shaker Bottle*" product |  Agitator from "*BluePeak Shaker Bottle*" product |

-12-   **SECOND** AMENDED COMPLAINT



Agitator from "*Aladdin Shaker Bottle*" product



Agitator from "*Coleman Shaker Bottle*" product



Agitator from "*Constant Contact shaker bottle*" product

43.44. The elements of the Agitator Trade Dress do not make the product cheaper or easier to manufacture, and do not affect the quality of the product. The design of the Agitator Trade Dress is not a competitive necessity.

44.45. The Label Trade Dress is not functional. The design features embodied by the Label Trade Dress are not essential to the function of the packaging, do not make the packaging cheaper or easier to manufacture, do not affect the quality of the packaging, and do not provide a utilitarian advantage to the consumer or affect the actual product that consumers seek to purchase. The Label Trade Dress is not designed in its particular form because it displays the product better in that form. There are alternative label and packaging designs that perform as well as the Label Trade Dress. Alternatives to the Label Trade Dress can be found in numerous commercially available products. The design of the Label Trade Dress is not a competitive necessity.

46. The Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress are invaluable assets essential to BlenderBottle®'s success and represent the designs of its signature products. The shape of the Agitator Trade Dress symbolizes the company itself and is part of a registered trademark used by BlenderBottle® as its corporate logo.

-13-   **SECOND** AMENDED COMPLAINT



45.47. This logo is prominently displayed on BlenderBottle®'s website, its marketing materials, and stamped on its products.

46.48. Subsequent to BlenderBottle®'s use and adoption of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress, each of the Defendants hasves developed, manufactured, imported, advertised, and/or sold shaker bottles and agitators that use trade dress that is confusingly similar to the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress.

47.49. Defendant Hydra Cup manufactures, uses, sells, offers for sale, promotes, advertises, and/or imports into the United States the following shaker bottles, including some in various sizes and colors, which infringe BlenderBottle®'s intellectual property rights (collectively together, the "Hydra Cup Shaker Bottles"):

| Hydra Cup Shaker Bottle I | Hydra Cup Shaker Bottle II | Hydra Cup Shaker Bottle III |
|---|---|---|
| | | |

/ / /

1
2
3
4
5
6
7
8
9
10   ///
11   ///
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Hydra Cup Shaker Bottle IV | Hydra Cup Shaker Bottle V | Hydra Cup Shaker Bottle VI |
|---|---|---|
|  |  |  |
| Hydra Cup Shaker Bottle VII | Hydra Cup Shaker Bottle VIII | Hydra Cup Shaker Bottle IX |
|  |  |  |

/ / /

-16-   **SECOND AMENDED COMPLAINT**



48.50. Defendant Hydra Cup further manufactures, uses, sells, offers for sale, promotes, advertises and/or imports into the United States shaker bottle lids that infringe BlenderBottle®'s intellectual property rights.  A representative infringing Hydra Cup shaker bottle lid is shown below (the "Hydra Cup Shaker Bottle Lid"):



49.51. On January 21, 2021, BlenderBottle® sent Defendant Hydra Cup a cease-and-desist letter demanding that Defendant Hydra Cup cease selling shaker bottles and agitators that infringe the D235 Patent, D798 Patent, Bottle Trade Dress, and Agitator Trade Dress.  A true and correct copy of this letter is attached as **Exhibit 6**.

-17-  **SECOND AMENDED COMPLAINT**

50.52. Defendant Hydra Cup also began selling shaker bottles with labels that infringe the Label Trade Dress.  Images of Defendant's infringing labels are shown below:

***Infringing Labels***

 

51.53. BlenderBottle® sent a follow-up letter on March 21, 2022, reiterating BlenderBottle®'s demands from its January 21, 2021, letter, and demanding that Defendant Hydra Cup cease selling shakers with labels that infringe the Label Trade Dress.  A true and correct copy of this letter is attached as **Exhibit 7.**

52.54. BlenderBottle® sent another follow-up letter on August 17, 2022, attaching a draft of this Complaint, reiterating BlenderBottle®'s demands from its previous two letters, and demanding that Defendant Hydra Cup cease selling shakers with lids that infringe the D551 Patent.  A true and correct copy of this letter is attached as **Exhibit 8**.

53.55. Despite BlenderBottle®'s letters, Defendant Hydra Cup has continued to sell the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lid.

54.56. As shown below, Defendant Hydra Cup has displayeds its non-spherical agitators in a misleading manner to make its agitators more closely resemble the Agitator Trade Dress.  BlenderBottle® is informed and believes that Defendant Hydra Cup advertises and promotes its non-spherical agitators in this manner to mislead consumers into believing that its products are sponsored by, approved by, or originate from BlenderBottle®, when they do not.

/ / /

-18-  **SECOND AMENDED COMPLAINT**

1  ///



57.     On December 13, 2023, counsel for BlenderBottle® took the deposition of Mr. Raymus.  During the deposition, Mr. Raymus testified that he had commingled funds between Mr. Raymus's personal bank account and the business bank account for Defendant Hydra Cup.  He further testified that he would use the money from Hydra Cup's bank account to pay for personal expenses.

58.     Mr. Raymus further testified at his deposition that he was responsible for certain modifications of the designs of the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lids.  Mr. Raymus further testified that he was responsible for the selection and subsequent commercialization of the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lids, as well as the infringing agitators and labels, by Defendant Hydra Cup.

59.     Mr. Raymus further testified that he is the sole employee of Defendant Hydra Cup, and Defendant Hydra Cup relies on independent contractors to perform the tasks Mr. Raymus does not perform.  Mr. Raymus also testified that he is "in charge" of Defendant Hydra Cup as "the owner and the CEO" of Defendant Hydra Cup.

60.     BlenderBottle® is informed and believes and, based thereon, alleges that as the owner, CEO, and sole employee of Hydra Cup, Mr. Raymus controls Hydra Cup

-19-  **SECOND AMENDED COMPLAINT**

and personally directs and is the driving force behind all of the decisions of TRRS Magnate, LLC d/b/a Hydra Cup, including the decision to copy BlenderBottle®'s designs.  BlenderBottle® is further informed and believes that Mr. Raymus has leveraged his positions as the owner, CEO, and sole employee of TRRS Magnate, LLC d/b/a Hydra Cup to personally direct and be the driving force behind Hydra Cup's copying of BlenderBottle®'s proprietary designs, and Defendant Hydra Cup's decision to offer for sale those copies of BlenderBottle®'s designs.

55.61.  BlenderBottle® is informed and believes and, based thereon, alleges that each of the Defendants haves intended to blatantly copy BlenderBottle®'s proprietary designs, and pass off its their goods as BlenderBottle®'s high quality products to misappropriate the immense goodwill that BlenderBottle® has spent enormous time, effort, and expense to cultivate in the marketplace.

56.62.  Each of the Defendants usess the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress in connection with identical shaker bottle products sold to identical customers and through overlapping channels of trade and marketing channels.  Defendant's The use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress by each of the Defendants in commerce is likely to cause confusion, cause mistake, and to deceive as to an affiliation, connection, or association of Defendant Hydra Cup and/or its products with BlenderBottle®, when there is none.

57.63. TEach of the Defendant's' acts complained of herein have caused BlenderBottle® to suffer irreparable injury to its business.  BlenderBottle® will continue to suffer substantial loss and irreparable injury unless and until each of the Defendants is enjoined from its wrongful actions complained of herein.

64.    BlenderBottle® is informed and believes, and on that basis alleges, that each of the Defendant's' acts complained of herein are was willful and deliberate.

## V. FIRST CLAIM FOR RELIEF
## PATENT INFRINGEMENT (35 U.S.C. § 271)

58.65. BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-6459 of this Complaint as if set forth fully herein.

59.66. This is a claim for patent infringement under 35 U.S.C. § 271.

60.67. Defendant Hydra Cup, through its agents, employees and/or servants—including Mr. Raymus as Hydra Cup's owner, CEO, sole employee and driving force—has knowingly, intentionally, and willfully infringed the D235 Patent by making, using, selling, offering for sale, and/or importing products, including the Hydra Cup Shaker Bottles, that have designs that infringe the D235 Patent.  For example, the side-by-side visual comparison of BlenderBottle®'s patented design and Defendant Hydra Cup's Hydra Cup Shaker Bottles shown below establishes that in the eye of the ordinary observer, giving such attention as a purchaser usually gives, the design of Defendant Hydra Cup's Hydra Cup Shaker Bottles are substantially the same as the claimed design of the D235 Patent, because the resemblance is such as to deceive such an observer inducing him to purchase one supposing it to be the be the other.  As a result, both Defendant Hydra Cup and Mr. Raymus have infringed the D235 Patent.

*U.S. Design Patent No. D510,235*



1
2
3 ///
4 ///
5 ///
6

*Infringing Hydra Cup Shaker Bottles*



20  61.68. Defendant Hydra Cup, through its agents, employees and/or servants—

21 including Mr. Raymus as Hydra Cup's owner, CEO, sole employee and driving force—

22 has knowingly, intentionally, and willfully infringed, and continues to infringe, the

23 D551 Patent by making, using, selling, offering for sale, and/or importing products,

24 including the Hydra Cup Shaker Bottles, that have designs that infringe the D551 Patent.

25 For example, the side-by-side visual comparisons of BlenderBottle®'s patented design

26 and Defendant Hydra Cup's Hydra Cup Shaker Bottle Lid shown below establishes that

27 in the eye of the ordinary observer, giving such attention as a purchaser usually gives,

28 the design of Defendant Hydra Cup's Hydra Cup Shaker Bottle Lid is substantially the

same as the claimed design of the D551 Patent, because the resemblance is such as to
deceive such an observer inducing him to purchase one supposing it to the be the other.
As a result, both ~~Defendant~~ Hydra Cup and Mr. Raymus have infringed~~s~~ the D551
Patent.

~~/ / /~~

***Comparisons of U.S. Patent No. D696,551 and the Hydra Cup Shaker Bottle Lid***

| D551 Patent Figures | Hydra Cup Shaker Bottle Lid |
|:---:|:---:|
| Fig. 1 | |
| Fig. 2 | |

| D551 Patent Figures | Hydra Cup Shaker Bottle Lid |
|---|---|
|  Fig. 3 |  |
|  Fig. 4 |  |
|  Fig. 5 |  |

| D551 Patent Figures | Hydra Cup Shaker Bottle Lid |
|---|---|
|  | |

62.69. Defendant Hydra Cup, through its agents, employees and/or servants—including Mr. Raymus as theHydra Cup's owner, CEO, sole employee and driving force——has knowingly, intentionally, and willfully infringed the D798 Patent by making, using, selling, offering for sale, and/or importing products, including the Hydra Cup Shaker Bottles, that have designs that infringe the D798 Patent.  For example, the side-by-side visual comparisons of BlenderBottle®'s patented design and Defendant Hydra Cup's Hydra Cup Shaker Bottle shown below establishes that in the eye of the ordinary observer, giving such attention as a purchaser usually gives, the design of Defendant Hydra Cup's Hydra Cup Shaker Bottle is substantially the same as the claimed design of the D798 Patent, because the resemblance is such as to deceive such an observer inducing him to purchase one supposing it to be the be the other.  As a result, both Defendant Hydra Cup and Mr. Raymus have infringeds the D798 Patent.

///

-25-  **SECOND AMENDED COMPLAINT**

1    ///

2    ///

3                          ***U.S. Patent No. D697,798***



***Infringing Hydra Cup Shaker Bottles***



63.70. The Federal Circuit has held that a design patent is infringed if the accused product looks substantially ~~similar~~the same~~, in light of the existing prior art, to~~ as the patented design in the eyes of an ordinary observer familiar with the prior art. *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 682-83 (Fed. Cir. 2008). As can be seen in the side-by-side comparisons of representative figures from the D235 Patent and D798 with the Hydra Cup Shaker Bottles and the D551 Patent with the Hydra Cup Shaker Bottle Lid, it is evident that the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lid are "substantially ~~similar~~the same" ~~as~~to BlenderBottle®'s patented designs and, thus, infringe.

64.71. As a direct and proximate result of the Defendant's' acts of infringement, Defendants Hydra Cup and Mr. Raymus haves derived and received gains, profits, and advantages in an amount that is not presently known to BlenderBottle®.

65.72. Pursuant to 35 U.S.C. § 284, BlenderBottle® is entitled to damages for each of the Defendant's' infringing acts and treble damages together with interests and costs as fixed by this Court.

66.73. Pursuant to 35 U.S.C. § 285, BlenderBottle® is entitled to reasonable attorneys' fees for the necessity of bringing this claim in this exceptional case.

67.74. Pursuant to 35 U.S.C. § 289, BlenderBottle® is entitled to the Defendants's total profits from their infringement of the D235 Patent, D551, and D798 Patents.

## VI.  SECOND CLAIM FOR RELIEF

### DEFENDANT'S TRADE DRESS INFRINGEMENT (15 U.S.C. §1125(a))

68.75. BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-6459 of this Complaint as if set forth fully herein.

76.   This is a claim for trade dress infringement under 15 U.S.C. § 1125(a).

69.77. Subsequent to BlenderBottle®'s use and adoption of the Lid Trade Dress, and the development of secondary meaning in that trade dress, Defendant Hydra Cup, through Mr. Raymus as theHydra Cup's owner, CEO, sole employee and driving force, has developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to the Lid Trade Dress.  An example of Defendants's infringing use of the Lid Trade Dress is shown below:

*Lid Trade Dress:*

1
2
3
4
5
6
7
8
9
10  ///
11  ///
12  ///
13

*Infringing Hydra Cup Lids*

14
15
16
17



18
19
20
21
22
23
24
25
26
27
28





70.78. Subsequent to BlenderBottle®'s use and adoption of the Bottle Trade Dress, and the development of secondary meaning in that trade dress, Defendant Hydra Cup, through Mr. Raymus as the owner, CEO, and sole employee of Hydra Cup, has developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to the Bottle Trade Dress.  An example of Defendants's infringing use of the Bottle Trade Dress is shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Bottle Trade Dress:*



*Infringing Hydra Cup Shaker Bottles*





-30-   **SECOND AMENDED COMPLAINT**



71.79. Subsequent to BlenderBottle®'s use and adoption of the Agitator Trade Dress, and the development of secondary meaning in that trade dress, Defendant Hydra Cup, through Mr. Raymus as Hydra Cup's owner, CEO, sole employee and driving force, has developed, manufactured, imported, advertised, and/or sold products with agitators, including the agitators for the Hydra Cup Shaker Bottles I-IV, which use trade dress that is confusingly similar to the Agitator Trade Dress.   An example of Defendants's infringing use of the Agitator Trade Dress is shown below:

*Agitator Trade Dress:*



*Infringing Agitators:*



~~72.~~80. Subsequent to BlenderBottle®'s use and adoption of the distinctive Label Trade Dress, and the development of secondary meaning in that trade dress, Defendant Hydra Cup, through Mr. Raymus as Hydra Cup's owner, CEO, sole employee and driving force, has developed, manufactured, imported, advertised, and/or sold products with labels, including the labels for the Hydra Cup OG Shakers shaker bottles, which use a trade dress that is confusingly similar to the Label Trade Dress.  An example of Defendants's infringing use of the Label Trade Dress is shown below:

*Label Trade Dress*




*Infringing Labels*




73.81. The Defendants's use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress in connection with its products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Hydra Cup with BlenderBottle®.

74.82. BlenderBottle® is informed and believes, and based thereon alleges, that each of the Defendants has infringed BlenderBottle®'s trade dress rights with the intent to unfairly compete with BlenderBottle®, to trade upon BlenderBottle®'s reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants's products are associated with, sponsored by, originated from, or are approved by BlenderBottle®, when they are not, resulting in a loss of reputation in, and mischaracterization of, BlenderBottle®'s products and its brand, damaging its marketability and saleability.

75.83. The Defendants's activities constitute willful and intentional infringement of BlenderBottle®'s trade dress rights in total disregard of BlenderBottle®'s proprietary rights, and were done despite Defendant Hydra Cup and Mr. Raymus's knowledge that use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress was, and is, in direct contravention of BlenderBottle®'s rights.

76.84. BlenderBottle® is informed and believes, and thereon alleges, that each of the Defendants has derived and received, and will continue to derive and receive, gains, profits, and advantages from each of the Defendants's trade dress infringement in an amount that is not presently known to BlenderBottle®. By reason of each of the Defendants's actions, constituting trade dress infringement, BlenderBottle® has been damaged and is entitled to monetary relief in an amount to be determined at trial.

77.85. Pursuant to 15 U.S.C. § 1117, BlenderBottle® is entitled to recover (1) each Defendants'ss profits, (2) any damages sustained by BlenderBottle®, and (3) the

-33-  **SECOND AMENDED COMPLAINT**

costs of the action.  In assessing damages, the Court may enter judgment up to three times actual damages, and in awarding profits, the Court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  The Court may also award BlenderBottle® its reasonable attorneys' fees for the necessity of bringing this claim in this exceptional case.

78.86. Due to the Defendants's actions, constituting trade dress infringement, BlenderBottle® has suffered great and irreparable injury, for which BlenderBottle® has no adequate remedy at law.

79.87. Each of the Defendants will continue to infringe BlenderBottle®'s trade dress rights to the great and irreparable injury of BlenderBottle®, unless and until each of the Defendants is enjoined by this Court.

## VII.   THIRD CLAIM FOR RELIEF
### TRADE DRESS INFRINGEMENT (15 U.S.C. §1114)

80.88. BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-6459 and 750-817 of this Complaint as if set forth fully herein.

81.89. This is a claim for trade dress infringement under 15 U.S.C. § 1114.

82.90. BlenderBottle® owns U.S. Trademark Registration No. 6,800,019 for its Lid Trade Dress.

83.91. Without BlenderBottle®'s permission, Defendant Hydra Cup, through Mr. Raymus as Hydra Cup's owner, CEO, sole employee and driving force, has used in commerce trade dress that is identical to, and/or confusingly similar to the Lid Trade Dress.  Each of the Defendants has infringed BlenderBottle®'s Lid Trade Dress and created a false designation of origin by using a nearly identical trade dress in connection with the manufacturing, distributing, selling, and/or promoting of Defendant Hydra Cup's bottle products.

84.92. BlenderBottle® is informed and believes, and on that basis alleges, that Defendant did so with the intent to unfairly compete with BlenderBottle®, to trade upon BlenderBottle®'s reputation and goodwill by causing confusion and mistake among

-34-   **SECOND AMENDED COMPLAINT**

customers and the public, and to deceive the public into believing that Defendant's products are associated with, sponsored by, originated from, or are approved by BlenderBottle®, when they are not.

85.93. BlenderBottle® owns U.S. Trademark Registration No. 6,245,626 for its Agitator Trade Dress.

86.94. Without BlenderBottle®'s permission, Defendant Hydra Cup, through Mr. Raymus as Hydra Cup's owner, CEO, sole employee and driving force, has used in commerce trade dress that is identical to the Agitator Trade Dress. Each of the Defendants has infringed BlenderBottle®'s Agitator Trade Dress and created a false designation of origin by using identical trade dress in connection with the manufacturing, distributing, selling, and/or promoting of Defendant's bottle products.

87.95. BlenderBottle® is informed and believes, and on that basis alleges, that each of the Defendants did so with the intent to unfairly compete with BlenderBottle®, to trade upon BlenderBottle®'s reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant Hydra Cup's products are associated with, sponsored by, originated from, or are approved by BlenderBottle®, when they are not.

88.96. BlenderBottle® is informed and believes, and on that basis alleges, that Defendants Hydra Cup and Mr. Raymus had actual knowledge of BlenderBottle®'s ownership and prior use of BlenderBottle®'s Lid Trade Dress and Agitator Trade Dress, and without the consent of BlenderBottle®, has willfully violated 15 U.S.C. § 1114.

89.97. Defendants's aforementioned acts have injured BlenderBottle® and damaged BlenderBottle® in an amount to be determined at trial. By its actions, Defendant has irreparably injured BlenderBottle®. Such irreparable injury will continue unless and until each of the Defendants is preliminarily and permanently enjoined by this Court from further violation of BlenderBottle®'s rights, for which BlenderBottle® has no adequate remedy at law.

## VIII.  FOURTH CLAIM FOR RELIEF

## FALSE DESIGNATION OF ORIGIN, PASSING OFF, & FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

90.98. BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-6459 and 750-917 of this Complaint as if set forth fully herein.

91.99. This is a claim for unfair competition and false designation of origin arising under 15 U.S.C. § 1125(a).

92.100.     Defendant Hydra Cup's use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress, through Mr. Raymus as theHydra Cup's owner, CEO, sole employee and driving force, without BlenderBottle®'s consent, constitutes false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such entity with another entity, or as to the origin, sponsorship, or approval of its goods or commercial activities by another entity in violation of 15 U.S.C. § 1125(a).

93.101.     Defendant Hydra Cup's use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress, through Mr. Raymus as Hydra Cup's owner, CEO, sole employee and driving force, without BlenderBottle®'s consent, constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of its products or commercial activities in violation of 15 U.S.C. § 1125(a).

94.102.     BlenderBottle® is informed and believes and, based thereon, alleges that Defendants's acts of false designation of origin, passing off, and unfair competition have been willful and without regard to BlenderBottle®'s rights.

95.103.     Pursuant to 15 U.S.C. § 1117, BlenderBottle® is entitled to recover (1) Defendant's profits, (2) any damages sustained by BlenderBottle®, and (3) the costs of the action.  In assessing damages, the Court may enter judgment up to three times actual damages, and in awarding profits, the Court may in its discretion enter judgment

for such sum as the Court finds to be just, according to the circumstances of the case. The Court may also award BlenderBottle® its reasonable attorneys' fees for the necessity of bringing this claim in this exceptional case.

96.104.    BlenderBottle® has been damaged by Defendants's conduct in an amount to be determined at trial.

97.105.    Due to Defendants's actions, constituting false designation of origin, false or misleading statements, false or misleading description of fact, false or misleading representations of fact, passing off, and unfair competition, BlenderBottle® has suffered and continues to suffer great and irreparable injury, for which BlenderBottle® has no adequate remedy at law.

98.106.    Each of the Defendants will continue its false designation of origin, false or misleading statements, false or misleading description of fact, false or misleading representations of fact, passing off, and unfair competition, unless and until enjoined by this Court.

### IX.  ///

### X. IX.  FIFTH CLAIM FOR RELIEF

### UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

99.107.    BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-6459 and 750-1060 of this Complaint as if set forth fully herein.

100.108.    This is a claim for unfair competition under California Business & Professions Code §§ 17200, et seq.

101.109.    By virtue of the acts of trade dress infringement, false designation of origin, passing off, and federal unfair competition complained of herein, each of the Defendants has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.

102.110.   ~~Each of the~~ Defendants's acts complained of herein constitute unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged BlenderBottle®.

111.  Each of the Defendants, by its actions, has irreparably injured BlenderBottle®.  Such irreparable injury will continue unless each of the Defendants is preliminarily and permanently enjoined by this Court from further violation of BlenderBottle®'s rights, for which BlenderBottle® has no adequate remedy at law.

## ~~XI.~~ X.  SIXTH CLAIM FOR RELIEF
## UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW
### (California Common Law)

103.112.   BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-6459 and 750-11105 of this Complaint as if set forth fully herein.

104.113.   This is a claim for unfair competition under California common law.

105.114.   Defendants's acts of trade dress infringement, false designation of origin, passing off, and federal unfair competition complained of herein constitute unfair competition under California common law.

106.115.   Defendants's aforementioned acts have damaged BlenderBottle® in an amount to be determined at trial.

107.116.   Each of the Defendants has irreparably injured BlenderBottle®. Such irreparable injury will continue unless each of the Defendants is preliminarily and permanently enjoined by this Court from further violation of BlenderBottle®'s rights, for which BlenderBottle® has no adequate remedy at law.

-38-  **SECOND AMENDED COMPLAINT**

1  ~~108.~~117.    Defendant~~s's~~ willful acts of unfair competition under California

2  common law constitute fraud, oppression and malice.  Accordingly, BlenderBottle® is

3  entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

4  **~~XII.~~ XI.  PRAYER FOR RELIEF**

5       WHEREFORE, BlenderBottle® prays for judgment in its favor against

6  Defendant Hydra Cup and Defendant Thomas Raymus for the following relief:

7       A.    An Order adjudging each of the Defendants to have infringed the D235

8  Patent, D551 Patent, and D798 Patent under 35 U.S.C. § 271;

9       B.    That each of the Defendants account for all gains, profits, and advantages

10 derived through Defendants's infringement of the D235 Patent, D551 Patent, and D798

11 Patent in violation of 35 U.S.C. § 271, and that Defendants pay to BlenderBottle® all

12 damages suffered by BlenderBottle® from such infringement and all profits from such

13 infringement pursuant to 35 U.S.C. §§ 284 and 289;

14      C.    That the Court find for BlenderBottle® and against Defendants on

15 BlenderBottle®'s claim of trade dress infringement, false designation of origin, passing

16 off, and unfair competition under 15 U.S.C. § 1125(a).

17      D.    That the Court find for BlenderBottle and against Defendants on

18 BlenderBottle®'s claim of trade dress infringement under 15 U.S.C. § 1114.

19      E.    That the Court find for BlenderBottle® and against Defendants on

20 BlenderBottle®'s claim of trade dress infringement, false designation of origin, passing

21 off, and unfair competition under California Business & Professions Code §§ 17200, *et*

22 *seq.*, and California common law;

23      F.    That the Court issue a preliminary and permanent injunction against each

24 of the Defendants, ~~its~~ their agents, servants, employees, representatives, successors, and

25 assigns, and all persons, firms, or corporations in active concert or activities and from

26 assisting or inducing, directly or indirectly, others to engage in the following activities:

27           i.  Manufacturing, importing, marketing, displaying, distributing,

28               offering to sell, and/or selling Defendants's products infringing the

-39-  **SECOND AMENDED COMPLAINT**

Lid Trade Dress and/or Bottle Trade Dress and/or Agitator Trade Dress and/or Label Trade Dress, or any products that are not colorably different therefrom;

ii. using BlenderBottle®'s Lid Trade Dress and/or Bottle Trade Dress and/or Agitator Trade Dress and/or Label Trade Dress, or any other trade dress that is confusingly similar to BlenderBottle®'s Lid Trade Dress and/or Bottle Trade Dress and/or Agitator Trade Dress and/or Label Trade Dress;

iii. falsely designating the origin of Defendants's products;

iv. passing off Defendants's products as those of BlenderBottle®;

v. misrepresenting by any means whatsoever, directly or indirectly, the source or sponsorship of any of Defendants's products;

vi. unfairly competing with BlenderBottle® in any manner whatsoever; and

vii. causing a likelihood of confusion or injuries to BlenderBottle®'s business reputation.

G.     That an accounting be ordered to determine each of the Defendants's profits resulting from its design patent infringement, trade dress infringement, false designation or origin, passing off, and unfair competition;

H.     That BlenderBottle® be awarded monetary relief in an amount to be fixed by the Court in its discretion as it finds just as an equitable remedy and as a remedy under 15 U.S.C. § 1117, including all damages sustained by BlenderBottle® as a result of Defendants's acts of trade dress infringement, false designation of origin, passing off, and unfair competition, all profits received by Defendants from sales and revenues of any kind made as a result of its infringing actions, and the costs of this action.

H.I.     That such award to BlenderBottle® of damages and profits be trebled pursuant to 15 U.S.C. § 1117;

1      ~~I.~~J.    That BlenderBottle® be awarded exemplary damages from Defendants

2  pursuant to Cal. Civ. Code § 3294;

3      ~~J.~~K.   An Order adjudging that this is an exceptional case under 35 U.S.C. § 285

4  and 15 U.S.C. § 1117;

5      ~~K.~~L.  An award to BlenderBottle® of the attorneys' fees, expenses, and costs

6  incurred by BlenderBottle® in connection with this action pursuant to 35 U.S.C. § 285,

7  15 U.S.C. § 1117, and/or California common law;

8      ~~L.~~    An award of pre-judgment and post-judgment interest and costs of this

9  action against Defendants; and

10      M.

11      ~~M.~~N.  Such other and further relief as this Court may deem just and proper.

12              **~~XIII.~~ XII.  DEMAND FOR JURY TRIAL**

13      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, BlenderBottle®

14  requests a trial by jury of all issues so triable.

15

16

17

18      ~~///~~

19      ~~///~~

20                     Respectfully submitted,

21

                      KNOBBE, MARTENS, OLSON & BEAR, LLP

22

23

24  Dated: January 11, 2024~~———~~  By: */s/ Jacob R. Rosenbaum*

25                     Ali S. Razai

                     ~~Paul A. Stewart~~

26                     Sean M. Murray

                     Jacob R. Rosenbaum

27                    ~~Christian D. Boettcher~~

28

                          -41-  **SECOND AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Counsel for Plaintiff TROVE  BRANDS,  LLC  d/b/a
THE BLENDERBOTTLE COMPANY

**CERTIFICATE OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On January 11, 2024~~March 3, 2023~~, I served the **SECOND** AMENDED COMPLAINT on defendant TRRS Magnate LLC d/b/a Hydra Cup shown below via EMAIL:

MEGHAN PRATSCHLER
meghan@meghantheattorney.com
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Telephone: (415) 335-9226

CASEY SCOTT MCKAY
casey@mclaw.io
1441 U St. NW, Suite 712
Washington, DC, D.C. 20009
Telephone: (202) 743-1972

~~CLARK A. WALDON~~
~~CWaldon@HollandLawLLP.com~~
~~CHRISTOPHER T. HOLLAND~~
~~CHolland@HollandLawLLP.com~~
~~220 Montgomery Street, Suite 800~~
~~San Francisco, California 94104~~
~~Telephone: (415) 200-4980~~
~~Facsimile: (415) 200-4989~~

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 11, 2024~~March 3, 2023~~, at San Diego, California.

/s/ Estefania Munoz
Estefania Munoz

~~57137741~~

-43-   **SECOND** AMENDED COMPLAINT

# EXHIBIT 1

Page 1

IN THE UNITED STATES DISTRICT

FOR THE EASTERN DISTRICT OF CALIFORNIA

_____

TROVE BRANDS, LLC d/b/a THE          )

BLENDERBOTTLE COMPANY, a Utah        )

limited liability company,           )

               Plaintiffs,    )

vs.                                  ) No. 2:22-cv-

TRRS MAGNATE LLC d/b/a HYDRA CUP,)  02222-TLN-CKD

            Defendant.       )

_____)

VIDEOTAPED DEPOSITION OF THOMAS RAYMUS

San Francisco, California

December 13, 2023

9:04 a.m.

Stenographically Reported by

ANGELA SINCLAIR, RMR, RPR, CRR, CCRR, CSR No. 13902

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 2

1                DEPOSITION OF THOMAS RAYMUS

2

3          BE IT REMEMBERED, that pursuant to Notice,

4     and on the 13th day of December 2023, commencing at

5     the hour of 9:04 a.m., in the offices of Knobbe

6     Martens, 333 Bush Street, 21st Floor, San Francisco,

7     California, before me, ANGELA SINCLAIR, a Certified

8     Shorthand Reporter, personally appeared THOMAS

9     RAYMUS, produced as a witness in said action, and

10    being by me first duly sworn, was thereupon examined

11    as a witness in said cause.

12

13

14

15

16

17

18

19

20

21

22

```
                                                         Page 3

  1   APPEARANCES:

  2   For the Plaintiff:

  3                  CHRISTIAN BOETTCHER, ESQ.

  4                  KNOBBE, MARTENS, OLSON & BEAR, LLP

  5                  2040 Main Street, 14th Floor

  6                  Irvine, California 92614

  7                  (949) 760-0404

  8                  christian.boettcher@knobbe.com

  9

 10   For the Defendant:

 11                  CASEY MCKAY, ESQ.

 12                  MC LAW

 13                  1441 U Street NW

 14                  Washington, D.C. 20009

 15                  (202) 743-1972

 16                  casey@mclaw.io

 17

 18   Also Present:

 19                  Antonio Woodward, Videographer

 20

 21

 22
```

Page 4

1                        I N D E X

2    Examinations                                    Page

3    EXAMINATION BY MR. BOETTCHER                       8

4

5                     E X H I B I T S

6    No.                  Description                 Page

7    Raymus Exhibit 1     First amended complaint      38

8    Raymus Exhibit 2     Photo of shaker bottle       39

9                         (BB-0015680)

10   Raymus Exhibit 3     License agreement            46

11   Raymus Exhibit 4     Photo of shaker bottle       68

12                        (BB-0015682)

13   Raymus Exhibit 5     Photo of shaker bottle       80

14                        (BB-0015683)

15   Raymus Exhibit 6     Photo of shaker bottle       88

16                        (BB-0015684)

17   Raymus Exhibit 7     Photo of shaker bottle       90

18                        (BB-0015685)

19   Raymus Exhibit 8     Photo of shaker bottle       91

20                        (BB-0015686)

21   Raymus Exhibit 9     Photo of shaker bottle       96

22                        (BB-0015687)

12/13/2023       Trove Brands, LLC d/b/a The BlenderBottle Company v. TRRS Magnate LLC d/b/a Hydra Cup    Thomas Raymus

Page 5

 1                    E X H I B I T S, CON'T

 2     No.                  Description                Page

 3     Raymus Exhibit 10    Photo of shaker bottle       98

 4                          (BB-0015688)

 5     Raymus Exhibit 11    Photo of shaker bottle      103

 6                          (BB-0015689)

 7     Raymus Exhibit 12    Photo of shaker bottle      104

 8                          (BB-0015681)

 9     Raymus Exhibit 13    Website printout            111

10                          (BB-0001531 to 1537)

11     Raymus Exhibit 14    Website printout            113

12                          (BB-0001538 to 1546)

13     Raymus Exhibit 15    Website printout            114

14                          (BB-0001563 to 1569)

15     Raymus Exhibit 16    Website printout            116

16                          (BB-0001577 to 1570)

17     Raymus Exhibit 17    U.S. Patent Number          182

18                          8,777, 041 B1

19                          (HC0007856 to 7866)

20     Raymus Exhibit 18    Purchase order dated        230

21                          12/16/2019

22                          (HC0006048)

```
                                                                Page 6

 1                      E X H I B I T S, CON'T

 2      No.                    Description                    Page

 3      Raymus Exhibit 19    Purchase order dated              236

 4                           7/24/2023

 5                           (HC0006095)

 6      Raymus Exhibit 20    Purchase order dated              251

 7                           12/21/2020

 8                           (HC0006079)

 9      Raymus Exhibit 21    Purchase order dated              255

10                           1/4/2021

11                           (HC0006115)

12      Raymus Exhibit 22    Letter dated 11/27/2020           266

13                           (HC_002840 to 2855)

14                           (NOT ATTACHED due to

15                           privilege)

16

17

18

19

20

21

22
```

Page 7

 1            THE VIDEOGRAPHER:  This is Tape Number 1 of

 2    the videotaped deposition of Thomas Raymus taken by

 3    counsel for the plaintiff in the matter of Trove

 4    Brands, LLC, DBA the BlenderBottle Company versus

 5    TRRS Magnate DBA Hydra Cup in the United States

 6    District Court for the Eastern District of

 7    California, Case Number 2:22-cv-02222-TLN-CKD.

 8            This deposition is being held at the offices

 9    of Knobbe Martens Olsen & Bear, LLP, located at 333

10    Bush Street, San Francisco, California, on

11    December 13th, 2023.  The time on the video screen is

12    9:06 a.m. Pacific Time.

13            My name is Antonio Woodward.  I am the legal

14    videographer from Digital Evidence Group.  The court

15    reporter is Angela Sinclair in association with

16    Digital Evidence Group.

17            Will counsel please introduce themselves for

18    the record.

19            MR. BOETTCHER:  Sure.  I am Christian

20    Boettcher.  I am counsel for plaintiff, Trove Brands,

21    LLC, doing business as the BlenderBottle Company.

22            MR. MCKAY:  I am Casey McKay.  I am counsel

Page 8

1    for defendant, TRRS Magnate doing business as

2    Hydra Cup, and I'm with MC Law PLLC.

3           THE VIDEOGRAPHER:  Will the court reporter

4    please swear in the witness.

5           (Oath administered by the reporter.)

6           THE WITNESS:  I do.

7                      THOMAS RAYMUS,

8                 affirmed as a witness,

9                 testified as follows:

10          THE VIDEOGRAPHER:  Go ahead, Counsel.

11          MR. BOETTCHER:  Thank you.

12   EXAMINATION BY MR. BOETTCHER:

13      Q.  All right.  Mr. Raymus, my name is Christian

14   Boettcher and I will be taking your deposition today.

15          For the record, what is your full name and

16   address?

17      A.  Thomas Anthony Raymus.  My address is 2328

18   Paramount Lane, Manteca, California 95337.

19      Q.  Perfect.  Thank you.  And do you go by both

20   Thomas and Tommy?

21      A.  Yes.

22      Q.  And are there any other names or aliases you

12/13/2023        Trove Brands, LLC d/b/a The BlenderBottle Company v. TRRS Magnate LLC d/b/a Hydra Cup    Thomas Raymus

Page 28

1        Q.  Okay.  Perfect.  And does Robert Sinclair

2    have any role within TRRS currently?

3        A.  No.

4        Q.  Has he had any role in TRRS since his buyout

5    in 2016?

6        A.  No.

7        Q.  Okay.  And what is your role in TRRS

8    Magnate?

9        A.  Well, I'm -- it's a very small company, so

10   saying CEO doesn't really -- I don't know, I guess

11   I -- I'm in charge.  I'm the owner and the CEO.  So

12   I'm just in charge of it.

13       Q.  And you said it's a small company.  How many

14   employees would you say are employed by TRRS Magnate?

15       A.  Just myself.

16       Q.  So you have no employees at TRRS Magnate?

17       A.  Just independent contractors.

18       Q.  Okay.  And how many independent contractors

19   would you estimate work for TRRS Magnate?

20       A.  Consistently, maybe four or five.

21       Q.  Okay.  And for confirmation, are Hydra Cup

22   and TRRS Magnate the same entity?

Page 32

1    2012; correct?

2         A.  Yes, I think so.

3         Q.  How was TRRS Magnate originally capitalized?

4         A.  Myself.  I put some -- I had the money.

5         Q.  And how much would you say that you

6    originally invested into TRRS Magnate?

7         A.  About 100,000.

8         Q.  And when would you say that you made this

9    $100,000 investment?

10        A.  At the beginning.  I just had that invest --

11   I had the money at the very beginning of 2012.

12        Q.  And have you injected any more capital into

13   Hydra Cup besides this 100,000 amount in 2012?

14        A.  I don't remember.  If it ever was, it wasn't

15   a large amount.  It was maybe just to pay off a bill

16   or something.

17        Q.  Do you and Hydra Cup maintain separate bank

18   accounts?

19        A.  Yes.  I have a business account.

20        Q.  And have you ever commingled funds between

21   the business account and the personal account beyond

22   the $100,000 amount that you stated in 2012 and these

Page 33

1    smaller bills?

2        A.  Yes, I have.

3        Q.  What are the nature of these commingling

4    activities?

5        A.  It could be just a transaction of funds back

6    and forth to -- or it could have been like a -- maybe

7    an accidental given the bank my account number to

8    just transfer it in the -- in one account --

9        Q.  When you --

10       A.  -- rather than the other.

11       Q.  Sorry, I apologize.

12           When you say having -- giving your -- the

13   bank your account, are you referring to your personal

14   account or your business account?

15       A.  Well, I -- the nature of like the online,

16   how it works, is all the accounts are there.  So the

17   personal account's with the business account.  So it

18   could have just been fluctuated, given them a

19   different check or something like that, but. . .

20       Q.  Okay.  And you mentioned that there were

21   other amounts other than the $100,000 in 2012 that

22   you had inserted into Hydra Cup.  Can you provide an

Page 62

 1   BY MR. BOETTCHER:

 2        Q.   And do you know why Hydra Cup stopped

 3   selling the shaker bottle depicted in Exhibit

 4   Number 2?

 5        A.   You're talking about the shaker bottle

 6   itself; right?

 7        Q.   Correct.

 8        A.   So all the blue part?

 9        Q.   Just the blue bottle, yes.

10        A.   We had an updated design.

11        Q.   And what is this updated design that you're

12   referring to?

13        A.   Well, there's many updated designs since

14   this.

15        Q.   All right.  Let's start with the first

16   updated design since the cessation of selling the

17   shaker bottle shown in Exhibit Number 2.

18             What were the updates in the first design

19   sold after the cessation of sales of this shaker

20   bottle shown in Exhibit Number 2?

21        A.   The first update -- one of the first updates

22   was the bottle.  It was made easier to clean, so the

Page 63

1    shape of the bottle specifically at the bottom.

2        Q.  And for this first update to the bottle to

3    make it easier to clean at the bottom, what changes

4    were made to the bottle to facilitate the desired

5    purpose of making it easier to clean at the bottom?

6        A.  It was made -- the sharp corners were

7    removed from the edges of the bottle and it was given

8    a more rounded shape there at the very bottom.

9        Q.  And who was responsible for this updated

10   design?

11       A.  It was an idea that -- or an update that

12   Hydra Cup had taken responsibility.

13       Q.  And who at Hydra Cup had taken

14   responsibility of that update?

15       A.  Myself.

16       Q.  Was there any other persons responsible for

17   the elimination of the sharp corners that you had

18   mentioned?

19       A.  No.

20       Q.  So it was just you who had instituted that

21   change?

22       A.  By "responsible" you mean had given

12/13/2023        Trove Brands, LLC d/b/a The BlenderBottle Company v. TRRS Magnate LLC d/b/a Hydra Cup      Thomas Raymus

Page 64

1   direction for the change or. . .

2       Q.  Yes.  Did you -- were you the person who had

3   given direction for the change to remove the sharp

4   corners?

5       A.  Correct.  That was me.

6       Q.  Were there any other persons who had

7   influenced your decision to institute such a change?

8       A.  Influence?  No.

9       Q.  Did you consult with any other persons

10  before directing Tianqi to remove the sharp corners?

11      A.  Well, yeah, I have a freelancer that I told

12  to implement the changes.

13      Q.  And when you say "implement the changes,"

14  what do you mean by "implement the changes"?

15      A.  To change the -- to change the product we

16  needed to make a 3D model, so I had to make a 3D

17  model of how that was going to look.

18      Q.  And who was this freelancer who made the 3D

19  model removing the sharp corners?

20      A.  I believe the freelancer at that time was

21  Jeff Harlan.

22      Q.  And were there any other persons or

Page 80

1      Q.  And are you aware of any other persons or

2  entities responsible for the design of the shaker

3  bottle depicted in Exhibit Number 4?

4      A.  I am not.

5      Q.  Okay.  Then I would like to mark as Exhibit

6  Number 5 the document in Tab Number 6.  This is a

7  document bearing Bates number B or produced by

8  BlenderBottle bearing Bates Number BB-0015683.

9          Let me get your opposing counsel one too.

10  Here you go.

11          (Raymus Exhibit 5 was marked.)

12          MR. MCKAY:  Thank you, Christian.

13  BY MR. BOETTCHER:

14      Q.  All right.  All right, Mr. Raymus, do you

15  recognize the product shown in Exhibit Number 5?

16      A.  Yes.

17      Q.  And how do you recognize this product?

18      A.  It is a product that Hydra Cup designed and

19  sold for a short period of time.

20      Q.  You said that Hydra Cup designed the product

21  depicted in Exhibit Number 5.  Who at Hydra Cup had

22  designed that product?

Page 81

1      A.  The same, myself with the independent

2   contractor Jeff Harlan.

3      Q.  And were you responsible for the design

4   depicted in -- of the shaker bottle depicted --

5      A.  This one I was, yes.

6      Q.  -- in Exhibit 5?

7         And you mentioned that you had consulted

8   with Jeff Harlan.  Did Jeff Harlan produce the 3D

9   model for the shaker bottle depicted in Exhibit

10  Number 5?

11     A.  Yes.  I -- yes, he did.

12     Q.  And did Jeff Harlan follow your instructions

13  in designing the shaker bottle depicted in Exhibit

14  Number 5?

15     A.  I don't remember any conflict where he

16  didn't follow instructions.

17     Q.  And when you say you don't remember any

18  conflict where he didn't follow instructions, is that

19  referring generally to all Hydra Cup Shaker Bottle

20  projects that you had asked him to design, or is that

21  referring specifically to Exhibit Number 5?

22     A.  I'm just talking about Exhibit Number 5 at

Page 200

 1      Q.  -- since the institution of this litigation?

 2      A.  No, I haven't.

 3      Q.  Thank you.  All right.

 4          So then after these Nutrishop containers and

 5   Hydra Cup dual-compartment shaker bottles, what was

 6   the next product sold by Hydra Cup that was a shaker

 7   bottle product?

 8      A.  That was a shaker bottle product?  I think

 9   this OG Shaker.

10      Q.  Okay.  And when you say "this OG Shaker,"

11   are you referring to a particular shaker in any of

12   the exhibits that have been admitted today in this

13   deposition?

14      A.  Exhibit 2.

15      Q.  Okay.  So effectively from 2012 to 2018,

16   Hydra Cup had sold two shaker bottle products; is

17   that correct?

18      A.  That's correct.

19      Q.  Why after six years of business had

20   Hydra Cup decided to sell a product other than a

21   dual-compartment shaker bottle or the Nutrishop

22   shaker bottles?

Page 201

1        A.  Try something new, see if it sticks.

2        Q.  Were you in the habit of seeing -- of trying

3   something new and seeing if it sticks?

4        A.  No.

5        Q.  Then what spurred you in 2019 to try

6   something new and see if it sticks?

7        A.  Just it had been a long time.  You know,

8   there's pressure to make -- I guess selling the same

9   thing over and over again.

10       Q.  When you said there was pressure to -- I

11  believe you said there was pressure to sell something

12  new; is that correct?

13       A.  No.  There's just pressure to succeed in

14  general.  So no one was pressuring me like you have

15  to; do this or do that, but just in general to just

16  -- yeah, just in general to do something.

17          I mean, we're selling this Hydra Cup for

18  that long.  It's just myself.  You know, I think if

19  you look at companies they probably try something new

20  every once in a while, but. . .

21       Q.  And you said pressure to succeed was what

22  had spurred the expansion of Hydra Cup's shaker

Page 202

 1   bottle product line; is that correct?

 2       A.  No.  I mean, that's one component.  But I

 3   can't tell you exactly what decided.  I mean, to be

 4   honest, Tianqi -- I was already making the dual

 5   shaker with them.  They kept sending me a catalog of

 6   their products.  So. . .

 7       Q.  Do you have any copies of the catalogs that

 8   Tianqi would send?

 9       A.  Yes, I do.  I think I could get one.

10       Q.  Do you have copies of every catalog that

11   Tianqi would send?

12       A.  I only remember one.  I don't know if

13   they've updated or. . .

14           MR. BOETTCHER:  We're going to need the

15   production --

16           MR. MCKAY:  Gotcha.

17           MR. BOETTCHER:  -- of that catalog.

18   BY MR. BOETTCHER:

19       Q.  Do you know approximately when Tianqi sent

20   this catalog?

21       A.  They probably showed it to me when we

22   started making the dual shaker with them, but I

Page 203

1    don't -- I don't remember a specific date and time

2    when they first sent it, no.  I probably didn't pay

3    much attention to it for that.

4        Q.  Okay.  How did you find Tianqi as the

5    manufacturer?

6        A.  Well, we went to China and -- I wouldn't say

7    we.  At the time I had a -- I did actually have an

8    employee at the time, and he went to China and he

9    talked to some other suppliers and they ended up

10   saying Tianqi did the best job.

11       Q.  Okay.  And who's the name of this employee?

12       A.  Chris McCarthy.

13       Q.  Is this the same Chris McCarthy that you had

14   referenced in possibly opening a kitchen --

15       A.  Correct.

16       Q.  -- compartment business?

17       A.  Yes.  We were simultaneously working on

18   those.

19       Q.  And when did Chris McCarthy first -- you

20   said McCarthy; correct?

21       A.  McCarthy, yeah.

22       Q.  When did Chris McCarthy start working for

Page 254

1    agitator depicted, for example, in Exhibit Number 2?

2        A.  I don't believe so.

3        Q.  Okay.  And who decided on the inclusion of

4    the round blender balls in the order depicted in

5    Exhibit Number 20?

6        A.  I must have.

7        Q.  Were there other options to select from?

8        A.  Not that I knew of at the time.

9        Q.  Did Tianqi offer any alternative agitators

10   to include with the purchase of the product listed on

11   line 2 of Exhibit Number 20?

12       A.  At this particular point I don't believe I

13   was aware of any other options.

14       Q.  Okay.

15       A.  Maybe.

16       Q.  Okay.  Do you see then underneath the

17   product/service name column on the fourth line there

18   is a description of Hydra Cup or a description of a

19   product named "Hydra Cup:V-2.2 five-pack OG Shakers"?

20       A.  Yes.

21       Q.  Is V-2.2 referring to a color?

22       A.  It is referring to a color and a different

Page 273

1    have been your instructions to --

2         A.  I should.

3             MR. BOETTCHER:  Okay.  If there are other

4    documents or other communications, we'll also need

5    those produced.

6             MR. MCKAY:  I gotcha.

7    BY MR. BOETTCHER:

8         Q.  Okay.  And were you the person who approved

9    the design of the shaker bottle label depicted in

10   Exhibit Number 1?

11        A.  I was.

12        Q.  And why did you approve the shaker bottle

13   label selected or shown in page 17 of Exhibit

14   Number 1?

15        A.  There wasn't anything wrong with it.

16        Q.  Were you aware of a BlenderBottle shaker

17   bottle lid or label at this time?

18        A.  Yes.

19        Q.  You were aware that BlenderBottle shaker

20   bottles had come with BlenderBottle shaker bottle

21   lids or labels?

22        A.  Labels?  Yeah, I was.

Page 305

1        A.  Social media when we first started was -- it

2   was a lot different.  So kind of the landscape of

3   social media's changed, and it at its current state

4   isn't worth the effort that we can get value

5   elsewhere.

6        Q.  And would you say that you get the most

7   value elsewhere out of Amazon?

8        A.  Yes.

9        Q.  Who is responsible for Hydra Cup's Amazon

10  page?

11       A.  The pages?

12       Q.  Correct.

13       A.  Myself or Joyce would -- I guess that'd be

14  one of the things Joyce would do, is update a page.

15       Q.  And are you responsible for the marketing on

16  the Hydra Cup Amazon pages?

17       A.  Yeah, I am.

18       Q.  And how long have you been responsible for

19  the marketing on the Amazon pages for Hydra Cup?

20       A.  I've been primarily responsible the entire

21  time.

22       Q.  Is Hydra Cup able to track how many monthly

EXHIBIT 2

| | |
|---|---|
| **From:** | Jacob Rosenbaum |
| **To:** | Casey Scott McKay |
| **Cc:** | Meghan Pratschler; Ali Razai; Sean Murray; Christian Boettcher; Lit BBCOML.058L |
| **Subject:** | Trove Brands v. TRRS Magnate LLC - Second Amended Complaint - Our Ref. BBCOML.058L |
| **Date:** | Friday, December 29, 2023 5:46:08 PM |
| **Attachments:** | DRAFT Hydra Cup Second Amended Complaint.docx |

Casey,

In view of the deposition testimony of Mr. Raymus, BlenderBottle intends to amend the complaint to add Thomas Raymus as a named defendant.  Attached please find a proposed Second Amended Complaint, with redlines showing BlenderBottle's proposed changes.

Please let us know by 1:00 pm Pacific on January 2, 2024, if Hydra Cup will stipulate to the amendment.

Best,
Jacob

**Jacob Rosenbaum**
Partner
Jacob.Rosenbaum@knobbe.com
949-721-7615 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/jacob-rosenbaum

# EXHIBIT 3

| | |
|---|---|
| **From:** | Jacob Rosenbaum |
| **To:** | Casey Scott McKay |
| **Cc:** | Ali Razai; Sean Murray; Christian Boettcher; Lit BBCOML.058L |
| **Subject:** | 01/03/24 Meet and Confer Summary - Our Ref. BBCOML.058L |
| **Date:** | Friday, January 5, 2024 10:38:52 AM |

Casey,

Thank you for meeting with us on January 3, 2024 to discuss Hydra Cup's Fourth Supplemental Responses to BlenderBottle's First Set of Interrogatories, BlenderBottle's December 8, 2023 deficiency letter, December 31, 2023 letter regarding Hydra Cup's deposition notices, BlenderBottle's proposed Second Amended Complaint, and Hydra Cup's document production format. Below is a summary of our conversation:

*Document Production Format*

We discussed Hydra Cup's document production format to date.  As we have stated, Hydra Cup must comply with the requirements of the parties' joint Rule 26(f) report, Dkt. 23, and Fed. R. Civ. P. 26 in its document productions.  You averred to us that Hydra Cup's October 31, 2023 production contains the same documents as Hydra Cup's October 24, 2023 production without documents previously identified by Hydra Cup as privileged, and that it was meant to replace the October 24, 2023 production entirely.  We will let you know shortly whether we require any additional files in connection with the October 31, 2023 production.

*Second Amended Complaint*

We discussed BlenderBottle's proposed second amended complaint provided to Hydra Cup on December 29, 2023; specifically, we asked whether Hydra Cup would stipulate to the proposed amended complaint provided. You said that Hydra Cup would not stipulate to such a complaint.  We informed you that BlenderBottle will move for leave to amend the complaint shortly.

*Interrogatories*

**Interrogatories #4 and 6** – We discussed Hydra Cup's promise to supplement its responses to Interrogatory Nos. 4 and 6 after the entry of a protective order in its June 28, 2023 interrogatory responses, and Hydra Cup's current failure to supplement its responses to either interrogatory to provide the promised information.  You promised to provide supplemental responses to these interrogatories by no later than **today, January 5, 2024**.

**Interrogatory #11** – We discussed Hydra Cup's promise to supplement its responses to Interrogatory No. 11 with production numbers pursuant to Fed. R. Civ. P. 33(d) in its June 28, 2023 interrogatory responses, and Hydra Cup's current failure to supplement its responses provide the promised information.  You promised to provide a supplemental response identifying documents responsive to this Interrogatory under Rule 33(d) or to identify total sales in a narrative response by no later than **today, January 5, 2024**.

*Responsive Email Production*

We discussed Hydra Cup's failure to produce any emails in this case, despite email communications being highly likely to exist for Request for Production Nos. 2, 4, 6, 7, 9, and 10.  You indicated that Hydra Cup provided you with emails responsive to these requests, and you promised that Hydra Cup would produce emails responsive to these requests by no later than **today, January 5, 2024**.

*Requests for Production*

**Requests for Production #6** – We discussed Hydra Cup's failure to produce documents regarding the creation, design, testing, development or manufacture of the Accused Products, including the decision to adopt the designs of the Accused Products and any schematics of the designs of the Accused Products. Specifically, we discussed Hydra Cup's failure to produce such documents despite Hydra Cup's promise that it would produce non-privileged responsive documents within its possession, custody, or control that can be located after a diligent search and reasonable inquiry, if any exist, after the entry of a protective order in its June 28, 2023 response to this request. You stated that you would produce emails to and from Hydra Cup's designers, any design files for the Accused Products, and other documents responsive to this request by no later than **today, January 5, 2024**.

**Request for Production #7** – We discussed Hydra Cup's failure to produce documents regarding any license agreements, authorizations to use, or other transfer of rights entered into between Hydra Cup and any third party regarding any of the Accused Products. Specifically, we discussed Hydra Cup's failure to produce such documents despite Hydra Cup's promise that it would produce non-privileged responsive documents within its possession, custody, or control that can be located after a diligent search and reasonable inquiry, if any exist, after the entry of a protective order in its June 28, 2023 response to this request. You stated that you would produce documents responsive to this request by no later than **today, January 5, 2024**.

**Requests for Production #16** – We discussed Hydra Cup's failure to produce documents regarding each manner in which the Accused Products are marketed, advertised, and/or promoted. Specifically, we discussed Hydra Cup's failure to produce such documents despite Hydra Cup's promise that it would produce non-privileged responsive documents within its possession, custody, or control that can be located after a diligent search and reasonable inquiry, if any exist, after the entry of a protective order in its June 28, 2023 response to this request. You stated that you would produce documents responsive to this request, including Amazon Campaign Manager metrics, and other marketing materials for each of the Accused Products, by no later than **today, January 5, 2024**.

*Deposition Issues*

**Number of 30(b)(6) Deposition Topics** – We discussed Hydra Cup's second amended notice of 30(b)(6) deposition served by Hydra Cup on December 29, 2023.  Specifically, we asked whether Hydra Cup would agree to limit its number of deposition topics to less than 50 topics and stated that Hydra Cup's 170 deposition topics currently noticed are excessive.  You stated that you were in the process

of deleting duplicative topics and were willing to delete any topics that requested non-discoverable information, but you were not willing to limit the deposition notice to a set number of topics.  You stated that Hydra Cup views 30(b)(6) depositions as having no limit on the number of topics, and that deposition topics in a 30(b)(6) notice are present for the convenience of the parties rather than serving as a means of preparing a corporate witness to answer questions related to the deposition topics.  You also indicated that you intended to ask questions during a 30(b)(6) deposition that did not correspond to any deposition topics included in any final 30(b)(6) deposition notice.  During the meet and confer call, you also indicated that you are currently in the process of adding additional topics to the outline, and that you intended to do so up until the deposition.  We requested any case law or legal authority supporting Hydra Cup's positions, but you did not have any to provide on the meet and confer call.  You confirmed that Hydra Cup is not willing to limit its notice to less than 50 topics.  We informed you that BlenderBottle will seek a protective order.

**Location of Depositions** – We discussed the locations for the 30(b)(1) and 30(b)(6) depositions currently noticed by Hydra Cup.  Specifically, we informed you that the noticed deponents are all located in Utah and that the residence of the deponent determines the proper location for the deposition of corporate witnesses.  You stated that you, as the attorney, would rather take depositions in Utah, and that you may agree with some of the case law we provided, but your client insisted on attending the depositions himself and that he did not want to travel from Sacramento.  You indicated this is why the locations for the depositions were noticed for Sacramento, CA.  We disagreed that convenience of the defendant was determinative of deposition location.  You indicated that you would take another look at the case law regarding deposition locations and discuss again with your client.  You agreed to provide Hydra Cup's final positions regarding the deposition locations of each of the currently noticed depositions by **January 4, 2024**.  As we did not hear from you, we assume you are insisting on the depositions taking place in Sacramento.  Therefore, we will move for a protective order.

Best,
Jacob


**Jacob Rosenbaum**
Partner
Jacob.Rosenbaum@knobbe.com

949-721-7615 **Direct**

**Knobbe** **Martens**

2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/jacob-rosenbaum

# EXHIBIT 4

Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St. 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com (415) 335-9226

-and-

Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 712
Washington, DC, D.C. 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendant TRRS Magnate, LLC dba Hydra Cup*

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

**TROVE BRANDS, LLC D/B/A THE BLENDERBOTTLE COMPANY**

       *Plaintiff,*

                     **Case No: 2:22-cv-02222-TLN-CKD,**

       *v.*

**TRRS MAGNATE LLC D/B/A HYDRA CUP,**

       *Defendant.*

1

– – – – – – – – – – – – – – – – – – – – – – – – – – – –X

## DEFENDANT HYDRA CUP'S SUPPLEMENTAL OBJECTIONS AND RESPONSES PLAINTIFF BLENDERBOTTLE'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure the applicable Local Rules, Defendant Hydra Cup TRRS Magnate LLC d/b/a Hydra Cup ("**Hydra Cup**"), by and through its attorneys, provides its Supplemental Responses to Plaintiff Trove Brands, LLC d/b/a the BlenderBottle Company ("**BlenderBottle**")'s First Set of Interrogatories (the "**Interrogatories**") to address the issues BlenderBottle specified in its Discovery Deficiency Letter, dated 07 August 2023, as follows:

## PRELIMINARY STATEMENT

1.  Hydra Cup's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Hydra Cup's right to rely on other facts or documents at trial.

2.  By making the accompanying responses and objections to BlenderBottle's

Requests for Interrogatories, Hydra Cup does not waive, and hereby

expressly reserves, its right to assert any and all objections as to the

admissibility of such responses into evidence in this action, or in any

other proceedings, on any and all grounds including, but not limited to,

competency, relevancy, materiality, and privilege. Further, Hydra Cup

makes the responses and objections herein without in any way implying

that it considers the Interrogatory, and responses to the Interrogatory, to

be relevant or material to the subject matter of this action.

3.  A response to an Interrogatory stating an answer or objections shall not

be deemed or construed that there are, in fact, responsive documents,

that Hydra Cup performed any of the acts described in the Interrogatory,

or definitions and/or instructions applicable to the Interrogatory, or that

Hydra Cup acquiesces in the characterization of the conduct or activities

contained in the Interrogatory, or definitions, and/or instructions

applicable to the Interrogatory.

4.  Hydra Cup expressly reserves the right to supplement, clarify, revise, or

correct any or all of the responses and objections herein, and to assert

additional objections or privileges, in one or more subsequent
supplemental response(s).

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1. Hydra Cup objects to the "Definitions" and "Instructions" sections of the
   Interrogatories to the extent such definitions and instructions are overly
   broad, vague and ambiguous and to the extent they seek to impose
   obligations beyond those (a) imposed by the Federal Rules of Civil
   Procedure, the rules of this Court, or any other applicable rules or law
   and/or (b) the Format for ESI described in the Joint Scheduling Order
   entered by the Court, ECF Doc. No. 29.

2. Hydra Cup objects to BlenderBottle's definition of "TRRS Magnate,"
   "Hydra Cup," "You," "Your," and "representative" on the ground that they
   result in Interrogatories and requests for information that is not in the
   possession, custody, or control of Hydra Cup. The definition is overly
   broad and unduly burdensome to the extent it attempts to extend the
   scope of these Interrogatories to information in the possession, custody,
   or control of individuals or entities other than Hydra Cup and its present
   employees, principals, attorneys, and consultants either assigned to or

4

reviewing this case. Hydra Cup cannot answer Interrogatories that require information and/or knowledge outside of its possession, custody, or control.

3. Hydra Cup also objects to BlenderBottle's definition of the terms "TRRS Magnate," "Hydra Cup," "You," "Your," or "representative" to the extent the definition encompasses Hydra Cup's counsel and/or consulting experts and, therefore, purports to call for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection.

4. Hydra Cup objects to BlenderBottle's definition of "Asserted Patents" as overly broad and unduly burdensome to the extent it includes any patent(s) other than US Patent No. D510,235 ("D235 Bottle Patent"),[1] US Patent No. D696,551 ("D551 Lid Patent"),[2] US Patent No. D697,798 ("D798 Container Patent").[3]

5. Hydra Cup objects to BlenderBottle's definition of "Asserted Trade Dresses" as overly broad and unduly burdensome to the extent it includes

_____

[1] *See* First Amended Complaint, ¶ 4 (ECF No. 19.).

[2] *See id*. at ¶ 5.

[3] *See id*. at ¶ 6.

any trade dresses other than U.S. Trademark Registration No. 6,245,626 "Agitator Trade Dress",[4] U.S. Trademark Registration No. 6,800,019 (the "Lid Trade Dress"),[5] the "Unregistered Bottle Trade Dress,"[6] and the "Unregistered Label Trade Dress."[7]

6. Hydra Cup objects to BlenderBottle's definition of "Accused Products" as overly broad and unduly burdensome to the extent it includes any products other than the ten bottles listed in Paragraph 48 of the Amended Complaint (collectively, the "Hydra Cup Shaker Bottles"), the lid in Paragraph 49 of the Amended Complaint (the "Hydra Cup Shaker Bottle Lid"), the label in Paragraph 51 of the Amended Complaint (the "Hydra Cup Label"), and the four agitators in Paragraph 73 of the Amended Complaint (collectively the "Hydra Cup Spherical Agitators").

7. Hydra Cup objects to BlenderBottle's definition of "prior art" as inaccurate, overly broad and unduly burdensome, vague and ambiguous, and as seeking a legal conclusion.

---

[4] *See id*. at ¶&para 22-24.

[5] *See id*. at ¶&para 13-16.

[6] *See id*. at ¶&para 17-18.

[7] *See id*. at ¶&para 25-26.

8.   Hydra Cup objects to BlenderBottle's definition of "communication" as overly broad and unduly burdensome and to the extent it purports to impose requirements or obligations on Hydra Cup beyond those set forth in the Federal Rules of Civil Procedure.

9.   Hydra Cup objects to the definition of the terms "referring to," "relating to," "concerning," or "regarding" as vague and ambiguous and overly broad and unduly burdensome.

10.  Hydra Cup objects to the Interrogatories to the extent they purport to require Hydra Cup to answer or disclose "all," "any," "each" or other similarly expansive or all-inclusive terms.

## GENERAL OBJECTIONS

Hydra Cup makes the following general responses and objections ("**General Objections**") to the definitions, instructions, and Interrogatory in the Interrogatories. These General Objections are hereby incorporated into each specific response below as if fully repeated in each answer, and are intended, and shall be deemed, to be in addition to any specific objections that Hydra Cup may have to the competency, admissibility, and/or relevance of any answer or document at any hearing or trial in this action, and answers

7

shall not be deemed to be a waiver of such objections. Hydra Cup's objections and answers shall be without prejudice to any objections that Hydra Cup may have to the competency, admissibility, and/or relevance of any answer or document at any hearing or trial in this action, and answers shall not be deemed to be a waiver of such objections. The assertion of the same, similar, or additional objections or partial responses to individual interrogatories does not waive any of these General Objections.

1.  Hydra Cup objects to each Instruction, Definition, and Interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.  Hydra Cup objects to the Interrogatories to the extent they are vague, ambiguous, overbroad, oppressive, or unduly burdensome.

3.  Hydra Cup objects to each Interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

4.  Hydra Cup objects to the Interrogatories to the extent they call for information that is not relevant to any party's claims or defenses and is

8

not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

5. Hydra Cup objects to the Interrogatories to the extent they call for information and/or documents outside the possession, custody, or control of Hydra Cup. Such discovery is overly broad and unduly burdensome.

6. Hydra Cup objects to any Interrogatory to the extent it calls for information and/or documents protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege, protection, or rule of confidentiality. No privileged information, communication or document will be provided in response to the Interrogatories. By responding to any particular Interrogatory, Hydra Cup does not intend to waive, nor does it waive, any applicable privilege that it may have, and Hydra Cup specifically intends to assert the same. Should any such disclosure by Hydra Cup occur, it is inadvertent and shall not constitute a waiver of any privilege.

7.  Hydra Cup objects to the Interrogatories to the extent they call for information and/or documents of a confidential and/or proprietary nature.

8.  Hydra Cup objects to the Interrogatories to the extent they seek information and/or documents that are already in BlenderBottle's knowledge, possession, custody and/or control, or information to which BlenderBottle has or had equal access, including information publicly available to BlenderBottle, because such discovery is unduly burdensome and oppressive. BlenderBottle has reasonable access to such information in the absence of responses by Hydra Cup.

9.  Hydra Cup objects to each Instruction, Definition, and Interrogatory as overly broad and unduly burdensome to the extent it seeks information that is readily or more accessible to BlenderBottle from BlenderBottle's own files, from documents or information in BlenderBottle's possession, or from documents or information that BlenderBottle previously produced to Hydra Cup. Responding to such Interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests and Interrogatory is substantially the same or less for BlenderBottle as for Hydra Cup. This objection encompasses, but is not limited to, all correspondence between Hydra

Cup and BlenderBottle, all other information provided by BlenderBottle to Hydra Cup, and all information produced by Hydra Cup to BlenderBottle in response to discovery requests of BlenderBottle. All such documents and information will not be produced.

10. Hydra Cup objects to the Interrogatories to the extent that BlenderBottle purports to ascribe any particular meaning to them. Hydra Cup will respond to the Interrogatories as it reasonably understands and interprets them.

11. To the extent any of BlenderBottle's Interrogatories seeks answers that include expert material, including but not limited to survey materials, Hydra Cup objects to any such requests and Interrogatory as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

12. Hydra Cup incorporates by reference every General Objection set forth above into each specific response set forth below. A specific response may

repeat a General Objection for emphasis or some other reason. The

failure to include any General Objection in any specific response does not

waive any General Objection to that request. Moreover, Hydra Cup does

not waive its right to amend its Responses.

13. Hydra Cup objects to BlenderBottle's definitions of "Hydra Cup,"

"Defendant," "You," and "Your" on the ground that they result in requests

for information that is not in the possession, custody or control of Hydra

Cup. Hydra Cup will not search for or provide information that is not

within its possession, custody, or control. Hydra Cup further objects on

the grounds that BlenderBottle's definition of these terms seeks

information protected by the attorney-client privilege, the work product

doctrine, and/or any other applicable privilege or protection as it includes

"attorneys" and to the extent it encompasses consulting experts. Hydra

Cup also objects that BlenderBottle's definition of these terms calls for

legal conclusions as to the nature of any person's relationship to Hydra

Cup. Hydra Cup declines to extend the definition of "Hydra Cup," "You,"

and "Your," to incorporate such legal conclusions. The terms "Hydra

Cup's," "You," and "Your," and shall refer exclusively to Defendant Hydra

Cup TRRS Magnate LLC d/b/a Hydra Cup.

14. Hydra Cup objects to the scope of the Interrogatories on the grounds that they are overbroad and seek irrelevant information because they are unlimited in time. Unless otherwise indicated, Hydra Cup will provide responses relating only to matters occurring between 2018 and the present date ("**Relevant Period**").

15. Hydra Cup objects to the scope of the Interrogatories on the grounds that they are overbroad and seek irrelevant information because they are unlimited geographically. Unless otherwise indicated, Hydra Cup will provide responses relating only to matters occurring in the United States ("**Relevant Region**").

16. Each General Objection is hereby expressly incorporated by reference into each of the following specific objections and responses.

17. These responses are based on discovery available as of the date hereof. Further discovery, independent investigation, or other analysis may lead to the discovery of additional information, which may lead to additions or changes to the responses set forth herein. These responses are given without prejudice to Hydra Cup's right to disclose and rely on subsequently discovered information.

# SUPPLEMENTAL INTERROGATORY RESPONSES

Subject to the foregoing General Objections and the specific objections made below, Hydra Cup objects and responds to the Interrogatories as follows:

**INTERROGATORY NO. 1:** Identify all products You currently sell and/or previously sold with a shaker bottle, shaker bottle lid, agitator, and/or shaker bottle label, including all associated names, colors, variations, and models.

**SUPPLEMENTAL RESPONSE:** Hydra Cup incorporates by reference each of its General Objections and Objections to Definitions and Instructions set forth above and in its Answers to BlenderBottle's First Interrogatories as well as its Objections to this Interrogatory from its First Answers. Hydra Cup objects that it is not required to marshal all of its proof at this early stage of the proceeding, and fact and expert discovery is still ongoing. Hydra Cup objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protection. Hydra Cup further objects to this Interrogatory as it calls for a legal conclusion. Subject to and without waiving its General Objections and the foregoing specific

14

**INTERROGATORY No. 13:** For each of the Accused Products, identify and describe the role of all persons and entities involved in the commercialization of the product, including, but not limited to, the persons and entities involved in designing, developing, manufacturing, producing, importing, marketing, and selling of each of the Accused Products.

**SUPPLEMENTAL RESPONSE:** Hydra Cup incorporates by reference each of its General Objections and Objections to Definitions and Instructions set forth above and in its Answers to BlenderBottle's First Interrogatories. Hydra Cup objects to the phrase "identify and describe" as vague, undefined, overly broad, burdensome, unreasonably cumulative, and oppressive in requiring it to engage in an unlimited and undefined narrative reconstruction. Also, Hydra Cup objects to the terms and phrases "identify and describe," "role," "persons," "developing," "manufacturing," "producing," "importing," "marketing," and "selling" to the extent that they are undefined, vague, ambiguous, overbroad, and/or unduly burdensome. Hydra Cup additionally objects to this Interrogatory as premature because it cannot know or anticipate all responsive information until discovery and investigation are complete. Further, Hydra Cup objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client

privilege, the work product doctrine, the right to privacy, or any other applicable privilege. Moreover, Hydra Cup objects to this Interrogatory as vague and ambiguous to the extent it fails to describe with specificity and particularity the information that BlenderBottle seeks. Hydra Cup objects to this Interrogatory to the extent it seeks information publicly, equally, and/or more available to the propounding party or third parties. Hydra Cup also objects to the Interrogatory to the extent that it seeks information not relevant to the parties' claims and defenses and/or proportional to the needs of the case, including without limitation the identification of persons or entities outside of Hydra Cup.

Additionally, Hydra Cup objects to the Interrogatory to the extent it requires Hydra Cup to provide a legal analysis, determination, opinion, and/or conclusion. Hydra Cup further objects to the Request to the extent it is cumulative, repetitive, and/or duplicative of other Interrogatories. Moreover, Hydra Cup objects to the extent this Interrogatory is otherwise vague, ambiguous, unduly burdensome, oppressive, overly broad, designed to annoy or harass Hydra Cup, is based upon any incorrect factual assumption, and/or exceeds the requirements of the Federal Rules of Civil Procedure, the Local Rules, and/or the Court's Standing Orders. Hydra Cup objects to the

Interrogatory because it is compound, conjunctive, and/or disjunctive, and contains discrete subparts that, together with BlenderBottle's other Interrogatories, exceed the number permitted under Rule 33 of the Federal Rules of Civil Procedure. Also, Hydra Cup objects to the extent this Interrogatory requests the identification of persons and/or entities not within its knowledge. Hydra Cup additionally objects to the Interrogatory because it is not sufficiently limited in time or scope and is therefore overbroad and unduly burdensome. Further, Hydra Cup objects to the extent this Interrogatory seeks information that is trade secret, highly confidential, private, subject to Hydra Cup's confidentiality obligations to third parties, and/or proprietary to Hydra Cup, and will not provide any confidential information in this action until the parties enter into an appropriate and mutually agreeable protective order approved by the Court. Subject to and without waiving any of its general and/or specific objections above, and based on information reasonably available to it and the discovery to date, which has just recently begun and is ongoing, Hydra Cup invokes its option to produce records under Rule 33(d). The answer to this Interrogatory may be derived or ascertained from the documents Hydra Cup already produced, the burden of which is substantially the same for either party. Accordingly, please see

Hydra Cup's Initial Disclosures, its Objections and Responses to

BlenderBottle's First Set of Interrogatories, its Supplemental Objections and

Responses to BlenderBottle's First Set of Interrogatories, and the documents

and supplemental documents Hydra Cup produced in response to Plaintiff's

First Set of Requests for Production. Also see all non-privileged documents in

Hydra Cup's possession, custody, or control relating to the Accused Products.

Please also see Hydra Cup's Answer and Affirmative Defenses to Complaint

as well as Hydra Cup's Counterclaim and Hydra Cup's Answer to

BlenderBottle's First Amended Complaint, ECF Nos. 16, 19. Subject to and

without waiving its General Objections and the foregoing specific objections,

Hydra Cup further answer as follows: Tommy Raymus manages the projects,

handling marketing and sales; Jeff Harlan creates the 3D design, turning

design sketches into 3D models; Ginikanwa handles industrial design and

helps with developing various design concepts; Alec is the manager at Tianqi,

and he helps with 3D designs and help build the molds; Nora Lin is the

manager at Tianqi who took the 3D designs and helps build the molds; and

Joyce Ong is Mr. Raymus's assistant who handles shipping and purchase

orders. Hydra Cup reserves the right to amend and/or supplement the

information provided in this Response with additional and/or different

information, responses, and objections, in conformity with and to the fullest extent allowed by the Federal Rules of Civil Procedure, the Local Rules, and/or the Court's Standing Orders.

**INTERROGATORY NO. 14:** Describe in detail when and how You became aware of each of the Asserted Patents, including identifying the date You first became aware of each of the Asserted Patents, the persons involved and their contact information, and any documents relating thereto.

**SUPPLEMENTAL RESPONSE:** Hydra Cup incorporates by reference each of its General Objections and Objections to Definitions and Instructions set forth above and in its Answers to BlenderBottle's First Interrogatories. Hydra Cup objects to the phrase "Describe in detail" as vague, undefined, overly broad, burdensome, unreasonably cumulative, and oppressive in requiring it to engage in an unlimited and undefined narrative reconstruction. Also, Hydra Cup objects to the terms and phrases "Describe in detail," "when and how," "became aware," "identifying," "date," "persons," "involved," "contact information," and "documents" to the extent that they are undefined, vague, ambiguous, overbroad, and/or unduly burdensome. Hydra Cup additionally objects to this Interrogatory as premature because it cannot know or anticipate all responsive information until discovery and

34