Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Sean M. Murray (SBN 213,655)
sean.murray@knobbe.com
Jacob R. Rosenbaum (SBN 313,190)
jacob.rosenbaum@knobbe.com
Christian D. Boettcher (SBN 342,950)
christian.boettcher@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Trove Brands, LLC
d/b/a The BlenderBottle Company

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROVE BRANDS, LLC d/b/a THE BLENDERBOTTLE COMPANY, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TRRS MAGNATE LLC d/b/a HYDRA CUP,<br><br>Defendant. | No. 2:22-cv-02222-TLN-CKD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY**<br><br>Hon. Troy L. Nunley |

**TABLE OF CONTENTS**

**Page No.**

I.   INTRODUCTION ..................................................................................................1

II.  HYDRA CUP CONCEDES THAT BLENDERBOTTLE SHOULD BE
     PERMITTED TO FILE ITS MOTION TO COMPEL............................................1

III. HYDRA CUP DOES NOT DISPUTE THE FACTS THAT ESTABLISH
     GOOD CAUSE TO MODIFY THE SCHEDULING ORDER...............................1

IV.  HYDRA CUP'S ARGUMENTS FAIL TO REBUT
     BLENDERBOTTLE'S SHOWING OF GOOD CAUSE ......................................3

V.   CONCLUSION.......................................................................................................7

# TABLE OF AUTHORITIES

**Page No(s).**

## OTHER AUTHORITIES

L.R. 251 ...................................................................................................................................4

Rule 30..................................................................................................................................3, 4

BlenderBottle submits the following reply memorandum in support of its cross-motion for a limited extension of the discovery deadline to allow BlenderBottle to file its motion to compel and to depose Hydra Cup after the Court rules on that motion.

## I. INTRODUCTION

Hydra Cup does not even argue that it provided the basic discovery that BlenderBottle has been seeking – in vain – since this case began.  Nor does Hydra Cup dispute that it *deliberately withheld critical emails* relating to the design of the accused products and only produced them after BlenderBottle obtained them from third parties.  And Hydra Cup does not deny that it twice refused to participate in the preparation of a joint statement, thereby preventing BlenderBottle from filing a motion to compel.  Hydra Cup's opposition fails to rebut BlenderBottle's showing of good cause to modify the scheduling order to permit BlenderBottle to seek the basic discovery Hydra Cup has been withholding and use the fruits of that discovery in a deposition of Hydra Cup.  BlenderBottle respectfully requests that its motion be granted.

## II. HYDRA CUP CONCEDES THAT BLENDERBOTTLE SHOULD BE PERMITTED TO FILE ITS MOTION TO COMPEL

Hydra Cup's opposition acknowledges that BlenderBottle should be granted leave to re-file its motion to compel.  For example, Hydra Cup argues that "BlenderBottle does not have good cause for seeking any late discovery *beyond its pending Motion to Compel*…."  Opp. at 9 (emphasis added).  Likewise, Hydra Cup's opposition concludes by asking the Court to "deny BlenderBottle's request to extend the discovery deadline to conduct any late discovery *beyond its pending Motion to Compel*…."  *Id.* at 21 (emphasis added).  Thus, the only dispute concerning BlenderBottle's cross-motion is whether BlenderBottle should also be permitted to depose Hydra Cup after its motion to compel is filed and decided.

## III. HYDRA CUP DOES NOT DISPUTE THE FACTS THAT ESTABLISH GOOD CAUSE TO MODIFY THE SCHEDULING ORDER

In its cross-motion, BlenderBottle argued that good cause exists to modify the scheduling order because Hydra Cup has refused to provide routine discovery in this case; because BlenderBottle demonstrated diligence by conferring with Hydra Cup on multiple

occasions and by attempting to file a timely motion to compel; and because Hydra Cup refused to participate in preparing a joint statement that would have allowed BlenderBottle to seek that discovery through a motion to compel.  Dkt. 79-1 at 6–8.

In its opposition, Hydra Cup does not contend that it provided the routine discovery that BlenderBottle has been attempting to obtain.  For example, Hydra Cup does not argue that its interrogatory responses included a list and images of the shaker bottles it has sold, as requested by BlenderBottle's Interrogatory No. 15.  Without that information, BlenderBottle cannot compile a complete list of the accused products.

Similarly, Hydra Cup does not claim to have produced sales data broken down by product, even for the subset of accused products shown in the complaint.  Nor does it claim to have produced documents that mention BlenderBottle, or to have responded to BlenderBottle's interrogatories seeking a list of the keywords and products it targets in marketing the accused products, or to have produced all of its communications with its product designers, its manufacturer and its customers.  Likewise, while Hydra Cup disputes their relevance, it does not dispute that it deliberately withheld design documents and emails until after BlenderBottle obtained them from two of Hydra Cup's outside product designers.  Nor does Hydra Cup dispute that the information and documents BlenderBottle seeks are not only discoverable, but central to the parties' dispute and routinely produced in intellectual property cases.

Finally, Hydra Cup does not dispute that BlenderBottle met and conferred with Hydra Cup on multiple occasions in an attempt to obtain this routine discovery.  Nor does Hydra Cup deny that it *twice* refused to provide its positions on the discovery issues raised in the joint statement in support of BlenderBottle's motion to compel, the second time in violation of a court order requiring the parties to submit a compliant joint statement.

The result of Hydra Cup's systematic and intransigent refusal to participate in discovery is that BlenderBottle has been denied evidence on key issues in this case, and its ability to prepare its case for trial has been significantly prejudiced.  In particular, because Hydra Cup did not provide this basic discovery before the close of fact discovery, BlenderBottle did not have the information and documents necessary to conduct a meaningful deposition of Hydra

Cup before the fact-discovery cutoff. Thus, the undisputed facts establish good cause to grant BlenderBottle's cross-motion and permit BlenderBottle to depose Hydra Cup after the magistrate judge rules on BlenderBottle's motion to compel.

## IV. HYDRA CUP'S ARGUMENTS FAIL TO REBUT BLENDERBOTTLE'S SHOWING OF GOOD CAUSE

In the introductory paragraph of its brief, Hydra Cup argues that the parties' requests to extend discovery "are not equal." Opp. at 4. BlenderBottle agrees. Unlike Hydra Cup, BlenderBottle has provided the basic discovery that is routinely provided in intellectual property cases. BlenderBottle has produced the design documents for the BlenderBottle products that embody the patented designs and the asserted trade dresses, including their CAD files, and it searched the emails its designers sent during the design process for any discussion of those products. Boettcher Decl. ¶ 3. BlenderBottle has also produced sales and profitability data broken down by product; market share data; advertising and marketing documents, including promotional videos; summaries of its advertising and marketing expenses; emails and other documents mentioning Hydra Cup; court documents, contentions and expert reports for the prior cases involving the asserted intellectual property; all prior art in its possession; its licenses and settlement agreements relating to the asserted intellectual property; and its evidence of actual confusion by consumers. *Id.* ¶¶ 4-8. If Hydra Cup had produced comparable information and documents, BlenderBottle would not have been required to file a motion to compel or the present motion.

In the section of its brief addressing BlenderBottle's cross-motion, Hydra Cup asserts that BlenderBottle is attempting "to sneak in other late discovery" beyond the issues raised in its motion to compel. Opp. at 11-12. But BlenderBottle's cross-motion expressly seeks leave to depose Hydra Cup after the close of discovery, and it explains why there is good cause to grant BlenderBottle that relief. Hydra Cup's accusation that BlenderBottle's cross-motion is sneaky or otherwise deceptive is baseless.

Hydra Cup suggests BlenderBottle was not diligent because it twice cancelled a noticed Rule 30(b)(6) deposition of Hydra Cup. Opp. at 12. However, in each instance, BlenderBottle

1  was required to cancel the deposition because the deposition would not have been meaningful
2  without the basic information and documents Hydra Cup refused to provide. For example, if
3  BlenderBottle had proceeded with the deposition, it would have been forced to depose Hydra
4  Cup without sales data or even a complete list of the accused products. To take another
5  example, BlenderBottle would have been unable to authenticate and question Hydra Cup about
6  the damning design emails Hydra Cup withheld, emails in which Hydra Cup expressly
7  instructed its designers to copy BlenderBottle's design. *See, e.g.*, Boettcher Decl., Ex. 1.
8  BlenderBottle did everything it could to obtain the discovery it needed for the deposition,
9  including by conferring with Hydra Cup multiple times[1] and by twice attempting to file a
10 motion to compel. Boettcher Decl. ¶ 10. The cancellation of the Rule 30(b)(6) deposition was
11 the result of Hydra Cup's intransigence, not BlenderBottle's lack of diligence.

12  Hydra Cup also argues that "BlenderBottle opining it did not have enough information
13 to conduct a deposition on the final day of discovery is not good cause for extending discovery.
14 BlenderBottle's subjective opinion is not the legal standard here." Opp. at 13-14. But it is
15 undisputed that Hydra Cup has not provided the basic discovery discussed above, such as a
16 complete list of its shaker bottle products, sales data broken down by product, or all of its emails
17 with designers, manufacturers and customers. This discovery is indisputably relevant to the
18 case. Significantly, Hydra Cup never argues that any of these categories of discovery are
19 irrelevant or beyond the scope of legitimate discovery.

20  Next, Hydra Cup argues that BlenderBottle should "have brought its motion to compel
21 back in September 2023 when it first started threatening to compel instead of waiting until the
22 end of discovery." Opp. at 14. Not so. BlenderBottle properly sought to resolve its discovery
23 disputes through the meet-and-confer process before appealing to the Court for assistance, as
24 the Court's rules require. *See, e.g.*, L.R. 251(b). Those efforts were unsuccessful. Although

---

[1] Hydra Cup suggests that BlenderBottle would not meet and confer on the parties' discovery disputes. Opp. at 13:11-16. On the contrary, BlenderBottle conferred with Hydra Cup on at least six occasions, including five times in the last two months of fact discovery. Boettcher Decl. ¶ 10.

1  Hydra Cup agreed to supplement its interrogatory responses and document collection four
2  times over a two-and-a-half-month period, this supplementation addressed only some of the
3  parties' discovery issues.[2] Eventually, the approaching discovery cutoff forced BlenderBottle
4  to stop conferring with Hydra Cup and file a motion to compel.

   Hydra Cup next argues that the emails and documents it exchanged with its designer,
6  Jeff Harlan, are irrelevant because "none of the designs discussed in the Harlan Documents are
7  embodied in any of the Accused Products." Opp. at 15-16. Hydra Cup's argument is without
8  merit for two reasons.

   First, Hydra Cup is simply wrong that it does not use Harlan's design in the accused
10 products. The red shaker-bottle lid shown below is Mr. Harlan's design; the image was
11 attached to emails Mr. Harlan exchanged with Hydra Cup's CEO, Thomas Raymus. Boettcher
12 Decl., Ex. 2 at 4. In one email, which BlenderBottle obtained directly from Mr. Harlan, ▮.
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮. Specifically, he instructs Harlan to ▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮  Id. at 2 (emphasis added). The images below demonstrate
16 that Harlan's design was virtually identical to the accused products.

  

**Accused Product**

24 See Boettcher Decl. at Ex. 2, p. 4 (Raymus email) and ¶ 12 (accused product). Hydra Cup
25 withheld this email until BlenderBottle obtained it from Mr. Harlan directly. Id. ¶ 11.

---

[2] Hydra Cup's supplementation did resolve some of the issues on which the parties conferred. For example, Hydra Cup produced profit-and-loss statements and supplemented its interrogatory responses to provide its invalidity contentions.

In another email BlenderBottle obtained directly from Mr. Harlan, Mr. Raymus instructs Harlan to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at Ex. 1, p. 1 (emphasis added). Harlan responded by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The images below demonstrate that Harlan's design was virtually identical to a Hydra Cup product BlenderBottle accused of infringement in its complaint.




**Accused Product**

*See id.* at Ex. 1, p. 4 (Harlan email attachment) and ¶ 13 (accused product). Hydra Cup has not produced this email chain in this case. *Id.* ¶ 9.

Second, even if Hydra Cup's position on the Harlan design documents were correct, it was nevertheless improper for Hydra Cup to conceal these documents during discovery. Hydra Cup cannot rely on its secretly held view that evidence is irrelevant to justify concealing that evidence. The proper course of action was to produce the Harlan emails during discovery and then argue their relevance to the jury. By choosing to conceal this highly relevant evidence of copying, Hydra Cup flouted the federal rules of civil procedure and deprived BlenderBottle of the ability to probe Hydra Cup's interpretation of the documents in a deposition.

Worse, it appears Hydra Cup may have destroyed evidence during this litigation. Hydra Cup now claims to have produced all relevant documents in its possession. Opp. at 14 ("Hydra Cup plans to simply declare that it has produced all requested documents and information in response to BlenderBottle's anticipated Motion to Compel."). Hydra Cup did produce many

of its emails with Harlan *after BlenderBottle discovered them by subpoenaing Mr. Harlan*. Boettcher Decl., ¶ 14.  But Hydra Cup has not produced all of the emails it exchanged with Harlan and Hydra Cup's other outside designers, Ginikanwa Uzegbu and Dare Devil Display Works, LLC.  *Id.* ¶¶ 15-16.  It is hard to imagine how Hydra Cup could have "produced all requested documents and information" in its possession unless it destroyed these missing emails.

Finally, Hydra Cup insists that many of its questionable litigation tactics – such as filing overlong briefs, serving over seven hundred written discovery requests, and issuing an improper subpoena on a Trademark Office examining attorney – do not constitute good cause to grant BlenderBottle's cross-motion.  Opp. at 17-19.  BlenderBottle has never argued otherwise.  BlenderBottle raised these litigation tactics in opposing Hydra Cup's motion for a sixty-day, non-reciprocal extension of discovery.  Dkt. 71-1 at 2.  They are relevant to the last *Pomona* factor, the prejudice BlenderBottle would suffer if Hydra Cup's motion were granted.  To show that ***BlenderBottle's cross-motion*** is supported by good cause, BlenderBottle pointed to Hydra Cup's refusal to provide basic discovery, its concealment of highly relevant evidence, BlenderBottle's diligent efforts to meet and confer with Hydra Cup, and Hydra Cup's strategy of preventing BlenderBottle from bringing a motion to compel by refusing to participate in preparing a joint statement.  BlenderBottle respectfully submits that these facts establish good cause to grant BlenderBottle's cross-motion.

## V. <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant BlenderBottle's cross-motion for leave to file its motion to compel and depose Hydra Cup after the close of fact discovery.

|   |   |   |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | | |
| 3 | | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| 4 | Dated: March 18, 2024 | By: */s/ Jacob R. Rosenbaum* |
| 5 | | Ali S. Razai<br>Sean M. Murray |
| 6 | | Jacob R. Rosenbaum<br>Christian D. Boettcher |
| 7 | | Counsel for Plaintiff TROVE BRANDS, LLC d/b/a<br>THE BLENDERBOTTLE COMPANY |

-8- PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY
Case No. 2:22-CV-02222-TLN-CKD

**CERTIFICATE OF SERVICE**

I am a citizen of the United States of America, and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On March 18, 2024, I served **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION TO MODIFY SCHEDULING ORDER AND PLAINTIFF'S CROSS-MOTION** on defendant TRRS Magnate LLC d/b/a Hydra Cup shown below via CM/ECF:

MEGHAN PRATSCHLER
meghan@meghantheattorney.com
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Telephone: (415) 335-9226

CASEY SCOTT MCKAY
casey@mclaw.io
1441 U St. NW, Suite 712
Washington, DC, D.C. 20009
Telephone: (202) 743-1972

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on March 18, 2024, at San Diego, California.

/s/ Estefania Munoz
Estefania Munoz