UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROVE BRANDS, LLC, d/b/a BlenderBottle Company,<br><br>Plaintiff,<br><br>v.<br><br>TRRS MAGNATE LLC, d/b/a Hydra Cup,<br><br>Defendant. | No. 2:22-cv-02222-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Plaintiff Trove Brands LLC d/b/a The Blender Bottle Company's ("Plaintiff") Opening Claim Construction Brief (ECF No. 34) and Defendant TRRS Magnate LLC d/b/a Hydra Cup's ("Defendant") Opening Claim Construction Brief (ECF No. 41). The parties filed responsive claim construction briefs. (ECF Nos. 43, 44.) Additionally, the Court held a claim construction hearing regarding the parties' briefs on March 25, 2024 (the "Claim Construction Hearing"). (ECF No. 78.) The Court considered the parties' briefing and construes the relevant claim language below.

///

///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an intellectual property dispute between the parties. Plaintiff is a Utah limited liability company and Defendant is a California limited liability company. (ECF No. 19 at 2–4.) Both parties are in the business of manufacturing and selling shaker bottles. (*Id.*) A shaker bottle uses an agitator to mix powder with liquids. (ECF No. 78.) Plaintiff, using innovative technology and design, alleges it created shaker bottles that "revolutionized the way dietary supplements are mixed and consumed." (*Id.* at 3.) Based on its allegedly unique design, Plaintiff obtained various design patents from the United States Patent and Trademark Office for its bottle (Patent No. D510,235) (the "Bottle Patent"), lid (Patent No. D696,551) (the "Lid Patent"), and container (Patent No. D697,798) (the "Container Patent"). (*Id.* at 3–4.) Plaintiff also obtained United States Trademark Registration numbers for its lid (No. 6,800,019) and agitator trade dress (No. 6,245,626). (*Id.* at 3–5.) Plaintiff's shaker bottles also bear a distinctive label trade dress, including a thick black center band, grey trimming on the top and bottom, and white text in the center of the label. (*Id.* at 5–6.)

 

**The Bottle Patent**            **The Lid Patent**            **The Container Patent**

Plaintiff alleges Defendant manufactures and sells shaker bottles that look nearly identical to Plaintiff's shaker bottles and infringe on Plaintiff's various design patents and unique trade dress.  (*Id.* at 4.)  As a result, Plaintiff initiated the instant action on December 14, 2022.  (ECF No. 1.)  Plaintiff filed the operative First Amended Complaint ("FAC") on March 3, 2023, asserting claims against Defendant for: (1) design patent infringement of its Bottle, Lid, and Container Patents, in violation of 35 U.S.C. § 271; (2) trade dress infringement in violation of 15 U.S.C. § 1125(a); (3) trade dress infringement in violation of 15 U.S.C. § 1114; (4) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); and (5) unfair competition in violation of California Business and Professions Code §§ 17200, et seq.  (ECF No. 19.)  On November 30, 2023 and December 8, 2023, the parties filed their respective opening claim construction briefs.  (ECF Nos. 35, 41.)

**II.    STANDARD OF LAW**

"A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995).  All design patents include a claim, which "describe[s] the exact scope of an invention and its manufacture to secure to the patentee all to which he is entitled and to apprise the public of what is still open to them." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996).  "Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

It is well settled that claim construction is "exclusively within the province of the court." *Markman*, 517 U.S. at 372.  Construction of design patents differs from construction of utility patents because design patents generally claim a design "as shown in drawings." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc).  This is because "[w]ords cannot easily describe ornamental designs." *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016).  As such, the Federal Circuit has "cautioned...trial courts about excessive reliance on a detailed verbal description in a design infringement case." *Crocs, Inc. v.*

3

1  *Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010).

2  "However, … there are a number of claim scope issues which may benefit from verbal or
3  written guidance, among them the distinction between features of the claimed design that are
4  ornamental and those that are purely functional."  *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
5  796 F.3d 1312, 1333 (Fed. Cir. 2015).  A design may contain both functional and ornamental
6  elements, even though the scope of a design patent claim "must be limited to the ornamental
7  aspects of the design."  *Id*.  The Court has considerable discretion in deciding the measure of
8  guidance to provide to the jury to assist its fact-finding process.  *Egyptian Goddess*, 543 F.3d at
9  679–80.

### III.   ANALYSIS

The three design patents at issue in this action are the Bottle Patent, the Container Patent, and the Lid Patent.  (ECF No. 1 at 3–4.)  The Bottle Patent claims, "[t]he ornamental design for a bottle, as shown and described," and includes seven figures depicting various views of the claimed design.  (ECF No. 35-5 at 2–6.)  The Container Patent claims, "[t]he ornamental design for a container, as shown and described," and includes eight figures depicting various views of the claimed design.  (ECF No. 35-7 at 2–9.)  The Lid Patent claims, "[t]he ornamental design for a bottle lid with an integrated handle, as shown and described," and includes six figures depicting various views of the claimed design.  (ECF No. 35-6 at 2–10.)

|  **The Bottle Patent**  |  **The Container Patent**  |  **The Lid Patent**  |




Plaintiff argues the proper claim construction of the three design patents would be to reference the figures as shown. (ECF No. 35 at 11.) Thus, for the Bottle Patent, the construction would be: "The ornamental design for a bottle, as shown in Figures 1–7 of the patent." (*Id.*) For the Container Patent, the construction would be: "The ornamental design for a container, as shown in Figures 1–7 of the patent." (*Id.*) Finally, for the Lid Patent, the construction would be: "The ornamental design for a bottle lid with an integrated handle, as shown in Figures 1–6 of the patent." (*Id.*)

Defendant disagrees and proposes more elaborate descriptive constructions that include explanations of which elements Defendant argues should not be included in the claimed design because the elements are primarily functional. (ECF No. 41.) Specifically, for the Bottle Patent, Defendant's proposed alternative construction is:

> The ornamental design for a bottle, as shown and described, acknowledges that both its overall design and individual elements are primarily functional, with ornamental aspects claimed only to the extent they are not dictated by functionality. Protection is disclaimed for design elements dictated by function, with the scope of protection limited to unique, non-functional, ornamental aspects that distinguish this design from prior art in bottle and lid designs.

(*Id*. at 19.) For the Container Patent, Defendant's proposed alternative claim construction is:

> The ornamental design for a container, as shown and described, wherein the overall design and each individual design element are claimed as ornamental to the extent they are not dictated by their functional utility and wherein the Claim acknowledges the presence of functional elements primarily dictated by function as follows: (1) the Bottle-Body is primarily designed for drinking, mixing, pouring, storing, and transporting; (2) the Bottle-Screw-Top-Head is functionally designed for securely sealing with a lid and facilitating pouring and drinking; (3) the Bottle-Bottom is designed to provide structure, stability and support, as well as to enable the implementation of other functional elements; (4) the Volumetric Measurement-Tool and its translucent window, located on one side of the Bottle-Body, allow for measuring and viewing the bottle's contents; and (5) the Bottle-Sides on both sides of the Bottle-Body are designed for enhanced grip and handling as well as to enable other functional features. Both the overall design and each individual design element comprising the overall design, being primarily dictated by their functional nature, are not claimed for the ornamental design, and any protection is disclaimed over this design dictated by function. The Claim further acknowledges a broad array of prior art involving bottle designs with substantial similarities, and therefore, the scope of protection is limited to the unique, non-functional, ornamental aspects that distinguish this design from existing designs

in the prior art.

(*Id*. at 20.) Finally, for the Lid Patent, Defendant's proposed alternative claim construction is:

> The ornamental design for a bottle lid with an integrated handle, as shown and described, acknowledges that both its overall design and individual elements are primarily functional, with ornamental aspects claimed only to the extent they are not dictated by function, anticipated by prior art, or less substantially similar to the Accused Products than other substantially similar patents. Each design element comprising the overall design is dictated by the functionality: the 104, 111 Carry Loop offers convenient carrying and attachment options.; (2) the 106 Flip-Cup enables quick and easy access; the 100 Raised-Conical Spout and 107 Spout-Guard are engineered for controlled liquid flow and hygiene; the 103, 108-109, 113 Brackets enable the functionality of the Carry Loop and pivoting Flip-Cap; the 102 Domed Body provides optimal mixing and storage capacity and a robust base that enables all other functional elements; and the 105 Screw-Top-Base ensures a secure, leak proof seal with the bottle. Recognizing the functional essences of the design, any ornamental design protection is disclaimed for these function-driven elements. With the presence of extensive similar designs in prior art, protection extends only to novel, non-functional, and ornamental aspects that distinguish the design.

(*Id.* at 9.)

Plaintiff argues the Court should reject Defendant's detailed claim constructions and instead "construe the asserted claims by referring to the patent figures." (ECF No. 35 at 9.) Plaintiff also argues the Court should defer analyzing the functionality of the three designs until jury instruction stage of this action. (*Id*. at 12.) Defendant disagrees and argues the Court must construe the asserted claims in the three design patents at issue by distinguishing between the functional and nonfunctional elements of the designs. (ECF No. 41 at 5.) The Court will first address whether it is appropriate to adopt the detailed verbal descriptions proposed by Defendant, and then the Court will address the issue of functionality.

A.  Descriptive Construction Language

Plaintiff and Defendant's proposed claim constructions are vastly different. Defendant's proposed claim constructions include detailed descriptions of the claimed design, whereas Plaintiff's proposed claim constructions simply refer to the illustrations in the patents' figures.

Defendant argues it is appropriate for the Court to adopt verbal descriptions of the claimed designs because "[n]othing forbids verbal descriptions of design patent drawings" and, "[i]n some

1  instances, preparing a verbal construction is even encouraged." (ECF No. 41 at 7 (citing
2  *Egyptian Goddess*, 543 F. 3d at 679–80).)  Plaintiff disagrees and argues the Federal Circuit
3  discourages the use of detailed verbal descriptions in claim construction because it unnecessarily
4  risks placing undue emphasis on particular features of the claimed design, rather than the patented
5  design as a whole.  (ECF No. 35 at 10.)
6        The Court agrees with Plaintiff.  While issuing a detailed claim construction to describe a
7  design patent "will not be a reversible error," the Federal Circuit cautions courts to not
8  excessively rely on detailed verbal descriptions in design infringement cases.  *Egyptian Goddess*,
9  543 F.3d at 679.  This is because "detailed verbal claim constructions increase the risk of placing
10 undue emphasis on particular features of the design and risk that a finder of fact will focus on
11 each individual described feature in the verbal description rather than on the design as a whole."
12 *Sport Dimension, Inc.*, 820 F.3d at 1320.  Defendant never addresses these risks,[1] and the Court
13 sees no advantage to including such detailed verbal descriptions in its constructions.  Thus, the
14 Court declines to adopt the detailed verbal descriptions of the claimed designs proposed by
15 Defendant.
16           B.      <u>Functionality</u>
17      While the Federal Circuit instructs trial courts not to use detailed verbal descriptions in its
18 claim constructions, the Federal Circuit also advises that it can be helpful to "distinguish[]
19 between those features of the claimed design that are ornamental and those that are purely
20 functional." *Egyptian Goddess*, 543 F.3d at 679–80 (citations omitted).  Design patents focus on
21 the overall ornamental design of the article shown in the patented figures.  *Id.*; *see also Sport*
22 *Dimension, Inc.*, 820 F.3d at 1322.  The "scope of that claim … must be limited to the ornamental
23 aspects of the design, and does not extend to the broader general design concept." *Ethicon Endo-*
24 *Surgery, Inc.*, 796 F.3d at 1333.  Thus, the task of the Court at the claim construction stage "is to

---

[1] Instead, Defendant argues verbal descriptions are necessary to delineate nonfunctional elements from functional elements of the claimed designs. (ECF No. 41 at 7.) However, as discussed below, "distinguishing between those features of the claimed that are ornamental and those that are purely functional" is a separate issue from addressing whether utilizing detailed verbal descriptions is appropriate for construing the claims at issue. *Egyptian Goddess*, 543 F.3d at 680.

distinguish, if possible, those aspects of the design that are truly ornamental, as opposed to functional." *Vertical Tank, Inc. v. BakerCorp*, No. 118CV00145LJOJLT, 2019 WL 2207668 (E.D. Cal. May 22, 2019).

When assessing whether a feature is functional, courts may consider the following factors: (1) whether the protected design represents the best design; (2) whether alternative designs would adversely affect the utility of the specified article; (3) whether there are any concomitant utility patents; (4) whether the advertising touts particular features of the design as having specific utility; and (5) whether there are any elements in the design or an overall appearance clearly not dictated by function. *Sport Dimension, Inc.*, 820 F.3d at 1322 (quoting *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006)) ("Although we introduced these factors to assist courts in determining whether a claimed design was dictated by function and thus invalid, they may serve as a useful guide for claim construction functionality as well."). However, it is generally accepted that "[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id.*; *see also Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1329–30.

Defendant argues the three design patents at issue are dictated by their functions and the Court should conduct a functionality analysis at this claim construction stage because it is "crucial in ensuring that [the] design patents adhere to their intended purpose of protecting the aesthetic non-functional aspects of [the] product." (ECF Nos. 41 at 6.)  Plaintiff disagrees and argues not only are the various elements of the three patented designs not primarily dictated by function, but the Court should also utilize its discretion and defer any functionality analysis until a later stage in this action because the factual record is incomplete. (ECF No. 41 at 13; ECF No. 43 at 5–6.)  The Court will address each parties' functionality arguments for each design patent and the evidence presented by both sides.

///

///

///

///

*i. The Lid Patent*

Defendant spends a significant amount of its briefing explaining why most elements of the Lid Patent are primarily functional. (ECF No. 41.) Specifically, Defendant breaks the Lid Patent down into five elements: (1) the carry loop; (2) the flip-cap; (3) the spout and spout guard; (4) the brackets; and (5) the domed body. (*Id*. at 10–18.) Defendant first argues these elements of the Lid Patent are dictated by their function because "[Plaintiff's] utility patent disclosing a virtually identical lid design as the design covered by the [Lid] Patent, describes the functionality of the overall design as well as all the lids functional features." (ECF No. 41 at 9.) While the existence of an accompanying utility patent (and the assertions of functionality therein) is potentially relevant to the issue of functionality, it is not dispositive. *See Sport Dimension, Inc.*, 820 F.3d at 1322. The Court agrees with Plaintiff that at most the utility patent demonstrates certain aspects of the lid perform functions, but it does not demonstrate Plaintiff based the design of the lid on "primarily functional rather than ornamental designs." *Ethicon*, 796 F.3d at 1328 (finding that while individual elements of the surgical instrument performed functions, the design patent nevertheless covered "the particular ornamental designs of those underlying elements.").

Defendant then attempts to prove that each of the five design elements comprising the Lid Patent are primarily dictated by function by arguing that each element was "crafted and optimized to fulfill functional needs in the best way possible." (ECF No. 41 at 10.) For example, Defendant argues the carry loop is a purely functional element of the Lid Patent's claimed design because "even slight changes to the [carry loop's] extension's dimensions or form could disrupt the delicate equilibrium, leading to compromised performance or wasteful material usage." (*Id*. at 12.) However, Defendant offers no evidence to support this assertion or its assertions regarding the other four elements of the Lid Patent design. When Defendant does attempt to support is assertions, it is through reference to irrelevant academic articles and consumer posts from the website Reddit. (*See id*. at 16.) This record does not provide the Court with sufficient information to conduct a proper functionality analysis under the *Sport Utility* factors. Specifically, the Court is left wondering whether the lid design, including the domed body, is the best design? Does Plaintiff tout the functionality of its lid design in any of its advertisements?

1  Would alternative designs adversely impact the utility of the lid design's various elements?

2  Plaintiff argues "the marketplace contains many alternative designs for the five design
3  elements" that perform the same functions as the elements of the patented design, which is
4  evidence "the patented design's elements are not dictated by their function." (ECF No. 43 at 5.)
5  Plaintiff supports its alternative design argument with evidence of different designs for each of
6  the five elements utilized by competitive manufacturers. (*Id.* at 9–18.) While the availability of
7  alternative designs is an important factor in evaluating the legal functionality of a claimed design,
8  *see Ethicon*, 796 F.3d at 1329–30, Plaintiff's arguments make clear there is a genuine factual
9  dispute between the parties regarding the functionality of various elements of the Lid Patent
10  design.

11  Where there are genuine factual disputes regarding the degree to which certain elements
12  of a design patent are ornamental or purely functional, district courts in the Ninth Circuit find it is
13  inappropriate to resolve such issues at the claim construction stage as these disputes should be left
14  for a jury to decide. *See Vertical Tank, Inc*, 2019 WL 2207668, at *19; *Nike, Inc. v. Skechers
15  U.S.A., Inc.*, No. LACV1708509JAKEX, 2019 WL 12528983, at *7 (C.D. Cal. Mar. 28, 2019);
16  *Deckers Outdoor Corp. v. Rue Servs. Corp.*, No. CV1306303JVSVBKX, 2014 WL 12588481, at
17  *3 (C.D. Cal. Aug. 29, 2014). This Court sees no bases to depart with this reasoning.

18                      ii.    *The Bottle and Container Patents*

19  With regards to the Bottle and Container Patents, Plaintiff argues the claimed designs in
20  these patents are not dictated by function. (ECF No. 43.) Meanwhile, Defendant provides similar
21  conclusory arguments as to why the claimed designs in these patents "must be narrowly construed
22  to account for functionality." (ECF No. 41 at 19–20.) For example, Defendant argues, "[t]he
23  [Container Patent's] entire design and its individual elements are driven by function, rather than
24  ornamentation, with each component serving a crucial role in enhancing the container's utility for
25  mixing, pouring, storing, and transporting liquids ….", and "[t]he [Bottle Patent] encompasses a
26  shaker container design that ingeniously integrates a shaker bottle with interlocking storage
27  containers, providing a practical solution for users' needs in mixing, storing, and transporting
28  nutrition and supplements." (ECF No. 41 at 19–21.)

1    However, without more, Defendant's recitations of the various functions performed by the
2    container and bottle are merely speculation, not evidence. (ECF No. 78.)  At the Claim
3    Construction Hearing, the Court gave Defendant the opportunity to present the Court with
4    evidence of how the claimed designs for the Bottle and Container Patent were dictated by
5    function, but Defendant failed to do so. (ECF No. 78.)  Defense counsel merely demonstrated for
6    the Court how various functions of the claimed design worked. (*Id*.)  As stated previously, even
7    if elements of a design are functional, it does not mean the "claimed design is dictated by the use
8    or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed.
9    Cir. 1993).  Without more, the Court is once again left with insufficient information and evidence
10   to resolve genuine factual disputes regarding the functionality of the Bottle and Container Patents
11   under the *Sport Utility* factors.

12   While the Court understands that it will be helpful to the trier of fact for the Court to
13   "distinguish between those features of the claimed design that are ornamental and those that are
14   purely functional," the Court agrees with Plaintiff that the Court is not required to make those
15   distinctions at this time given the incomplete factual record and the genuine factual disputes
16   between the parties regarding functionality. *Egyptian Goddess*, 543 F.3d at 680.

17   Accordingly, the Court rejects Defendant's proposed claim constructions because they
18   rely upon detailed verbal descriptions and require the Court to conduct functionality analysis,
19   which the Court cannot decide at this time.  For now, the Court will go no further than to adopt
20   Plaintiff's proposed constructions which simply refer to the illustrations in the patents' figures.
21   To the extent the scope of the three claims at issue must be limited by functionality, the Court will
22   address those issues definitively if they are raised at some later stage in these proceedings, such as
23   resolution of motions for summary judgment or as part of the jury instructions for trial.
24   ///
25   ///
26   ///
27   ///
28   ///

### IV. CONCLUSION

For the reasons set forth above, the Court construes:

1. The Lid Patent to claim the "ornamental design for a bottle lid with an integrated handle, as shown in Figures 1–6 of the patent."
2. The Bottle Patent to claim the "ornamental design for a bottle, as shown in Figures 1–7 of the patent."
3. The Container Patent to claim, the "ornamental design for a container, as shown in Figures 1–7 of the patent."

IT IS SO ORDERED.

Date: April 52, 2024

_____
Troy L. Nunley
United States District Judge