Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Sean M. Murray (SBN 213,655)
sean.murray@knobbe.com
Jacob R. Rosenbaum (SBN 313,190)
jacob.rosenbaum@knobbe.com
Christian D. Boettcher (SBN 342,950)
christian.boettcher@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Trove Brands, LLC
d/b/a The BlenderBottle Company

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROVE BRANDS, LLC d/b/a THE BLENDERBOTTLE COMPANY, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TRRS MAGNATE LLC d/b/a HYDRA CUP, a California limited liability company, and Thomas Raymus, an individual,<br><br>Defendants. | No. 2:22-cv-02222-TLN-CKD<br><br>**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESGINATION OF ORIGIN, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Troy L. Nunley |

Plaintiff Trove Brands, LLC, d/b/a The BlenderBottle Company ("BlenderBottle®") hereby complains of TRRS Magnate LLC d/b/a Hydra Cup ("Hydra Cup") and Thomas Raymus (collectively, "Defendants") and alleges as follows:

## I. NATURE OF THE ACTION

1.      BlenderBottle® seeks injunctive relief and damages for acts of patent infringement, trade dress infringement, false designation of origin, and unfair competition, engaged in by Defendants in violation of the laws of the United States and the State of California.

## II. PARTIES

2.      Plaintiff Trove Brands, LLC, doing business as the BlenderBottle Company is a limited liability company organized and existing under the laws of the State of Utah, with its principal place of business located at 250 South 850 East, Lehi, Utah 84043.

3.      BlenderBottle® is informed and believes and, based thereon, alleges that Defendant TRRS Magnate LLC doing business as Hydra Cup is a limited liability company organized and existing under the laws of the State of California, with a principal place of business at 1433 Moffat Blvd., Ste. #13, Manteca, California 95336.

4.      BlenderBottle® is informed and believes and, based thereon, alleges that Defendant Thomas Raymus is an individual who resides in this judicial district at 2328 Paramount Lane, Manteca, California 95337.

## III. JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction over the claims in this action that relate to patent infringement, trade dress infringement, false designation of origin, and federal unfair competition pursuant to 35 U.S.C. §§ 271 and 281, 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1114, 1116, 1121(a), and 1125(a), as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form

part of the same case or controversy and derive from a common nucleus of operative fact.

6.      This Court has personal jurisdiction over Defendants because Defendants each reside in this judicial district or have a principal place of business in this judicial district, and each of the Defendants has a continuous, systematic, and substantial presence within this judicial district.  For example, Defendants have been selling and offering for sale infringing products in this judicial district, and committing acts of infringement in this judicial district, including but not limited to, selling infringing products to consumers and/or retailers in this district and selling into the stream of commerce knowing such products would be sold in California and this district.  These acts form a substantial part of the events or omissions giving rise to BlenderBottle®'s claims.

7.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (d), and 1400(b) because each of the Defendants resides in this judicial district, has a principal place of business located within this district, and because each of the Defendants has committed acts of infringement by offering to sell and/or selling infringing products in this judicial district.

## IV.  **GENERAL ALLEGATIONS**

8.      BlenderBottle® revolutionized the way dietary supplements are mixed and consumed.  Through the tireless efforts of its designers and engineers over nearly two decades, BlenderBottle® has pioneered innovative technology and path-breaking designs to create premium products that help simplify everyday life.  Available in more than 90 countries worldwide and in over 60,000 retail locations, BlenderBottle®'s shakers have become the go-to products for outdoor enthusiasts, gym goers, serious protein drinkers and more.  Products embodying BlenderBottle®'s proprietary designs and technology have been lauded by consumers and the media, including *Good Morning America*, *Reader's Digest*, *Self*, *the Today Show*, *Men's Fitness*, and others.

9.      BlenderBottle® protects its substantial investment in innovation and design from imitators with its intellectual property rights.

10.     On October 4, 2005, the USPTO duly and lawfully issued United States Design Patent No. D510,235 (the "D235 Patent"), titled "BOTTLE."  BlenderBottle® is the exclusive licensee of the D235 Patent and has been granted all rights thereunder, including the right to sue for past infringement and standing to enforce the D235 Patent. A true and correct copy of the D235 Patent is attached hereto as **Exhibit 1**.

11.     On December 31, 2013, the USPTO duly and lawfully issued United States Design Patent No. D696,551 (the "D551 Patent"), titled "BOTTLE LID HAVING INTEGRATED HANDLE."  BlenderBottle® is the exclusive licensee of the D551 Patent and has been granted all rights thereunder, including the right to sue for past infringement and standing to enforce the D551 Patent.  A true and correct copy of the D551 Patent is attached hereto as **Exhibit 2.**

12.     On January 21, 2014, the USPTO duly and lawfully issued United States Design Patent No. D697,798 (the "D798 Patent"), titled "CONTAINER." BlenderBottle® is the exclusive licensee of the D798 Patent and has been granted all rights thereunder, including the right to sue for past infringement and standing to enforce the D798 Patent.  A true and correct copy of the D798 Patent is attached hereto as **Exhibit 3.**

13.     Defendants manufacture, use, sell, offer for sale, and/or import into the United States shakers, agitators, and lids that have infringed BlenderBottle®'s patent rights, including the D235 Patent, D551 Patent, and D798 Patent.

14.     BlenderBottle® manufactures and sells shakers bearing a distinctive trade dress in the overall design of its shaker bottle lid (the "Lid Trade Dress").  A picture of BlenderBottle®'s Lid Trade Dress is depicted below.



15.     The USPTO duly and lawfully issued U.S. Trademark Registration No. 6,800,019 for the lid trade dress (the "Lid Trade Dress").  A true and correct copy of U.S. Trademark Registration No. 6,800,019 is attached hereto as **Exhibit 4**.

16.     U.S. Trademark Registration No. 6,800,019 is valid, unrevoked, and on the Principal Register.  As such, BlenderBottle® is entitled to a presumption that the Lid Trade Dress is valid and enforceable.

17.     The Lid Trade Dress is a bottle lid with a recessed domed top from which a conical spout protrudes on one side and a pair of brackets on the opposing side and the brackets host a pivoting arm containing a circular spout closure element.

18.     BlenderBottle® manufactures and sells shakers bearing a distinctive trade dress in the overall design of its shaker bottle (the "Bottle Trade Dress").  An example of BlenderBottle®'s Bottle Trade Dress is depicted below.



19.     The Bottle Trade Dress includes, but is not limited to: a tall cylindrical form; a top lid element with a tall shoulder; a recessed domed top from which a conical spout protrudes on one side and a pair of brackets on the opposing side; and the brackets host a pivoting arm containing a circular spout closure element.

20. The Bottle Trade Dress serves to identify and distinguish BlenderBottle®'s products from those of others. BlenderBottle® has strong common law rights in the Bottle Trade Dress. The Bottle Trade Dress has acquired secondary meaning.

21. Customers readily recognize the Bottle Trade Dress as a distinctive designation of the origin of BlenderBottle®'s products. The public recognizes that products bearing the Bottle Trade Dress constitute high-quality products that conform to the specifications created by BlenderBottle®.

22. Additionally, as a result of BlenderBottle®'s widespread use and display of the Bottle Trade Dress, the Bottle Trade Dress has established strong secondary meaning and extensive goodwill. The Bottle Trade Dress has great value as a specific identifier of BlenderBottle®'s products.

23. The USPTO duly and lawfully issued U.S. Trademark Registration No. 6,245,626 for the agitator trade dress (the "Agitator Trade Dress"). A true and correct copy of U.S. Trademark Registration No. 6,245,626 is attached hereto as **Exhibit 5**.

24. BlenderBottle® manufactures and sells agitators bearing its registered Agitator Trade Dress. The Agitator Trade Dress is distinctive in its overall design. A picture of BlenderBottle®'s Agitator Trade Dress is provided below.



25. The Agitator Trade Dress is a single length of metal wire formed to symmetrically define the shape of a sphere.

26.     BlenderBottle® manufactures and sells shakers bearing a distinctive trade dress in its labeling (the "Label Trade Dress").  An example of BlenderBottle®'s Label Trade Dress is depicted below:

 

27.     The Label Trade Dress includes: a label wrapping around the circumference of the bottle, a thick black center band, grey trimming on the top and bottom of the black band with a tab for displaying black text, and white text centered within a portion of the black band displaying a logo, company name, and product name.

28.     The Label Trade Dress is inherently distinctive and serves to identify and distinguish BlenderBottle®'s products from those of others.  BlenderBottle® has strong common law rights in the Label Trade Dress.  The Label Trade Dress is not only inherently distinctive, but has also acquired secondary meaning.

29.     Customers readily recognize the Label Trade Dress as a distinctive designation of the origin of BlenderBottle®'s products.  The public recognizes that products in packaging bearing the Label Trade Dress constitute high-quality products that conform to the specifications created by BlenderBottle®.

30.     Additionally, as a result of BlenderBottle®'s widespread use and display of the Label Trade Dress, the Label Trade Dress has established strong secondary meaning and extensive goodwill.  The Label Trade Dress has great value as a specific identifier of BlenderBottle®'s products.

31.     BlenderBottle®'s products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress are available in more than 90 countries worldwide and in over 60,000 retail locations.  For example, BlenderBottle®'s

products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress are sold in numerous major U.S. retailers such as Costco, Sam's Club, Target, Walmart, GNC, Amazon, Dick's Sporting Goods, and Vitamin Shoppe, among many others.

32.     BlenderBottle®'s products bearing the Lid Trade Dress, Bottle Trade Dress, and Agitator Trade Dress have received significant media attention.  Products bearing the Lid Trade Dress, Bottle Trade Dress, and Agitator Trade Dress have been lauded by consumers and the media, including *Good Morning America*, *Shape*, *Good Housekeeping*, *Reader's Digest*, *Self*, *the Today Show*, *Muscle & Fitness*, *Men's Fitness*, *Nutrition Express*, *Amazing Wellness*, *Healthy Magazine*, *Outside Magazine*, *Backpacker Magazine*, *Daily Herald*, *EveryDay With Rachael Ray*, *Flex*, *Health & Beauty*, *Healthy Living*, *Muscle & Performance*, *Oxygen*, *Better Homes & Gardens*, *Climbing Magazine*, and others.

33.     Numerous celebrities have been photographed using BlenderBottle®'s products bearing the Lid Trade Dress, Bottle Trade Dress, and Agitator Trade Dress including Justin Bieber, Dwayne "The Rock" Johnson, Michael B. Jordan, Hugh Jackman, Scarlett Johansson, Shia LaBeouf, and Terry Crews, among others.

34.     BlenderBottle® extensively advertises and promotes its products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress including through its website and social media sites, trade shows, flyers, and advertisements.

35.     BlenderBottle® has derived hundreds of millions in revenues from sales of products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress.

36.     As a result of BlenderBottle®'s widespread use and display of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress in association with its shaker bottles and agitators, (a) the public has come to recognize and identify shakers and agitators bearing the Lid Trade Dress, Bottle Trade Dress,

Agitator Trade Dress, and Label Trade Dress as emanating from BlenderBottle®, (b) the public recognizes that shakers and agitators bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress constitute high quality products that conform to the specifications created by BlenderBottle®, and (c) the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress have established strong secondary meaning and extensive goodwill.

37. The Lid Trade Dress is not functional. The design features embodied in the Lid Trade Dress are not essential to the function of the product. The Lid Trade Dress is not in its particular shape because it works better in that shape. There are alternative shapes and structures that perform as well as the Lid Trade Dress. Alternatives to the Lid Trade Dress can be found in numerous commercially available products.

38. The Bottle Trade Dress is not functional. The design features embodied by the Bottle Trade Dress are not essential to the function of the product. A container that allows one to combine powders and liquids and that also serves as a drink dispenser can have many different forms and shapes. The Bottle Trade Dress is not in its particular shape because it works better in that shape. There are numerous alternative shapes and structures that allow a consumer to combine powders and liquids and use them as a drink dispenser.

39. Examples of commercially available alternatives to the Lid Trade Dress and Bottle Trade Dress are depicted in the table below:



| | |
|---|---|
| *"PUSHLIMITS Designed by Artoid"* product | *"Rubbermaid® SHAKER BOTTLE"* product |

| | |
|---|---|
|  | "*Contigo*® *LEAK-PROOF SHAKER BOTTLE*" product |
|  | "*BluePeak Shaker Bottle*" product |
|  | "*Huel Shaker Bottle*" product |
|  | "*Lava Fitness Shaker Bottle*" product |
|  | "*Vortex Shaker Bottle*" product |
|  | "*Shakesphere Tumbler View Shaker Bottle*" product |


"*WeightWatchers Shaker Bottle*" product


"*Aladdin Shaker Bottle*" product


"*Coleman Shaker Bottle*" product


"*Constant Contact Shaker Bottle*" product

40.     These third-party products show that there are many different design decisions that go into creating a bottle and that the Lid Trade Dress and Bottle Trade Dress are the result of decisions regarding ornamentation.  Further, BlenderBottle®'s exclusive right to use the Lid Trade Dress and Bottle Trade Dress does not put competitors at a significant non-reputation related disadvantage because there are numerous alternative designs.

41.     Further, the design features of the Lid Trade Dress are not comparatively simple or inexpensive to manufacture because the elements are complex.  The Lid Trade Dress is more expensive to manufacture than other lids.  The design features of the Lid

Trade Dress do not affect the quality of the product.  The design of the Lid Trade Dress is not a competitive necessity.

42.    Similarly, the design features of the Bottle Trade Dress are not comparatively simple or inexpensive to manufacture because the elements are complex.  For example, the lid shown in the Bottle Trade Dress is more expensive to manufacture than other lids.  The design features of the Bottle Trade Dress do not affect the quality of the product.  The design of the Bottle Trade Dress is not a competitive necessity.

43.    The Agitator Trade Dress is not functional.  The design features embodied by the Agitator Trade Dress are not essential to the function of the product.  The Agitator Trade Dress is not in its particular shape because it works better in that shape.  There are alternative shapes and structures that perform as well as the Agitator Trade Dress.  Alternatives to the Agitator Trade Dress can be found in numerous commercially available products.   Several examples of commercially available alternatives are depicted in the table below:

|  |  |  |
|---|---|---|
| Agitator from "*TOOFEEL SHAKER 700ML*" product | Agitator from "*PUSHLIMITS Designed by Artoid*" product | Agitator from "*PUSHLIMITS Designed by Artoid*" product |



Agitator from "*Rubbermaid® SHAKER BOTTLE*" product

Agitator from "*BOTTLED JOY*" product

Agitator from "*Muscle Pound*" product

Agitator from "*contigo® LEAK-PROOF SHAKER BOTTLE*"

Agitator from "*MAINSTAYS Shaker Bottle*"

Agitator from "*UTOPIA SHAKER BOTTLE*"

Agitator from "*BluePeak Shaker Bottle*" product

Agitator from "*BluePeak Shaker Bottle*" product

Agitator from "*BluePeak Shaker Bottle*" product

1
2
3
4
5
6
7
8
9



Agitator from "*Aladdin Shaker Bottle*" product



Agitator from "*Coleman Shaker Bottle*" product



Agitator from "*Constant Contact shaker bottle*" product

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

44.    The elements of the Agitator Trade Dress do not make the product cheaper or easier to manufacture, and do not affect the quality of the product.  The design of the Agitator Trade Dress is not a competitive necessity.

45.    The Label Trade Dress is not functional.  The design features embodied by the Label Trade Dress are not essential to the function of the packaging, do not make the packaging cheaper or easier to manufacture, do not affect the quality of the packaging, and do not provide a utilitarian advantage to the consumer or affect the actual product that consumers seek to purchase.  The Label Trade Dress is not designed in its particular form because it displays the product better in that form.  There are alternative label and packaging designs that perform as well as the Label Trade Dress.  Alternatives to the Label Trade Dress can be found in numerous commercially available products.  The design of the Label Trade Dress is not a competitive necessity.

46.    The Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress are invaluable assets essential to BlenderBottle®'s success and represent the designs of its signature products.  The shape of the Agitator Trade Dress symbolizes the company itself and is part of a registered trademark used by BlenderBottle® as its corporate logo.



47.    This logo is prominently displayed on BlenderBottle®'s website, its marketing materials, and stamped on its products.

48.    Subsequent to BlenderBottle®'s use and adoption of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress, each of the Defendants has developed, manufactured, imported, advertised, and/or sold shaker bottles and agitators that use trade dress that is confusingly similar to the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress.

49.    Defendant Hydra Cup manufactures, uses, sells, offers for sale, promotes, advertises, and/or imports into the United States the following shaker bottles, including some in various sizes and colors, which infringe BlenderBottle®'s intellectual property rights (collectively together, the "Hydra Cup Shaker Bottles"):

| Hydra Cup Shaker Bottle I | Hydra Cup Shaker Bottle II | Hydra Cup Shaker Bottle III |
|---|---|---|
| | | |

/ / /

| Hydra Cup Shaker Bottle IV | Hydra Cup Shaker Bottle V | Hydra Cup Shaker Bottle VI |
|---|---|---|
|  |  |  |
| Hydra Cup Shaker Bottle VII | Hydra Cup Shaker Bottle VIII | Hydra Cup Shaker Bottle IX |
|  |  |  |

/ / /

1
2
3
4
5
6
7
8
9



**Hydra Cup**

**Shaker Bottle X**

10   50.    Defendant Hydra Cup further manufactures, uses, sells, offers for sale,

11   promotes, advertises and/or imports into the United States shaker bottle lids that infringe

12   BlenderBottle®'s intellectual property rights.   A representative infringing Hydra Cup

13   shaker bottle lid is shown below (the "Hydra Cup Shaker Bottle Lid"):

14
15
16
17
18
19
20
21
22
23
24



**Hydra Cup**

**Shaker Bottle Lid**

25   51.    On January 21, 2021, BlenderBottle® sent Defendant Hydra Cup a cease-

26   and-desist letter demanding that Defendant Hydra Cup cease selling shaker bottles and

27   agitators that infringe the D235 Patent, D798 Patent, Bottle Trade Dress, and Agitator

28   Trade Dress.   A true and correct copy of this letter is attached as **Exhibit 6**.

52.     Defendant Hydra Cup also began selling shaker bottles with labels that infringe the Label Trade Dress.  Images of Defendant's infringing labels are shown below:

***Infringing Labels***

 

53.     BlenderBottle® sent a follow-up letter on March 21, 2022, reiterating BlenderBottle®'s demands from its January 21, 2021, letter, and demanding that Defendant Hydra Cup cease selling shakers with labels that infringe the Label Trade Dress.  A true and correct copy of this letter is attached as **Exhibit 7.**

54.     BlenderBottle® sent another follow-up letter on August 17, 2022, attaching a draft of this Complaint, reiterating BlenderBottle®'s demands from its previous two letters, and demanding that Defendant Hydra Cup cease selling shakers with lids that infringe the D551 Patent.  A true and correct copy of this letter is attached as **Exhibit 8**.

55.     Despite BlenderBottle®'s letters, Defendant Hydra Cup has continued to sell the Hydra Cup Shaker Bottles.

56.     As shown below, Defendant Hydra Cup has displayed its non-spherical agitators in a misleading manner to make its agitators more closely resemble the Agitator Trade Dress.  BlenderBottle® is informed and believes that Defendant Hydra Cup advertises and promotes its non-spherical agitators in this manner to mislead consumers into believing that its products are sponsored by, approved by, or originate from BlenderBottle®, when they do not.

/ / /



57.     On December 13, 2023, counsel for BlenderBottle® took the deposition of Mr. Raymus.  During the deposition, Mr. Raymus testified that he had commingled funds between Mr. Raymus's personal bank account and the business bank account for Defendant Hydra Cup.  He further testified that he would use the money from Hydra Cup's bank account to pay for personal expenses.

58.     Mr. Raymus further testified at his deposition that he was responsible for certain modifications of the designs of the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lids.  Mr. Raymus further testified that he was responsible for the selection and subsequent commercialization of the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lids, as well as the infringing agitators and labels, by Defendant Hydra Cup.

59.     Mr. Raymus further testified that he is the sole employee of Defendant Hydra Cup, and Defendant Hydra Cup relies on independent contractors to perform the tasks Mr. Raymus does not perform.  Mr. Raymus also testified that he is "in charge" of Defendant Hydra Cup as "the owner and the CEO" of Defendant Hydra Cup.

60.     BlenderBottle® is informed and believes and, based thereon, alleges that as the owner, CEO, and sole employee of Hydra Cup, Mr. Raymus controls Hydra Cup

and personally directs and is the driving force behind all of the decisions of TRRS Magnate, LLC d/b/a Hydra Cup, including the decision to copy BlenderBottle®'s designs and infringe BlenderBottle®'s intellectual property rights.  BlenderBottle® is further informed and believes that Mr. Raymus has leveraged his position as the owner, CEO, and sole employee of TRRS Magnate, LLC d/b/a Hydra Cup to personally direct and be the driving force behind Hydra Cup's copying of BlenderBottle®'s proprietary designs and trade dress, and Defendant Hydra Cup's decision to import, offer for sale and sell those copies of BlenderBottle®'s designs.

61.   Defendant Raymus, through his company Defendant Hydra Cup, intended to blatantly copy BlenderBottle®'s proprietary designs and pass off Defendant Hydra Cup's goods as BlenderBottle®'s high quality products to misappropriate the immense goodwill that BlenderBottle® has spent enormous time, effort, and expense to cultivate in the marketplace.

62.   The Defendants use the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress in connection with identical shaker bottle products sold to identical customers and through overlapping channels of trade and marketing channels.  The use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress by the Defendants in commerce is likely to cause confusion, cause mistake, and to deceive as to an affiliation, connection, or association of Defendant Hydra Cup and/or its products with BlenderBottle®, when there is none.

63.   The acts complained of herein have caused BlenderBottle® to suffer irreparable injury to its business.  BlenderBottle® will continue to suffer substantial loss and irreparable injury unless and until the Defendants are enjoined from the wrongful actions complained of herein.

64.   BlenderBottle® is informed and believes, and on that basis alleges, that each of the acts complained of herein was willful and deliberate.

## V.  **FIRST CLAIM FOR RELIEF**

### **PATENT INFRINGEMENT (35 U.S.C. § 271)**

65.    BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-59 of this Complaint as if set forth fully herein.

66.    This is a claim for patent infringement under 35 U.S.C. § 271 against both Defendants.

67.    Each of the Defendants has knowingly and willfully infringed the D235 Patent.  Defendant Hydra Cup, through its agents, employees and/or servants has knowingly, intentionally, and willfully infringed the D235 Patent by making, using, selling, offering for sale, and/or importing products, including the Hydra Cup Shaker Bottles, that have designs that infringe the D235 Patent.  Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force.  As the example below illustrates, the side-by-side visual comparison of BlenderBottle®'s patented design and Defendant Hydra Cup's Hydra Cup Shaker Bottles shown below establishes that in the eye of the ordinary observer, giving such attention as a purchaser usually gives, the design of Defendant Hydra Cup's Hydra Cup Shaker Bottles are substantially the same as the claimed design of the D235 Patent, because the resemblance is such as to deceive such an observer inducing him to purchase one supposing it to the be the other.  As a result, both Hydra Cup and Mr. Raymus have infringed the D235 Patent.

*U.S. Design Patent No. D510,235*



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

***Infringing Hydra Cup Shaker Bottles***



16    68.    Each of the Defendants has knowingly and willfully infringed the D551

17  Patent.  Defendant Hydra Cup, through its agents, employees and/or servants has

18  knowingly, intentionally, and willfully infringed, and continues to infringe, the D551

19  Patent by making, using, selling, offering for sale, and/or importing products, including

20  the Hydra Cup Shaker Bottles, that have designs that infringe the D551 Patent.

21  Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing

22  activities as Hydra Cup's owner, CEO, sole employee, and thus driving force.  As the

23  example below illustrates, the side-by-side visual comparisons of BlenderBottle®'s

24  patented design and Defendant Hydra Cup's Hydra Cup Shaker Bottle Lid shown below

25  establishes that in the eye of the ordinary observer, giving such attention as a purchaser

26  usually gives, the design of Defendant Hydra Cup's Hydra Cup Shaker Bottle Lid is

27  substantially the same as the claimed design of the D551 Patent, because the

28  resemblance is such as to deceive such an observer inducing him to purchase one

supposing it to the be the other.  As a result, both Hydra Cup and Mr. Raymus have infringed the D551 Patent.

**Comparisons of U.S. Patent No. D696,551 and the Hydra Cup Shaker Bottle Lid**

| D551 Patent Figures | Hydra Cup Shaker Bottle Lid |
|---|---|
|  *Fig. 1* |  |
|  *Fig. 2* |  |
|  *Fig. 3* |  |

| D551 Patent Figures | Hydra Cup Shaker Bottle Lid |
|---|---|
|  *Fig. 4* |  |
|  *Fig. 5* |  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14

| D551 Patent Figures | Hydra Cup Shaker Bottle Lid |
|---|---|
|  | |

15    69.    Each of the Defendants has knowingly and willfully infringed the D798

16  Patent.  Defendant Hydra Cup, through its agents, employees and/or servants has

17  knowingly, intentionally, and willfully infringed the D798 Patent by making, using,

18  selling, offering for sale, and/or importing products, including the Hydra Cup Shaker

19  Bottles, that have designs that infringe the D798 Patent.  Defendant Thomas Raymus

20  knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's

21  owner, CEO, sole employee, and thus driving force.  As the example below illustrates,

22  the side-by-side visual comparisons of BlenderBottle®'s patented design and Defendant

23  Hydra Cup's Hydra Cup Shaker Bottle shown below establishes that in the eye of the

24  ordinary observer, giving such attention as a purchaser usually gives, the design of

25  Defendant Hydra Cup's Hydra Cup Shaker Bottle is substantially the same as the

26  claimed design of the D798 Patent, because the resemblance is such as to deceive such

27  an observer inducing him to purchase one supposing it to the be the other.  As a result,

28  both Hydra Cup and Mr. Raymus have infringed the D798 Patent.

*U.S. Patent No. D697,798*



*Infringing Hydra Cup Shaker Bottles*



70.     The Federal Circuit has held that a design patent is infringed if the accused product looks substantially the same as the patented design in the eyes of an ordinary observer familiar with the prior art.  *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 682-83 (Fed. Cir. 2008).   As can be seen in the side-by-side comparisons of representative figures from the D235 Patent and D798 Patent with the Hydra Cup Shaker Bottles and the D551 Patent with the Hydra Cup Shaker Bottle Lid, it is evident that the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lid are "substantially the same" as BlenderBottle®'s patented designs and, thus, infringe.

71.     As a direct and proximate result of the Defendants' acts of infringement, Defendants Hydra Cup and Mr. Raymus have derived and received gains, profits, and advantages in an amount that is not presently known to BlenderBottle®.

72.     Pursuant to 35 U.S.C. § 284, BlenderBottle® is entitled to damages for the Defendants' infringing acts and treble damages together with interests and costs as fixed by this Court.

73.     Pursuant to 35 U.S.C. § 285, BlenderBottle® is entitled to reasonable attorneys' fees for the necessity of bringing this claim in this exceptional case.

74.     Pursuant to 35 U.S.C. § 289, BlenderBottle® is entitled to the Defendants' total profits from their infringement of the D235, D551, and D798 Patents.

## VI.  SECOND CLAIM FOR RELIEF

## DEFENDANT'S TRADE DRESS INFRINGEMENT (15 U.S.C. §1125(a))

75.     BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-64 of this Complaint as if set forth fully herein.

76.     This is a claim for trade dress infringement under 15 U.S.C. § 1125(a) against both Defendants.

77.     Subsequent to BlenderBottle®'s use and adoption of the Lid Trade Dress, and the development of secondary meaning in that trade dress, Defendant Hydra Cup has developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to the Lid Trade Dress.  Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force.

78.     An example of Defendants' infringing use of the Lid Trade Dress is shown below:

*Lid Trade Dress:*



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Infringing Hydra Cup Lids*



79.     Subsequent to BlenderBottle®'s use and adoption of the Bottle Trade Dress, and the development of secondary meaning in that trade dress, Defendant Hydra Cup has developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to the Bottle Trade Dress.  Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force.

1

2

80.     An example of Defendants' infringing use of the Bottle Trade Dress is shown below:

3

***Bottle Trade Dress:***

4

5

6

7



8

9

10

11

12

13

***Infringing Hydra Cup Shaker Bottles***

14

15



16

17

18

19

20

21

22



23

24

25

26

27

28



81.     Subsequent to BlenderBottle®'s use and adoption of the Agitator Trade Dress, and the development of secondary meaning in that trade dress, Defendant Hydra Cup has developed, manufactured, imported, advertised, and/or sold products with agitators, including the agitators for the Hydra Cup Shaker Bottles I-IV, which use trade dress that is confusingly similar to the Agitator Trade Dress.   Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force.

82.     An example of Defendants' infringing use of the Agitator Trade Dress is shown below:

***Agitator Trade Dress:***



***Infringing Agitators:***



83.     Subsequent to BlenderBottle®'s use and adoption of the distinctive Label Trade Dress, and the development of secondary meaning in that trade dress, Defendant Hydra Cup has developed, manufactured, imported, advertised, and/or sold products with labels, including the labels for the Hydra Cup OG Shakers shaker bottles, which use a trade dress that is confusingly similar to the Label Trade Dress.   Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force.

84.     An example of Defendants' infringing use of the Label Trade Dress is shown below:

***Label Trade Dress***

 

***Infringing Labels***

 

85.     The Defendants' use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress in connection with its products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Hydra Cup with BlenderBottle®.

86.     Each of the Defendants has infringed BlenderBottle®'s trade dress rights with the intent to unfairly compete with BlenderBottle®, to trade upon BlenderBottle®'s reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' products are associated with, sponsored by, originated from, or are approved by BlenderBottle®, when they are not, resulting in a loss of reputation in, and mischaracterization of, BlenderBottle®'s products and its brand, damaging its marketability and saleability.

87.     The Defendants' activities constitute willful and intentional infringement of BlenderBottle®'s trade dress rights in total disregard of BlenderBottle®'s proprietary rights, and were done despite Hydra Cup and Mr. Raymus's knowledge that use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress was, and is, in direct contravention of BlenderBottle®'s rights.

88.     Each of the Defendants has derived and received, and will continue to derive and receive, gains, profits, and advantages from the Defendants' trade dress infringement in an amount that is not presently known to BlenderBottle®.  By reason of the Defendants' actions, constituting trade dress infringement, BlenderBottle® has been damaged and is entitled to monetary relief in an amount to be determined at trial.

89.     Pursuant to 15 U.S.C. § 1117, BlenderBottle® is entitled to recover (1) each Defendant's profits, (2) any damages sustained by BlenderBottle®, and (3) the costs of the action.  In assessing damages, the Court may enter judgment up to three times actual damages, and in awarding profits, the Court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  The Court may also award BlenderBottle® its reasonable attorneys' fees for the necessity of bringing this claim in this exceptional case.

90.     Due to the Defendants' actions, constituting trade dress infringement, BlenderBottle® has suffered great and irreparable injury, for which BlenderBottle® has no adequate remedy at law.

91.     Each of the Defendants will continue to infringe BlenderBottle®'s trade dress rights to the great and irreparable injury of BlenderBottle®, unless and until enjoined by this Court.

## VII.  <u>THIRD CLAIM FOR RELIEF</u>
## <u>TRADE DRESS INFRINGEMENT (15 U.S.C. §1114)</u>

92.     BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-64 and 75-91 of this Complaint as if set forth fully herein.

93.     This is a claim for trade dress infringement under 15 U.S.C. § 1114 against both Defendants.

94.     BlenderBottle® is the exclusive licensee of U.S. Trademark Registration No. 6,800,019 for its Lid Trade Dress with the right to sue.

95.     Without BlenderBottle®'s permission, Defendant Hydra Cup has used in commerce trade dress that is identical to, and/or confusingly similar to the Lid Trade Dress. Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force. Each of the Defendants has infringed BlenderBottle®'s Lid Trade Dress and created a false designation of origin by using a nearly identical trade dress in connection with the manufacturing, distributing, selling, and/or promoting of Defendant Hydra Cup's bottle products.

96.     Each of the Defendants did so with the intent to unfairly compete with BlenderBottle®, to trade upon BlenderBottle®'s reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant Hydra Cup's products are associated with, sponsored by, originated from, or are approved by BlenderBottle®, when they are not.

97.     BlenderBottle® is the exclusive licensee of U.S. Trademark Registration No. 6,245,626 for its Agitator Trade Dress with the right to sue.

98.     Without BlenderBottle®'s permission, Defendant Hydra Cup has used in commerce trade dress that is identical to the Agitator Trade Dress.  Defendant Thomas

Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force. Each of the Defendants has infringed BlenderBottle®'s Agitator Trade Dress and created a false designation of origin by using identical trade dress in connection with the manufacturing, distributing, selling, and/or promoting of Defendant's bottle products.

99.   Each of the Defendants did so with the intent to unfairly compete with BlenderBottle®, to trade upon BlenderBottle®'s reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant Hydra Cup's products are associated with, sponsored by, originated from, or are approved by BlenderBottle®, when they are not.

100.   Defendants Hydra Cup and Mr. Raymus had actual knowledge of BlenderBottle®'s ownership and prior use of BlenderBottle®'s Lid Trade Dress and Agitator Trade Dress, and without the consent of BlenderBottle®, has willfully violated 15 U.S.C. § 1114.

101.   Defendants' aforementioned acts have injured BlenderBottle® and damaged BlenderBottle® in an amount to be determined at trial. By its actions, Defendant has irreparably injured BlenderBottle®. Such irreparable injury will continue unless and until each of the Defendants is preliminarily and permanently enjoined by this Court from further violation of BlenderBottle®'s rights, for which BlenderBottle® has no adequate remedy at law.

## VIII.  FOURTH CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN, PASSING OFF, & FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

102.   BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-64 and 75-101 of this Complaint as if set forth fully herein.

103.   This is a claim for unfair competition and false designation of origin arising under 15 U.S.C. § 1125(a) against both Defendants.

104.    Defendant Hydra Cup's use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress without BlenderBottle®'s consent constitutes false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such entity with another entity, or as to the origin, sponsorship, or approval of its goods or commercial activities by another entity in violation of 15 U.S.C. § 1125(a).  Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force.

105.    Defendant Hydra Cup's use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress, without BlenderBottle®'s consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of its products or commercial activities in violation of 15 U.S.C. § 1125(a).  Defendant Thomas Raymus knowingly and willfully directed Hydra Cup's infringing activities as Hydra Cup's owner, CEO, sole employee, and thus driving force.

106.    Defendants' acts of false designation of origin, passing off, and unfair competition have been willful and without regard to BlenderBottle®'s rights.

107.    Pursuant to 15 U.S.C. § 1117, BlenderBottle® is entitled to recover (1) Defendant's profits, (2) any damages sustained by BlenderBottle®, and (3) the costs of the action.  In assessing damages, the Court may enter judgment up to three times actual damages, and in awarding profits, the Court may in its discretion enter judgment for such sum as the Court finds to be just, according to the circumstances of the case.  The Court may also award BlenderBottle® its reasonable attorneys' fees for the necessity of bringing this claim in this exceptional case.

108.    BlenderBottle® has been damaged by Defendants' conduct in an amount to be determined at trial.

109.   Due to Defendants' actions, constituting false designation of origin, false or misleading statements, false or misleading description of fact, false or misleading representations of fact, passing off, and unfair competition, BlenderBottle® has suffered and continues to suffer great and irreparable injury, for which BlenderBottle® has no adequate remedy at law.

110.   Each of the Defendants will continue its false designation of origin, false or misleading statements, false or misleading description of fact, false or misleading representations of fact, passing off, and unfair competition, unless and until enjoined by this Court.

### IX.  FIFTH CLAIM FOR RELIEF

### UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

111.   BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-64 and 75-110 of this Complaint as if set forth fully herein.

112.   This is a claim for unfair competition under California Business & Professions Code §§ 17200, et seq.

113.   By virtue of the acts of trade dress infringement, false designation of origin, passing off, and federal unfair competition complained of herein, each of the Defendants has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.

114.   Defendants' acts complained of herein constitute unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged BlenderBottle®.

115.   Each of the Defendants, by its actions, has irreparably injured BlenderBottle®.  Such irreparable injury will continue unless each of the Defendants is preliminarily and permanently enjoined by this Court from further violation of BlenderBottle®'s rights, for which BlenderBottle® has no adequate remedy at law.

### X.  SIXTH CLAIM FOR RELIEF

## UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW

### (California Common Law)

116.    BlenderBottle® repeats and re-alleges the allegations of paragraphs 1-64 and 75-115 of this Complaint as if set forth fully herein.

117.    This is a claim for unfair competition under California common law.

118.    Defendants' acts of trade dress infringement, false designation of origin, passing off, and federal unfair competition complained of herein constitute unfair competition under California common law.

119.    Defendants' aforementioned acts have damaged BlenderBottle® in an amount to be determined at trial.

120.    Each of the Defendants has irreparably injured BlenderBottle®.  Such irreparable injury will continue unless each of the Defendants is preliminarily and permanently enjoined by this Court from further violation of BlenderBottle®'s rights, for which BlenderBottle® has no adequate remedy at law.

121.    Defendants' willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, BlenderBottle® is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

### XI.  PRAYER FOR RELIEF

WHEREFORE, BlenderBottle® prays for judgment in its favor against Defendant Hydra Cup and Defendant Thomas Raymus for the following relief:

A.    An Order adjudging each of the Defendants to have infringed the D235 Patent, D551 Patent, and D798 Patent under 35 U.S.C. § 271;

B.    That each of the Defendants account for all gains, profits, and advantages derived through Defendants' infringement of the D235 Patent, D551 Patent, and D798 Patent in violation of 35 U.S.C. § 271, and that Defendants pay to BlenderBottle® all damages suffered by BlenderBottle® from such infringement and all profits from such infringement pursuant to 35 U.S.C. §§ 284 and 289;

C.  That the Court find for BlenderBottle® and against Defendants on BlenderBottle®'s claim of trade dress infringement, false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a);

D.  That the Court find for BlenderBottle and against Defendants on BlenderBottle®'s claim of trade dress infringement under 15 U.S.C. § 1114;

E.  That the Court find for BlenderBottle® and against Defendants on BlenderBottle®'s claim of trade dress infringement, false designation of origin, passing off, and unfair competition under California Business & Professions Code §§ 17200, *et seq.*, and California common law;

F.  That the Court issue a preliminary and permanent injunction against each of the Defendants, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or activities and from assisting or inducing, directly or indirectly, others to engage in the following activities:

    i.  Manufacturing, importing, marketing, displaying, distributing, offering to sell, and/or selling Defendants' products infringing the Lid Trade Dress and/or Bottle Trade Dress and/or Agitator Trade Dress and/or Label Trade Dress, or any products that are not colorably different therefrom;

    ii.  using BlenderBottle®'s Lid Trade Dress and/or Bottle Trade Dress and/or Agitator Trade Dress and/or Label Trade Dress, or any other trade dress that is confusingly similar to BlenderBottle®'s Lid Trade Dress and/or Bottle Trade Dress and/or Agitator Trade Dress and/or Label Trade Dress;

    iii.  falsely designating the origin of Defendants' products;

    iv.  passing off Defendants' products as those of BlenderBottle®;

    v.  misrepresenting by any means whatsoever, directly or indirectly, the source or sponsorship of any of Defendants' products;

vi.   unfairly competing with BlenderBottle® in any manner whatsoever; and

vii.  causing a likelihood of confusion or injuries to BlenderBottle®'s business reputation.

G.    That an accounting be ordered to determine each of the Defendants' profits resulting from its design patent infringement, trade dress infringement, false designation or origin, passing off, and unfair competition;

H.    That BlenderBottle® be awarded monetary relief in an amount to be fixed by the Court in its discretion as it finds just as an equitable remedy and as a remedy under 15 U.S.C. § 1117, including all damages sustained by BlenderBottle® as a result of Defendants' acts of trade dress infringement, false designation of origin, passing off, and unfair competition, all profits received by Defendants from sales and revenues of any kind made as a result of its infringing actions, and the costs of this action.

I.    That such award to BlenderBottle® of damages and profits be trebled pursuant to 15 U.S.C. § 1117;

J.    That BlenderBottle® be awarded exemplary damages from Defendants pursuant to Cal. Civ. Code § 3294;

K.    An Order adjudging that this is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117;

L.    An award to BlenderBottle® of the attorneys' fees, expenses, and costs incurred by BlenderBottle® in connection with this action pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117, and/or California common law;

M.    An award of pre-judgment and post-judgment interest and costs of this action against Defendants; and

N.    Such other and further relief as this Court may deem just and proper.

## XII. **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, BlenderBottle® requests a trial by jury of all issues so triable.

1

Respectfully submitted,

2

KNOBBE, MARTENS, OLSON & BEAR, LLP

3

4

5    Dated:May 10, 2024            By: */s/ Jacob R. Rosenbaum*

6                                     Ali S. Razai
                                      Sean M. Murray
7                                     Jacob R. Rosenbaum
                                      Christian D. Boettcher
8
                                   Counsel for Plaintiff TROVE  BRANDS,  LLC  d/b/a
9                                  THE BLENDERBOTTLE COMPANY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.  My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On May 10, 2024, I served the **SECOND AMENDED COMPLAINT** on defendant TRRS Magnate LLC d/b/a Hydra Cup shown below via EMAIL:

MEGHAN PRATSCHLER
meghan@meghantheattorney.com
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Telephone: (415) 335-9226

CASEY SCOTT MCKAY
casey@mclaw.io
1441 U St. NW, Suite 712
Washington, DC, D.C. 20009
Telephone: (202) 743-1972

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on May 10, 2024, at San Diego, California.

*/s/ Estefania Munoz*
Estefania Munoz

-40-   SECOND AMENDED COMPLAINT.
Case No. 2:22-cv-02222-TLN-CKD