1   Meghan Pratschler
2   CA Bar No.: 324970
3   Meghan the Attorney, LLP
4   95 3rd St 2nd Floor
5   San Francisco, CA 94103-3103
6   meghan@meghantheattorney.com
7   (415). 335-9226

8   -and-

9   Casey Scott McKay
10  TN Bar No.: 034028
11  MC Law, PLLC
12  1441 U St. NW, Suite 102
13  Washington, DC, D.C. 20009
14  202.743.1972
15  casey@mclaw.io

16  *Attorneys for Defendants*

17      **IN THE UNITED STATES DISTRICT COURT**
18      **THE EASTERN DISTRICT OF CALIFORNIA**

19  – – – – – – – – – – – – – – – – – – – – – – – – – – – X

20  **TROVE BRANDS, LLC D/B/A THE BLENDERBOTTLE**
21  **COMPANY**

22              *Plaintiff,*

                *v.*                             **Case No: 2:22-cv-02222-TLN-CKD,**

                                                **Hon. Troy Lynne Nunley**
                                                **Hon. Carolyn K. Delaney**

23

24  **TRRS MAGNATE LLC D/B/A HYDRA CUP AND THOMAS**
25  **RAYMUS, AN INDIVIDUAL,**

26              *Defendants.*

27  – – – – – – – – – – – – – – – – – – – – – – – – – – – X

28

29

30

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff Trove Brands, LLC d/b/a the BlenderBottle Company ("BlenderBottle") filed its Second Amended Complaint (the "Complaint") for patent infringement of U.S. Patent No. D510,235 (the "D235 "Bottle" Patent") (filed 09 September 2003), U.S. Patent No. D696,551 (the "D551 "Lid" Patent") (filed 07 September 2012), U.S. Patent No. D697,798 (the "D798 "Container" Patent") (filed 06 June 2013) (collectively, the "Asserted Patents") and trade dress infringement of U.S. Trademark Registration No. 6,800,019 (the "019 "Lid" Trade Dress"), U.S. Trademark Registration No. 6,245,626 (the "626 "Agitator" Trade Dress"), the "Unregistered "Bottle" Trade Dress", and the "Unregistered "Label" Trade Dress" (collectively, the "Asserted Trade Dresses") and California unfair competition claims against Defendants TRRS Magnate LLC d/b/a Hydra Cup and Thomas Raymus, an individual (collectively "Hydra Cup" unless otherwise specified), accusing the following nine Hydra Cup products of infringement—(i) the "TS1314 OG Regular Shaker", (ii) the "TS1327 OG Mini Shaker", (iii) the "TS1352 OG Storage Shaker", (iv) the "TS1038 Jumbo Shaker", (v) the "GOAT Shaker" (collectively, the "Accused Shakers"), (vi) the "HC OG Carry Loop Lid", (vii) the "OG Spherical Agitator", (viii) the "OG Dumbbell Agitator", and (ix) the "OG Shaker Label" (collectively, the "Accused Products"). Dismissal of BlenderBottle's claims is proper because Blender failed to offer sufficient facts to establish claims upon which this Court can grant relief because as follows:

I.  BlenderBottle's D551 "Lid" Patent claims a standalone lid without a bottle; its D798 "Container" Patent claims a standalone container (i.e., a bottle) without a lid; but, because each of Hydra Cup's Accused Shakers comprise both *bottle and lid*, each Accused Shaker immediately distinguishable as patently dissimilar from the standalone lid design disclosed by BlenderBottle's D551 "Lid" Patent and from the standalone container design disclosed by the D798 "Container" Patent.

II. Similarly, BlenderBottle's 019 "Lid" Trade Dress claims a standalone lid design; Hydra Cup only sells complete shakers—bottle and lid combined—in multi-packs; therefore, the consuming public would instantly distinguish BlenderBottle's standalone lid claimed by the 019 "Lid" Trade Dress from Hydra Cup's complete shakers, meaning there is no plausible likelihood of confusion based on the facts alleged by BlenderBottle.

III. BlenderBottle's claim for patent infringement of the expired D235 "Bottle" Patent should be dismissed for all Accused Shakers that Hydra Cup did not sell before the expiration of the D235 Patent—the TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the GOAT Shaker, and the HC OG Carry Loop Lid—because, despite Hydra Cup showing it did not sell the Accused Shakers until after the D235 Patent expired, BlenderBottle failed to allege facts showing Hydra Cup

sold the TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the GOAT Shaker, or the HC OG Carry Loop Lid before the D235 "Bottle" Patent expired.

IV.   BlenderBottle's alleged acquired distinctiveness is nothing more than acquired distinctiveness theater, as (i) the shaker bottle and lid designs practiced by BlenderBottle's Asserted Trade Dresses could not possibly have developed any meaningful secondary meaning during the time that the same bottle and lid designs were protected from all competition by over a dozen of BlenderBottle's design and utility patents disclosing virtual identical designs; and (ii) all of BlenderBottle's allegations showing secondary meaning are actually only allegations for the Unregistered "Bottle" Trade Dress; without developing valid secondary meaning, the Asserted Trade Dresses are not protectable and BlenderBottle's claims for trade dress infringement must be dismissed.

V.   BlenderBottle's California unfair competition claims fail for the same reasons as its Lanham Act claims.

VI.   BlenderBottle's mischaracterized allegations against Mr. Raymus in his individual capacity are not sufficient to disregard the protection of a limited liability company;

**TABLE OF CONTENTS**

LEGAL STANDARD.................................................................................................7

ARGUMENT..............................................................................................................8

I. BlenderBottle's Design Patent Infringement Claims for its D551 "Lid" Patent and its D798 "Container" Patent Should Be Dismissed Because the D551 "Lid" Patent and the D798 "Container" Patent are Instantly Distinguishable and Patently Dissimilar from Hydra Cup's Accused Shakers Comprising a Shaker *Bottle and Lid*...................................................8

    A. BlenderBottle's D551 "Lid" Patent Disclosing a Standalone Lid is Patently Dissimilar and Immediately Distinguishable from Hydra Cup's Accused Shakers as Hydra Cup's Accused Shakers Each Consist of Both Shaker *Bottle and Lid*..................................................9

    B. BlenderBottle's D798 "Container" Patent is Immediately Distinguishable and Patently Dissimilar from Hydra Cup's TS1352 OG Storage Shaker..................................................10

II. BlenderBottle 019 "Lid" Trade Dress Claims a Standalone Lid Design; Hydra Cup's Accused Shakers, Including the Shakers with the Accused HC OG Carry Loop Lid, are All Sold as Complete Shakers Comprising Bottle and Lid in Multi-packs; There is Virtually Zero Chance of Confusion Between a Standalone Lid and Multi-packs of Complete Shakers........11

III. BlenderBottle's D235 "Bottle" Patent Expired on 04 October 2019; Hydra Cup Did Not Sell the TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the GOAT Shaker, or the HC OG Carry Loop Lid Until After the D235 "Bottle" Patent Expired; Therefore, BlenderBottle Failed to Allege Sufficient Facts Necessary to Support its Patent Infringement Claim for its Expired D235 "Bottle" Patent for the TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the GOAT Shaker, and the HC OG Carry Loop Lid..............................................................................................14

IV. It was Not Possible for BlenderBottle to Develop Secondary Meaning for 019 "Lid" Trade Dress, 626 "Agitator" Trade Dress, or Unregistered "Bottle" Trade Dress Because the Exact Designs Claimed by the Asserted Trade Dresses were Immune from Competition Due to Multiple Patents Claiming Identical "Classic Simple Shaker" Bottle and Lid Designs While BlenderBottle Claims it Developed Secondary Meaning for Said Designs............................14

    A. If Competitors Cannot Compete, "Acquired" Distinctiveness is Obsolete....................16

    B. BlenderBottle is Breaching its Quid Pro Quo with the Public, and Robbing the Public Domain by Manipulating the Patent System to Purchase Federal Trade Dresses to Effectively Secure Perpetual Patents..........................................................................................18

V. Each of BlenderBottle's Allegations for Acquired Distinctiveness Concern its Unregistered "Bottle" Trade Dress, not its 019 "Lid" Trade Dress, its 626 "Agitator" Trade Dress, or its Unregistered Label Trade Dress.......................................................................................19

VI. BlenderBottle's California Unfair Competition Claims Fail for the Same Reasons as its Lanham Act Claims.......................................................................................................20

VII. BlenderBottle Failed to Offer Any Facts Showing Mr. Raymus Acted Outside his Capacity as Managing Member of the LLC and Failed to Offer any Facts Showing Bad Faith or Misconduct by Mr. Raymus........................................................................................21

CONCLUSION........................................................................................................24

CERTIFICATE OF SERVICE...............................................................................26

EXHIBITS...............................................................................................................27

1        **TABLE OF AUTHORITIES**

2    *Opinions*

3        *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………7

4        *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………….....7

5        *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998)………...7

6        *Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)……………………7, 20

7        *Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir. 1987)………………………......7

8        *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52
9    F.4th 934 (Fed. Cir. 2022)…………………………………………………………….……8

10       *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010)………………….…8

11       *Egyptian Goddess, Inc. v. Swisa*, Inc._, 543 F.3d 665 (Fed. Cir. 2008)………………...8-9

12       *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010)……………………..9

13       *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203 (9th Cir. 2023),
14   cert. denied, 144 S. Ct. 550, 217 L. Ed. 2d 293 (2024)……………………………………12

15       *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001)………...12

16       *Bayline Partners L.P. v. Weyerhaeuser Co.*, No. C-93-2828-VRW, 1994 WL 286337, at
17   *2 (N.D. Cal. Feb. 17, 1994)……………………………………………………...........……………12

18       *L.A. Gear Inc v Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed Cir 1993)……..……….12, 15

19       *Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601 (9th Cir. 2003)…..…..…..………12

20       *In re Change Wind Corp.*, 123 USPQ2d 1453 (TTAB 2017)…………......………………12

21       *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)………………........………..12

22       *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778 (9th Cir. 2002)………………..…………15

23       *Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 F. 299 (2d Cir. 1917)….......…………15

24       *Yurman Design, Inc. v. Paj, Inc.*, 262 F.3d 101 (2d Cir. 2001)……………………..……15

25       *Standard Terry Mills, Inc. v. Shen Mfg. Co.*, 803 F.2d 778 (3d Cir. 1986)…………..…15

26       *Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123 (9th Cir. 2016)……..………15

27       *Kohler Co. v. Moen Inc.*, 12 F.3d 632 (7th Cir. 1993)…………………….....……………15

28       *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985)………...…………16

29       *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863 (8th Cir. 1994)………….…..…………16

30       *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321 (1963)…………………...……16

31       *Application of Honeywell, Inc.*, 532 F.2d 180 (C.C.P.A. 1976)……………………...……16

32       *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111 (1938)…………………….....…………18

33       *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989)………………….18

34       *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169 (1896)…………………….....………..18

35       *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL
36   5910817 (N.D. Cal. Oct. 11, 2016)………………………………………………..……………20

1        *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)……………..........20

2        *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254 (1992)……………………………........20

3        *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008)……………..........20

4        *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003)……………………………...............21

5        *United States v. Bestfoods*, 524 U.S. 51 (1998)……………………………......................21

6        *Ontiveros v. Zamora*, CIV S–08–567LKK/DAD, 2009 WL 425962 (E.D.Cal. Feb. 20,
7    2009)…..21

8        *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825 (1st Dist.
9    1962)…………………………………………………………………………….......22

10      *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)……………….......…………..21-22

11      *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290 (1985)………………….............………21

12      *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143 (9th Cir.
13    2004)………………………………………………………………………....…........22

14      *SEC v. Hickey*, 322 F.3d 1123 (9th Cir. 2003)………………………………......…...22

15      *Hoang v. Vinh Phat Supermarket, Inc.*, No. 2:13-cv-00725-WBS, 2013 WL 4095042
16    (E.D. Cal. Aug. 13, 2013)…………………………………………………….....................……24

17
18    ***Statutes***

19      Cal. Bus. & Prof. Code § 17200 et seq.…………………………….........................20

20      Federal Rule of Civil Procedure 12(b)(6)…………………………….................……7

1          **LEGAL STANDARD**

2          Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed when a

3   plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P.

4   12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

5   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

6   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

7   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

8   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

9   677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the ele-

10  ments of a cause of action will not do.' *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555)."Nor does

11  a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

12  at 678 (quoting *Twombly*, 550 U.S. at 557).

13         When considering a Rule 12(b)(6) motion to dismiss, the court construes the complaint in

14  the light most favorable to the nonmoving party, accepting all well-pleaded facts as true and

15  drawing all reasonable inferences in the non-moving party's favor. *Wyler Summit P'ship v.*

16  *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, is not required

17  "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or un-

18  reasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In

19  other words, it need not accept as true legal conclusions or "[t]hreadbare recitals of the elements

20  of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678;

21  *Twombly*, 550 U.S. at 563. Conclusory allegations may also be ignored if they are contradicted

22  by other facts alleged, by documents incorporated in the complaint, or by facts that are subject to

23  judicial notice. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

## ARGUMENT

**I.**   **BLENDERBOTTLE'S DESIGN PATENT INFRINGEMENT CLAIMS FOR ITS D551 "LID" PATENT AND ITS D798 "CONTAINER" PATENT SHOULD BE DISMISSED BECAUSE THE D551 "LID" PATENT AND THE D798 "CONTAINER" PATENT ARE INSTANTLY DISTINGUISHABLE AND PATENTLY DISSIMILAR FROM HYDRA CUP'S ACCUSED SHAKERS COMPRISING A SHAKER *BOTTLE AND LID*.**

BlenderBottle's D551 "Lid" Patent discloses a standalone lid—no bottle. It's D798 "Container" Patent discloses a standalone container—no lid. Each of Hydra Cup's five Accused Shaker products comprises a *bottle and lid*. Even the most astute ordinary observer would immediately distinguish a standalone lid or standalone container from a complete shaker product made up of both bottle and lid. Because the D551 "Lid" Patent and the D798 "Container" Patent are patently dissimilar from Hydra Cup's Accused Shakers comprising both bottle and lid, this Court cannot proceed with second step of the ordinary observer test. BlenderBottle's infringement claims for the D551 "Lid" Patent and the D798 "Container" Patent should therefore be dismissed.



BlenderBottle's D551 "Lid" Patent vs. Hydra Cup's TS1327 Mini Shaker with the HC OG Carry Loop Lid

*The D551 "Lid" Patent is Immediately Distinguishable and Patently Dissimilar from Hydra Cup's Shaker Products Consisting of Both Bottle and Lid.*

Establishing a claim for design patent infringement requires pleading facts showing that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 938 (Fed. Cir. 2022) (quoting *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (en banc)). If the claimed design is "plainly dissimilar" from the accused product, the court should dismiss. *ABC Corp. I*, 52 F.4th at 942 (stating "[w]here a patented design and an accused product are not "plainly dissimilar," the

1   court must conduct a threeway analysis comparing the accused product, the patented design, and

2   the prior art.") (quoting *Egyptian Goddess*, 543 F.3d at 677–78).

3   **A. BlenderBottle's D551 "Lid" Patent Disclosing a Standalone Lid is Patently Dissimilar**
4   **and Immediately Distinguishable from Hydra Cup's Accused Shakers as Hydra Cup's Ac-**
5   **cused Shakers Each Consist of Both Shaker *Bottle and Lid*.**

6        Upon comparing the TS1327 OG Mini Shaker with the HC OG Carry Loop Lid to the de-

7   sign disclosed in the D551 "Lid" Patent, it is immediately apparent that the two designs are

8   patently dissimilar and would be easily distinguishable to an ordinary observer. The most glaring

9   difference is that the D551 "Lid" Patent claims a standalone lid design, whereas the TS1327 OG

10   Mini Shaker with the HC OG Carry Loop Lid consist of a complete shaker bottle product com-

11   prising both a lid and a bottle. This fundamental distinction in the scope and nature of the designs

12   would be instantly recognizable to any ordinary observer. Hydra Cup has never sold standalone

13   lids.

14        When assessing design patent infringement, the comparison must be made between the

15   patented design and the accused design as a whole, not just isolated components. *See Egyptian*

16   *Goddess*, 543 F.3d at 677; *see also Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed.

17   Cir. 2010) (focusing the infringement analysis on whether the products as a whole are substan-

18   tially similar). The D551 "Lid" Patent claims only a lid configuration, while the accused Hydra

19   Cup product is a fully integrated shaker bottle with a lid attached to a bottle. The presence of the

20   bottle in the Accused Shaker creates a starkly different overall visual impression compared to a

21   lone lid.

22        Even focusing solely on the lid portion of the TS1327 OG Mini Shaker & HC OG Carry

23   Loop Lid, there are numerous clear and unmistakable differences compared to the D551 "Lid"

24   Patent, especially considering the highly-crowded prior art, including obvious differences in the

25   recessed domed shape, the spout and spout guard, the brackets, and the top pivoting arm, among

26   many others. These plainly visible differences in the designs, coupled with the fact that the Ac-

27   cused Shaker includes an entire bottle in addition to the lid, make it clear that an ordinary ob-

28   server would not confuse the two designs. The overall visual impression of the TS1327 OG Mini

29   Shaker & HC OG Carry Loop Lid is markedly different from the standalone lid configuration

30   claimed in the D551 "Lid" Patent.

1       The inclusion of the bottle in the Accused Shaker is a substantial and significant distinc-

2   tion that fundamentally alters the nature and appearance of the product. An ordinary observer,

3   familiar with the myriad of shaker bottle designs available in the market, would undoubtedly dis-

4   tinguish between a complete shaker bottle and a single lid component. The ordinary observer

5   searching for a standalone lid would most likely be searching for a specific company that makes

6   the specific lid they are searching for, thereby further undermining any possibility of confusion

7   between a standalone lid and a complete shaker product—bottle and lid combined. Furthermore,

8   the Accused Shakers were only sold in mutli-packs of three or five shakers, not as single shakers;

9   therefore, the already low likelihood of confusion is virtually eliminated.[1]

10  **B. BlenderBottle's D798 "Container" Patent is Immediately Distinguishable and Patently**
11  **Dissimilar from Hydra Cup's TS1352 OG Storage Shaker.**

12      Along the same lines, the D798 "Container" Patent discloses a standalone container de-

13  sign that is patently dissimilar to Hydra Cup's TS1352 OG Storage Shaker, because the D798

14  "Container" Patent's "Container" design only covers a container without a lid. In contrast, the

15  TS1352 OG Storage Shaker consists of both a shaker bottle and a lid, creating a starkly different

16  overall visual impression immediately distinguishable to even the most astute ordinary observer.

17  The presence or absence of a lid significantly alters the appearance and functionality of the

18  shaker bottle, making the designs plainly distinct.

**BlenderBottle's D798 "Container" Patent vs. Hydra Cup's TS1352 OG Storage Shaker**



The D798 "Container" Patent



TS1352 OG Storage Shaker



TS1352 OG Storage Shaker

19

20  *The D798 "Container" Patent is Immediately Distinguishable and Patently Dissimilar from Hydra Cup's Shaker*
21  *Products Consisting of Bottle and Lid.*

22      Even focusing solely on the bottle portion, there are immediate dissimilarities between

23  the D798 "Container" Patent and the Hydra Cup products. Differences in shape, base design,

--------------------------------

[1] (*See* Ex. 2, Declaration of Thomas Raymus; Ex. 12, Amazon Screenshot Showing Hydra Cup's Shakers all Sold in Packs of Multiple Shakers.).

1   measurement markings, indentations, and surface texture, along with the critical distinction of

2   the Hydra Cup products having lids, make it clear that the D798 "Container" Patent and the Hy-

3   dra Cup Accused Products are patently dissimilar. An ordinary observer would not confuse the

4   lidless, straight-sided, flat-bottomed bottle of the D798 "Container" Patent with the rounded, lid-

5   ded bottles of the Hydra Cup products.

6        The D798 "Container" Patent is plainly distinct from Hydra Cup's TS1352 OG Storage

7   Shaker, as it covers only a bottle design without a lid, whereas the Hydra Cup products are com-

8   plete shaker bottles with lids. Moreover, even comparing just the bottle portions reveals substan-

9   tial differences in overall shape, base design, measurement markings, indentations, and surface

10  texture. These dissimilarities in both the presence of a lid and the design of the bottle itself ren-

11  der the D798 "Container" Patent and the Hydra Cup Accused Products patently dissimilar to an

12  ordinary observer.

13       Accordingly, because Hydra Cup's Accused Shakers, including the TS1327 OG Mini

14  Shaker with the HC OG Carry Loop Lid, are immediately distinguishable and patently dissimilar

15  from the standalone lid design claimed by the D551 "Lid" Patent and the standalone container

16  design claimed by the D798 Patent, BlenderBottle failed to provide facts that allow this Court to

17  proceed with the ordinary observer test discussed above.

18  **II.   BLENDERBOTTLE 019 "LID" TRADE DRESS CLAIMS A STANDALONE LID DESIGN;**
19       **HYDRA CUP'S ACCUSED SHAKERS, INCLUDING THE SHAKERS WITH THE ACCUSED**
20       **HC OG CARRY LOOP LID, ARE ALL SOLD AS COMPLETE SHAKERS COMPRISING**
21       ***BOTTLE AND LID* IN MULTI-PACKS; THERE IS VIRTUALLY ZERO CHANCE OF**
22       **CONFUSION BETWEEN A STANDALONE LID AND MULTI-PACKS OF COMPLETE**
23       **SHAKERS.**

24       Similar to the discussion above regarding the obvious dissimilarity between BlenderBot-

25  tle's patents for a standalone lid and standalone container and Hydra Cup's Accused Shaker

26  products—products with the bottle and lid combined—BlenderBottle's Complaint's comparisons

27  and allegations of trade dress infringement of its 019 "Lid" Trade Dress are, likewise, all di-

28  rected at Hydra Cup's shakers that consists of both a bottle and a lid whereas the 019 "Lid"

29  Trade Dress only protects a standalone lid. This failure to name an actual accused lid product, as

30  opposed to a full shaker product, is fatal to BlenderBottle's claim, as any consumer would in-

1  stantly distinguish a standalone lid from a complete shaker bottle and lid, especially considering

2  Hydra Cup's Accused Shakers are only sold in multipacks.



BlenderBottle's 019 "Lid" Trade Dress (aka the D478 "Lid" Patent) vs. Hydra Cup's Accused Shakers

3      Trade dress covers the overall appearance of an owner's goods—i.e., the total image, de-

4  sign, and appearance of a product." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68

5  F.4th 1203, 1212 (9th Cir. 2023), cert. denied, 144 S. Ct. 550, 217 L. Ed. 2d 293 (2024) (quoting

6  *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001)). This means trade

7  dress includes and "extends to features such as format, design, layout, shape, and the general

8  combination of design elements that constitute the appearance of an owner's products." *Bayline*

9  *Partners L.P. v. Weyerhaeuser Co.*, No. C-93-2828-VRW, 1994 WL 286337, at *2 (N.D. Cal.

10  Feb. 17, 1994) (citing *L.A. Gear Inc. v Thom McAn Shoe Co.*, 988 F2d 1117, 1129-30 (Fed Cir

11  1993).

12      Courts have repeatedly cautioned that the trademark or trade dress must be examined as a

13  whole, not by its individual constituent parts. The proper comparison is between the plaintiff's

14  claimed trade dress and the corresponding product or packaging of the defendant. *See Talking*

15  *Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 604 (9th Cir. 2003) (comparing "the

16  total visual image of the two bottles" in a trade dress case).

17      When the trade dress at issue is a standalone lid design, but the Accused Product is a

18  complete shaker bottle with both a lid and a bottle, the overall appearances are immediately and

19  unmistakably different. *In re Change Wind Corp.*, 123 USPQ2d 1453, 1467 (TTAB 2017) (citing

20  *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)) ("[t]he evidence must re-

21  late to the promotion and recognition of the *specific configuration embodied* in the applied-for

22  mark and not to the goods in general.") (emphasis added). No reasonable consumer would ever

23  confuse a mere lid with an entire shaker bottle based on the overall visual impression. The bottle

1   portion of Hydra Cup's products, which is not part of BlenderBottle's 019 "Lid" Trade Dress,

2   creates an entirely different commercial impression that precludes any likelihood of confusion.

3         Throughout the Complaint, BlenderBottle alleges that various Hydra Cup Accused Shak-

4   ers infringe the 019 "Lid" Trade Dress. Compl. ¶¶ 50, 77, 80. But these are all complete shaker

5   bottles that include both a lid and a bottle. BlenderBottle does not identify any standalone Hydra

6   Cup lid product that allegedly infringes the 019 "Lid" Trade Dress. By comparing the 019 "Lid"

7   Trade Dress, which covers only a lid design, to Hydra Cup's complete shaker bottles, Blender-

8   Bottle is improperly conflating the scope of its claimed trade dress with the Accused Shakers.

9   This improper comparison of a lid design to a full bottle design underscores the fundamental de-

10   ficiency in BlenderBottle's claim.

11         Even more damaging to BlenderBottle's conclusory claims of confusion, Hydra Cup has

12   not ever offered or sold standalone lids. In fact, Hydra Cup has not even offered or sold stand-

13   alone shakers. (*See* Ex. 12, Amazon Screenshot Showing Hydra Cup's Shakers all Sold in Packs

14   of Multiple Shakers.). Hydra Cup's Accused Shakers are only sold in multipacks of 3, 4, or 6

15   shakers. (*See id.*). No consumer would ever confuse a standalone lid with a pack of multiple

16   complete shaker bottles with Hydra Cup's name all over the product page and packaging. (*See*

17   *id.*).



18

19   *Hydra Cup's Accused Shakers are Only Sold as Complete Shakers in Multi-packs.*

20         By failing to identify an actual Hydra Cup lid product that allegedly infringes the 019

21   "Lid" Trade Dress, BlenderBottle has not provided the requisite factual allegations to support a

1    plausible claim for relief. The Complaint does not put Hydra Cup on proper notice of the specific

2    product accused of infringement or allow the Court to make the necessary comparison of the

3    overall appearances of the claimed trade dress and the accused product. BlenderBottle's compar-

4    isons of its 019 "Lid" Trade Dress to Hydra Cup's complete shaker bottles are inapt and insuffi-

5    cient to state a viable claim. The stark differences between a lid and a full bottle are so profound

6    and unmistakable that BlenderBottle cannot plausibly allege any likelihood of confusion based

7    on such a comparison.

8    **III.    BLENDERBOTTLE'S D235 "BOTTLE" PATENT EXPIRED ON 04 OCTOBER 2019; HYDRA**
9    **CUP DID NOT SELL THE TS1327 OG MINI SHAKER, THE TS1352 OG STORAGE**
10   **SHAKER, THE TS1038 JUMBO SHAKER, THE GOAT SHAKER, OR THE HC OG CARRY**
11   **LOOP LID UNTIL AFTER THE D235 "BOTTLE" PATENT EXPIRED; THEREFORE,**
12   **BLENDERBOTTLE FAILED TO ALLEGE SUFFICIENT FACTS NECESSARY TO SUPPORT ITS**
13   **PATENT INFRINGEMENT CLAIM FOR ITS EXPIRED D235 "BOTTLE" PATENT FOR THE**
14   **TS1327 OG MINI SHAKER, THE TS1352 OG STORAGE SHAKER, THE TS1038 JUMBO**
15   **SHAKER, THE GOAT SHAKER, AND THE HC OG CARRY LOOP LID.**

16         BlenderBottle has failed to state a claim for patent infringement of its D235 "Bottle"

17   Patent because the patent expired on 04 October 2019, before Hydra Cup began selling the

18   TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the

19   GOAT Shaker, and the HC OG Carry Loop Lid. Once a patent expires, the claimed design enters

20   the public domain and can be freely used by anyone without liability for infringement.

21         The D235 "Bottle" Patent expired in October 2019.[2] Hydra Cup did not begin selling the

22   TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the

23   GOAT Shaker, or the HC OG Carry Loop Lid until after the D235 "Bottle" Patent had already

24   expired.[3] At the time Hydra Cup entered the market with the TS1327 OG Mini Shaker, the

25   TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the GOAT Shaker, and the HC OG

26   Carry Loop Lid, the design claimed by the D235 "Bottle" Patent was in the public domain and

27   available for anyone to use freely. (Ex. 2, Raymus Decl. (stating Hydra Cup did not start selling

28   the TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the

---

[2] (Ex. 4, U.S. Patent No. D510,235 (filed 09 Sept. 2003)).

[3] (*See* Ex. 2, Raymus Decl. (stating Hydra Cup did not start selling the TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038 Jumbo Shaker, the GOAT Shaker, or the HC OG Carry Loop Lid until after the D235 "Bottle" Patent expired in October 2019.); *see also* Ex. 13, Screenshot of "Hydra Cup OG [6 Pack] 28 oz Shaker Bottles" Amazon Product Page (showing 29 July 2020 as the "Date First Available")).

1   GOAT Shaker, or the HC OG Carry Loop Lid until after the D235 "Bottle" Patent expired in Oc-

2   tober 2019.)). By failing to allege a specific date or time-frame for the alleged infringement,

3   BlenderBottle has not provided sufficient facts to support a plausible claim for relief. Put differ-

4   ently, even if the Court were to accept all of BlenderBottle's allegations as true, it is simply not

5   possible for Hydra Cup to be guilty of infringing an expired patent. BlenderBottle's failure to

6   allege a specific time-frame for the alleged infringement, combined with the fact that the accused

7   activities occurred after the patent's expiration, demonstrates that BlenderBottle has not pre-

8   sented a plausible claim for relief. Accordingly, the Court should dismiss BlenderBottle's claim

9   for infringement of the D235 "Bottle" Patent by the TS1327 OG Mini Shaker, the TS1352 OG

10   Storage Shaker, the TS1038 Jumbo Shaker, the GOAT Shaker, and the HC OG Carry Loop Lid

11   for failure to state a claim upon which relief can be granted.

12   **IV.  IT WAS NOT POSSIBLE FOR BLENDERBOTTLE TO DEVELOP SECONDARY MEANING FOR**
13   **019 "LID" TRADE DRESS, 626 "AGITATOR" TRADE DRESS, OR UNREGISTERED**
14   **"BOTTLE" TRADE DRESS BECAUSE THE EXACT DESIGNS CLAIMED BY THE ASSERTED**
15   **TRADE DRESSES WERE IMMUNE FROM COMPETITION DUE TO MULTIPLE PATENTS**
16   **CLAIMING IDENTICAL "CLASSIC SIMPLE SHAKER" BOTTLE AND LID DESIGNS WHILE**
17   **BLENDERBOTTLE CLAIMS IT DEVELOPED SECONDARY MEANING FOR SAID DESIGNS.**

18   BlenderBottle's alleged acquired distinctiveness in the Asserted Trade Dresses is mere

19   acquired distinctiveness theater.[4] BlenderBottle's Asserted Trade Dresses have been protected

20   from competition by BlenderBottle's design and utility patents the entire time BlenderBottle

21   claims it has been developing secondary meaning in its Asserted Trade Dresses.[5] While Blender-

22   Bottle's patents protect its Asserted Trade Dresses from competition, acquiring any *meaningful*

23   secondary meaning in the Asserted Trade Dresses is simply not possible. *See Yurman Design,*

24   *Inc. v. Paj, Inc.*, 262 F.3d 101, 114-16 (2d Cir. 2001) (noting that granting trademark rights in a

25   product design is more likely to prevent competition than is granting rights in product packag-

---

[4] Note, a registered trademark can lose its presumption of validity if the defendant "can demonstrate through law, undisputed facts, or a combination thereof that the mark is invalid, the evidentiary bubble bursts. . . . and the registration loses its evidentiary significance." *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 782–83 (9th Cir. 2002).

[5] Judge Learned Hand described the problem back in 1917: "The plaintiff has the right not to lose his customers through false representations that those are his wares which in fact are not, but he may not monopolize any design or pattern, however trifling. The defendant, on the other hand, may copy plaintiff's good slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale. *See also Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 F.299, 301 (2d Cir. 1917). *See also L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1131 (Fed. Cir. 1993), cert denied, 510 U.S. 908 (1993).

1    ing); *Standard Terry Mills, Inc. v. Shen Mfg. Co.*, 803 F.2d 778, 781 (3d Cir. 1986). This means

2    BlenderBottle failed to allege facts showing its Asserted Trade Dresses acquired secondary

3    meaning,[6] as the "classic simple shaker" bottle and lid designs practiced by these trade dresses

4    are also protected from competition by BlenderBottle's design and utility patents, meaning the

5    designs have been immune from any competition for the entire life of the designs. This patent

6    protection precludes BlenderBottle from acquiring any meaningful secondary meaning in the As-

7    serted Trade Dresses.



8

9    *BlenderBottle's "Classic Simple Shaker" Patent Family: The Equivalent Patents.*

---

[6] Establishing a claim for trade dress infringement requires facts to show that the trade dress is non-funtional, has acquired secondary meaning, and that there is a likelihood of confusion between the trade dress and the accused products. *Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1127 fn.1 (9th Cir. 2016) (citations omitted).

**A. If Competitors Cannot Compete, "Acquired" Distinctiveness is Obsolete.**

The fundamental goal of trademark law is to foster competition.[7]

Secondary meaning must be shown through substantially continuous and exclusive use over a period of time. BlenderBottle cannot develop meaningful secondary meaning for its Asserted Trade Dresses during a period of lack of competition due to its own patents.[8] If secondary meaning is meant to represent a lack of competitors' need to use a design, meaningful secondary meaning cannot be developed during a period when the lack of competition is due to patent protection. *Application of Honeywell, Inc.*, 532 F.2d 180, 182-83, 189 USPQ at 344 (C.C.P.A. 1976) ("The most, therefore, that can be said of applicant's evidence of distinctiveness is that the design in question may have acquired a de facto secondary meaning. . . . a significance or recognition due to a lack of competition or other happenstance, but which is insufficient to support a legally protectable right therein.") (citations omitted).[9]

In the present case, BlenderBottle's alleged rights in its Asserted Trade Dresses have been protected and are protected by over a dozen patents disclosing minor variations of the "classic simple shaker" bottle and lid designs dating back to the early aughts. BlenderBottle disclosed its bare bones "classic simple shaker"—bottle and lid combined—back in 2003 when it filed its D235 "Bottle" Patent. In exchange for giving its "classic simple shaker" bottle and lid design to the public, BlenderBottle enjoyed a monopoly on the design for fourteen years. In October 2019, however, BlenderBottle's "classic simple shaker" bottle and lid design was granted to the public domain. Despite ostensibly granting the "class simple shaker" bottle and lid design to the public

---

[7] *See Kohler Co. v. Moen Inc.*, 12 F.3d 632, 638 (7th Cir. 1993) (citing *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985) (citation omitted)); *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 873 (8th Cir. 1994) (per curiam) ("Protecting trademarks protects the public and fosters fair competition.") (citation omitted). *See also United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 372 (1963) (stating "competition is our fundamental national economic policy.").

[8] BlenderBottle threatened to sue Hydra Cup over the "classic simple shaker" bottle and lid designs using several design and utility patents. (*See* Ex. 10, Cease and Desist Letter from BlenderBottle to Hydra Cup (21 January 2021) (threatening to sue Hydra Cup for infringement over the designs at issue in this litigation over the "classic simple shaker" designs using U.S. Patent No. 9,216,843, U.S. Patent No. 9,492,024, U.S. Patent No. 6,379,032, U.S. Patent No. 1,0165,877 along with the D235 and D798 Patents.)).

[9] The court further emphasized that allowing trade dress protection for a design that was previously protected by a patent would be inconsistent with the purpose of preserving the freedom to copy functional features of a device once the patent has expired. *Id.* at 182-83.

1   domain in October 2019, BlenderBottle filed at least a dozen other design and utility patents

2   claiming substantially similar "classic simple shaker" bottle and lid designs. These patents have

3   prevented competitors from using designs identical to BlenderBottle's Asserted Trade Dresses

4   for the duration of the patent terms. And a quick search on PACER or any search engine shows

5   BlenderBottle aggressively enforcing its rights against dozens of individuals and small compa-

6   nies over these exact "classic simple shaker" bottle and lid designs.

7        As a result, any lack of competition or exclusive use of the "classic simple shaker" bottle,

8   lid, or agitator designs by BlenderBottle during the patent periods cannot be attributed to the de-

9   velopment of secondary meaning. Instead, it is merely a consequence of the patent monopoly,

10  which temporarily excludes others from making, using, or selling the patented design. In other

11  words, BlenderBottle was only able to exclude competition to allegedly develop acquire distinc-

12  tiveness due to its patents protecting identical designs to those claimed by its Asserted Trade

13  Dresses thereby excluding all competition from the market.

14  **B. BlenderBottle is Breaching its Quid Pro Quo with the Public, and Robbing the Public**
15  **Domain by Manipulating the Patent System to Purchase Federal Trade Dresses to Effec-**
16  **tively Secure Perpetual Patents.**

17        Even more egregious here, BlenderBottle is attempting to rob the public domain of the

18  designs it agreed to disclose in exchange for the *temporary* monopoly granted to BlenderBottle

19  for its many patents covering virtually identical designs for "classic simple shaker" bottles and

20  lids. *See Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118-21 (1938) (holding the pillow shape

21  of shredded wheat could not be protected as a trade symbol after the patents that had covered it

22  had expired); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165 (1989) (empha-

23  sizing the right to freely copy a configuration at the expiration of a patent or copyright, or a con-

24  figuration never protected by patent or copyright). By asserting trade dress rights in the exact

25  same designs disclosed by its patents, BlenderBottle is essentially seeking to extend its patent

26  monopoly and prevent competitors from using the design even after the patents have expired.

27  This would undermine the bargain struck by the patent system, which grants a temporary monop-

28  oly in exchange for public disclosure and the right to freely copy the invention once the patent

29  expires.[10] BlenderBottle cannot hack the patent system to misuse the trade dress system to effec-

---

[10] The patent system is premised on a *quid pro quo* wherein the inventor agrees to disclose their invention to the

1   tively pay to grant itself a lifetime monopoly on the entire category of "classic simple shaker"

2   bottles—this is far too good to be true. Otherwise, the public is forced to incur the unaffordable

3   expense of canceling a trademark registration to access designs granted to the public domain un-

4   der fundamental patent law.

5          Accordingly, because BlenderBottle's alleged acquired distinctiveness was not acquired

6   in a meaningful manner that promotes competition and because allowing trade dress protection

7   for these designs after the expiration of the patents would be inconsistent with the principles of

8   patent law and the right to freely copy previously patented designs, BlenderBottle's trade dress

9   infringement claims should be dismissed for failure to allege any facts showing it developed sec-

10  ondary meaning in the Asserted Trade Dresses.

11  **V.     EACH OF BLENDERBOTTLE'S ALLEGATIONS FOR ACQUIRED DISTINCTIVENESS**
12            **CONCERN ITS UNREGISTERED "BOTTLE" TRADE DRESS, NOT ITS 019 "LID" TRADE**
13            **DRESS, ITS 626 "AGITATOR" TRADE DRESS, OR ITS UNREGISTERED LABEL TRADE**
14            **DRESS.**

15         Even if BlenderBottle's allegations of developing acquired distinctiveness were legiti-

16  mately developed rather than purchased through design patent protection, almost every single

17  one of BlenderBottle's allegations regarding acquired distinctiveness are for the Unregistered

18  Bottle Trade Dress.[11] BlenderBottle therefore failed to offer sufficient facts to show it developed

19  acquired distinctiveness for its 019 Lid Trade Dress or its Unregistered Label Trade Dress and

20  the claims must be dismissed.

21         And, what's more, the allegations the Complaint does contain are only conclusory asser-

22  tions that the designs have acquired secondary meaning, without any supporting facts about

---

public in exchange for a temporary monopoly on the invention. *See Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 183-84 (1896) (finding "on the termination of the patent there passes to the public the right to make the machine in the form in which it was constructed during the patent"). "It equally follows from the cessation of the monopoly and the falling of the patented device into the domain of things public that along with the public ownership of the device there must also necessarily pass to the public the generic designation of the thing which has arisen during the monopoly." *Kellogg*, 305 U.S. at 118 (quoting *Singer*, 163 U.S. at 183 ). "To say otherwise would be to hold that, although the public had acquired the device covered by the patent, yet the owner of the patent or the manufacturer of the patented thing had retained the designated name which was essentially necessary to vest the public with the full enjoyment of that which had become theirs by the disappearance of the monopoly." *Id.* (internal quotations omitted).

[11] (*See, e.g.*, Ex. 9, BlenderBottle's Response to Office Action for U.S. Application Serial No. 90301455 (HC0170962-HC0171062) (filed 21 September 2021)).

1   length of use, sales success, advertising expenditures, or consumer studies demonstrating that the

2   specific claimed features have become source identifiers in the minds of consumers. *See* Compl.,

3   ¶¶ 20-22. For example, BlenderBottle claims that "the Bottle Trade Dress serves to identify and

4   distinguish BlenderBottle®'s products from those of others," that "BlenderBottle® has strong

5   common law rights in the Bottle Trade Dress," and that "[t]he Bottle Trade Dress has acquired

6   secondary meaning," that "[c]ustomers readily recognize the Bottle Trade Dress as a distinctive

7   designation of the origin of BlenderBottle®'s products," that "[t]he public recognizes that prod-

8   ucts bearing the Bottle Trade Dress constitute high-quality products that conform to the specifi-

9   cations created by BlenderBottle®," that "as a result of BlenderBottle®'s widespread use and

10  display of the Bottle Trade Dress, the Bottle Trade Dress has established strong secondary mean-

11  ing and extensive goodwill," and that "[t]he Bottle Trade Dress has great value as a specific

12  identifier of BlenderBottle®'s products." Compl., ¶¶ 20-22.

13  **VI.   BLENDERBOTTLE'S CALIFORNIA UNFAIR COMPETITION CLAIMS FAIL FOR THE SAME**
14  **REASONS AS ITS LANHAM ACT CLAIMS.**

15          BlenderBottle's California unfair competition claims based on the same alleged conduct

16  underlying its Lanham Act claims should be dismissed for the same reasons as BlenderBottle's

17  federal claims.[12] BlenderBottle also failed to allege sufficient facts to satisfy the heightened el-

18  ements of California unfair competition.[13] BlenderBottle's conclusory and formulaic allegations

19  fail to plausibly plead the specific allegations necessary to support a claim for California unfair

20  competition. The Complaint simply parrots the legal standard by alleging, in wholly conclusory

21  fashion, that Hydra Cup's unspecified "acts of trade dress infringement, false designation of ori-

22  gin, passing off, and federal unfair competition . . . constitute unfair competition under California

23  common law." *See, e.g.*, Compl., ¶ 114.[14] The Complaint does not allege that Hydra Cup "passed

---

[12] *See Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 5910817, at *11 (N.D. Cal. Oct. 11, 2016) (finding that where "plaintiff's new facts are not sufficient to allege a claim based on common law trademark infringement and Lanham Act unfair competition, Plaintiff's new facts are also insufficient to state a claim for state statutory and common law unfair competition.)

[13] Although California unfair competition is broadly described as encompassing "any unlawful, unfair or fraudulent business act or practice," courts have recognized more specific elements that a plaintiff must establish. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1170-73, 1174 fn.4 (2003) (quoting Cal. Bus. & Prof. Code § 17200). The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another. *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1263 (1992).

[14] "Where a plaintiff claiming common law unfair competition fails to show that the defendants 'passed off their goods as those of another' or exploited trade names or trade marks, the plaintiff 'has not stated a common law unfair

1  off" its products as those of BlenderBottle or otherwise misrepresented or concealed the source

2  of its products, removed BlenderBottle labeling, or engaged in any other conduct amounting to

3  "palming off." To the contrary, as discussed above, the images in the Complaint show that Hydra

4  Cup prominently displays its own distinct brand name on its bottles and labels, negating any

5  plausible inference of "passing off." *See* Compl., ¶¶ 49, 52. Accordingly, BlenderBottle's Cali-

6  fornia unfair competition claims should be dismissed because they are premised on the same

7  conduct as BlenderBottle's deficient Lanham Act claims, and BlenderBottle failed to allege facts

8  to plausibly satisfy the heightened elements of "passing off," prior rights, and confusion required

9  for its California unfair competition claims. BlenderBottle's formulaic recitation of legal ele-

10  ments, without factual support, fails to state claims for California unfair competition upon which

11  relief can be granted.

12  **VII.**  **BLENDERBOTTLE FAILED TO OFFER ANY FACTS SHOWING MR. RAYMUS ACTED
13         OUTSIDE HIS CAPACITY AS MANAGING MEMBER OF THE LLC AND FAILED TO OFFER
14         ANY FACTS SHOWING BAD FAITH OR MISCONDUCT BY MR. RAYMUS.**

15       BlenderBottle's allegations that Mr. Raymus is personally liable for the alleged acts of

16  Defendant Hydra Cup are based solely on a mischaracterization of Mr. Raymus's deposition tes-

17  timony regarding the separate nature of his personal finances and Hydra Cup's finances.

18  BlenderBottle must pierce the corporate veil to hold Mr. Raymus individually liable, which re-

19  quires alleging specific facts showing that Mr. Raymus used the corporate form to perpetrate a

20  fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose. The

21  Complaint does not meet this high standard.

22       With limited exceptions, the debts, obligations, and liabilities do not become those of a

23  member or manager due to the member acting as a member or the manager acting as a manager;

24  it is a general principle of corporate law that a corporation is a separate legal entity from its own-

25  ers, officers, and directors. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). This corpo-

26  rate form shields individual owners and managers from personal liability for the corporation's

27  debts and obligations. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Only in rare circum-

competition claim.'" *Golden Eye Media*, 525 F. Supp. 3d at 1256 (quoting *Sybersound Recs., Inc. v. UAV Corp.*, 517
F.3d 1137, 1152-53 (9th Cir. 2008)).

1    stances will a court disregard the corporate form to impose liability on individual shareholders or

2    officers. *Id*. at 61-62. The party seeking to pierce the veil bears a heavy burden to allege specific

3    facts showing that (1) there is such a unity of interest and ownership between the corporation and

4    the individual that the separate personalities no longer exist, and (2) failure to disregard the cor-

5    porate form would result in fraud or injustice. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th

6    Cir. 2001); *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985). "Factors that courts have

7    found militated towards finding alter ego liability include commingling of assets, treatment of

8    the assets of the corporation as the individual's own, failure to maintain corporate records, em-

9    ployment of the same employees and attorneys, undercapitalization, and use of the corporation as

10   a shell for the individual." *Ontiveros v. Zamora*, CIV S–08–567LKK/DAD, 2009 WL 425962, at

11   *7 (E.D.Cal. Feb. 20, 2009) (citing *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App.

12   2d 825, 838–40 (1st Dist. 1962)); s*ee also Doe*, 248 F.3d at 926.

13       The only allegations pertaining to Mr. Raymus individually are that he is the majority

14   owner, CEO, and sole full-time employee of Hydra Cup, he allegedly "commingled funds" be-

15   tween his personal accounts and Hydra Cup's accounts, and he was allegedly responsible for cer-

16   tain design decisions and product selection. Compl., ¶¶ 4, 57-59. These thin allegations fall far

17   short of establishing the level of unity of interest and inequitable result required to disregard the

18   corporate form. The mere fact that Mr. Raymus is Hydra Cup's owner, officer, and only em-

19   ployee does not justify piercing the veil. *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*,

20   394 F.3d 1143, 1149 (9th Cir. 2004) (finding the fact that a defendant is a sole shareholder, with-

21   out more, is not a sufficient reason to pierce the corporate veil."). In closely-held corpora-

22   tions,"the interests of the corporation and its sole shareholder are united." *SEC v. Hickey*, 322

23   F.3d 1123, 1130 (9th Cir. 2003). But "that alone does not alter the fact that the corporation and

24   its sole shareholder are still separate legal entities." *Id*. As owner and CEO, Mr. Raymus is ex-

25   pected to direct and control Hydra Cup's activities. This does not erase the legal distinction be-

26   tween the company and the individual.

27       This means the sole basis for BlenderBottle's claims against Mr. Raymus appears to be

28   his deposition testimony regarding alleged "commingling" of funds. But a careful review of

29   Mr. Raymus's testimony reveals that BlenderBottle has mischaracterized and taken his state-

1  ments out of context. (Ex. 3, Transcript of Deposition of Thomas Raymus (13 Dec. 2023)).

2  While Mr. Raymus did initially state "yes" when asked if he had ever commingled funds be-

3  tween his personal account and Hydra Cup's business account, he immediately clarified and ex-

4  plained that he misunderstood the question. (*Id*. at 32:20-34:2.). Mr. Raymus testified that he was

5  "not exactly sure what [BlenderBottle's counsel] was asking" and, scared to potentially lie under

6  oath, he thought it best to answer affirmatively and then explain what he meant. (*Id*.). Mr. Ray-

7  mus elaborated that both his personal bank account and Hydra Cup's bank account are main-

8  tained at the same bank and accessible through the same online banking portal, though the ac-

9  counts themselves are separate. (*Id*. at 32:17-20; 33:15-19.). Mr. Raymus was concerned that this

10  online banking arrangement where the separate accounts were viewable together "may have

11  meant commingled funds or something." (*Id*. at 33:15-19.). But Mr. Raymus made clear that he

12  was "not actually aware of any actual instances were he had commingled personal funds with

13  Hydra Cup's finance[s] or otherwise mixed his personal finances with Hydra Cup's finances."

14  (*Id*. at 33:3-8; 34:1-11.). Mr. Raymus unequivocally denied ever "intentionally insert[ing] any

15  more funds into Hydra Cup" beyond his initial $100,000 investment when the company was

16  founded, explaining that any other transfers between the accounts would have been accidental,

17  such as if a bank teller asked which account to deposit a check into. (*Id*. at 34:1-11). Mr. Raymus

18  further testified that he "would[n't] have [his] personal account pay Hydra Cup stuff" and that

19  any accidental transfers would "maybe be the opposite of that." (*Id*. at 35:4-8).

20      Using the same online bank portal to access a personal and business account is not the

21  "commingling" necessary to disregard the protections of a limited liability company. Commin-

22  gling funds means using one entity's funds or assets to pay for or guaranty another component

23  entity's obligations—not using the same online bank portal for to access multiple accounts.

24  Mr. Raymus was simply trying to remain honest under oath and thought that by using the same

25  online bank portal for both his business and personal accounts may qualify as "commingling

26  funds," so he answered affirmatively. But this was clearly not the "commingling funds" neces-

27  sary to disregard corporate protection. The other facts elicited in Mr. Raymus's deposition testi-

28  mony further undermine any attempt to pierce the corporate veil: Mr. Raymus and Hydra Cup

29  maintain separate bank accounts. (*Id*. at 32:17-20). Hydra Cup pays Mr. Raymus a salary of

1   $75,000 per year, and Mr. Raymus has not received any distribution of profits from Hydra Cup

2   outside of this salary. (*Id*. at 35:19-22). Hydra Cup has never received a loan from anyone other

3   than Mr. Raymus's initial investment. (*Id*. at 36:1-15). No other companies are related to Hydra

4   Cup. Hydra Cup does not have parent companies or subsidiaries. (*Id*. at 36:1-15).

5        These undisputed facts demonstrate that Mr. Raymus and Hydra Cup maintain separate

6   identities and that there has been no commingling of funds or unauthorized diversion of corpo-

7   rate assets that would justify piercing the corporate veil. Mr. Raymus's deposition testimony,

8   when viewed in context, does not support BlenderBottle's allegations of commingling. At most,

9   Mr. Raymus acknowledged the *possibility* that on a few occasions, funds may have been acci-

10   dentally deposited into the wrong account by a bank teller due to the two accounts being view-

11   able on the same online banking portal. But Mr. Raymus denied ever intentionally commingling

12   funds or diverting Hydra Cup's funds for personal use. BlenderBottle's conclusory allegations of

13   commingled funds, lacking any specifics, are insufficient to establish the requisite unity of inter-

14   est. The Complaint provides no details about the alleged commingling, such as when it occurred,

15   how often, in what amounts, and for what purposes. Courts have dismissed veil-piercing claims

16   containing similarly vague allegations of commingling. *Hoang v. Vinh Phat Supermarket, Inc.*,

17   No. 2:13-cv-00725-WBS, 2013 WL 4095042, at *5 (E.D. Cal. Aug. 13, 2013) (dismissing claim

18   based on "bare assertion that [defendant] 'co-mingled personal and corporate funds'").

19        What's more, BlenderBottle failed to plead any facts showing that respecting the corpo-

20   rate form would sanction a fraud or promote injustice. The Complaint contains no allegations

21   that Mr. Raymus misused Hydra Cup to perpetrate a fraud or mislead creditors. BlenderBottle

22   merely alleges that Hydra Cup infringed its patent and trademark rights. Something more is

23   needed, such as abuse of the corporate form to shield wrongdoing. Without specific, non-conclu-

24   sory factual allegations demonstrating a unity of interest between Mr. Raymus and Hydra Cup

25   and an inequitable result from recognizing the corporate form, BlenderBottle cannot state a plau-

26   sible claim to pierce the veil. The claims against Mr. Raymus individually should therefore be

27   dismissed under Rule 12(b)(6).

1 **CONCLUSION**

2       For the foregoing reasons, Defendants Hydra Cup and Mr. Raymus respectfully requests

3 the Court dismiss Plaintiff BlenderBottle's claims as follows:

4     (i)   BlenderBottle's claims for patent infringement of the D551 "Lid" Patent should be
5         dismissed because Hydra Cup's Accused Shakers comprising bottles and lids to-
6         gether, including the Shaker with the HC OG Carry Loop Lid—are immediately dis-
7         tinguishable and patently dissimilar from the standalone lid design disclosed by
8         BlenderBottle's D551 "Lid" Patent;

9     (ii)  BlenderBottle's claims for patent infringement of the D798 "Container" Patent
10         should be dismissed because Hydra Cup's TS1352 OG Storage Shaker—bottle and
11         lid combined—is instantly distinguishable and patently dissimilar from the stand-
12         alone container design claimed by Hydra Cup's D798 "Container" Patent;

13    (iii)  BlenderBottle's claims for trade dress infringement of the 019 "Lid" Trade Dress
14         should be dismissed because Hydra Cup's Accused Shakers comprising bottles and
15         lids, including the Shaker with the HC OG Carry Loop Lid—are immediately distin-
16         guishable from, patently dissimilar from, and not likely to be confused with the
17         standalone lid design disclosed by BlenderBottle's 019 "Lid" Trade Dress;

18     (iv)  BlenderBottle's claim for patent infringement of the expired D235 "Bottle" Patent
19         by the TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038
20         Jumbo Shaker, the GOAT Shaker, and the HC OG Carry Loop Lid should be dis-
21         missed, because BlenderBottle granted the D235 "Bottle" Patent's claimed design to
22         the public domain in October 2019 and failed to allege facts showing Hydra Cup
23         sold the TS1327 OG Mini Shaker, the TS1352 OG Storage Shaker, the TS1038
24         Jumbo Shaker, the GOAT Shaker, or the HC OG Carry Loop Lid until after the
25         D235 Patent expired and entered the public domain, meaning infringement was not
26         possible even if everything BlenderBottle says is true;

27     (v)  BlenderBottle failed to allege facts showing acquired distinctiveness for the As-
28         serted Trade Dresses because (a) each of BlenderBottle's allegations of acquired dis-
29         tinctiveness specifically apply to the Unregistered Bottle Trade Dress, completely
30         disregarding the the 019 "Lid" Trade Dress, the 626 "Agitator" Trade Dress, or the
31         Unregistered "Label" Trade Dress aside from conclusory allegations; (b) Blender-
32         Bottle allegations of acquired distinctiveness are founded upon meaningless ac-
33         quired distinctiveness only developed while identical designs were under patent pro-
34         tections; (c) BlenderBottle granted the design claimed by the Unregistered Bottle
35         Trade Dress to the public domain in 2019 when the D235 Patent expired.

36     (vi)  BlenderBottle's California unfair competition claims fail for the same reasons as its
37         Lanham Act claims;

38    (vii) BlenderBottle's mischaracterized allegations against Mr. Raymus in his individual
39         capacity are not sufficient to disregard the protection of a limited liability company.

40

41 **Dated**: 10 June 2024

42                                 Respectfully submitted,

43                                 By: /s/Meghan Pratschler/
44                                 Meghan Pratschler
45                                 CA Bar No.: 324970
46                                 Meghan the Attorney, LLP
47                                 95 3rd St. 2nd Floor
48                                 San Francisco, CA 94103-3103

1                                                          meghan@meghantheattorney.com

2                                                                (415). 335-9226

3                                                   -and-

4                                               By: /s/Casey Scott McKay/

5                                                 Casey Scott McKay

6                                               TN Bar No.: 034028

7                                                   MC Law, PLLC

8                                           1441 U St. NW, Suite 102

9                                         Washington, DC, D.C. 20009

10                                               202.743.1972

11                                               casey@mclaw.io

12 *Attorneys for Defendants TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus, an Individ-*

13 *ual.*

1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF notifi-

cation service, which sent notification of such filing to all pro se parties and counsel of record on

10 June 2024.

KNOBBE MARTENS OLSON & BEAR
Sean Murray (SBN 213,655). sean.murray@knobbe.com Ali S. Razai (SBN 246,922).
ali.razai@knobbe.com
Jacob R. Rosenbaum (SBN 313,190). jacob.rosenbaum@knobbe.com
Christian D. Boettcher (SBN 342,950). christian.boettcher@knobbe.com

KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949). 760-0404
Facsimile: (949). 760-9502

By: /s/Meghan Pratschler/
Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St. 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415). 335-9226

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC, D.C. 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendants TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus, an Individ-
ual.*

1

**EXHIBITS**

2   Exhibit 1, Declaration of Casey Scott McKay

3   Exhibit 2, Declaration of Thomas Raymus

4   Exhibit 3, Transcript of Deposition of Thomas Raymus (13 December 2023)

5   Exhibit 4, U.S. Patent No. D510,235 (filed 09 Sept. 2003)

6   Exhibit 5, U.S. Patent No. D696,551 (filed 07 Sept. 2012)

7   Exhibit 6, U.S. Patent No. D697,798 (filed 06 June 2013)

8   Exhibit 7, U.S. Registration No. 6,800,019 (the "019 Lid Trade Dress")

9   Exhibit 8, U.S. Registration No. 6,245,626 (the "626 Agitator Trade Dress")

10  Exhibit 9, BlenderBottle's Response to Office Action for U.S. Application Serial No.
11  90301455 (HC0170962-HC0171062) (filed 21 September 2021)

12  Exhibit 10, Cease and Desist Letter from BlenderBottle to Hydra Cup (21 January 2021).

13  Exhibit 11, BlenderBottle Private Label Licensing Program (Screenshots from Internet
14  Archive of BlenderBottle's websites over time) (2011-2014)

15  Exhibit 12, Amazon Screenshot Showing Hydra Cup's Shakers all Sold in Packs of Mul-
16  tiple Shakers

17  Exhibit 13, Screenshot of "Hydra Cup OG [6 Pack] 28 oz Shaker Bottles" Amazon Prod-
18  uct Page

19  Exhibit 14, Purchase Order and Export Records for Laltec International from Tianqi (14
20  December 2012)
21