Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415) 335-9226

-and-

Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendants TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus*

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

**TROVE BRANDS, LLC D/B/A THE BLENDERBOTTLE COMPANY,**

        *Plaintiff,*

                                         **Case No: 2:22-cv-02222-TLN-CKD,**

        *v.*

**TRRS MAGNATE LLC D/B/A HYDRA CUP AND THOMAS RAYMUS, AN INDIVIDUAL,**

        *Defendants.*

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

**HYDRA CUP'S STATUS REPORT**

       Defendants TRRS Magnate LLC d/b/a Hydra Cup and Thomas Raymus (collectively "Hydra Cup"), by and through counsel, in its case against Plaintiff Trove Brands, LLC d/b/a the BlenderBottle Company ("BlenderBottle"), respectfully provide this Court with a status report regarding Hydra Cup's intention to move for leave to amend the scheduling order and pleadings and how that will affect related pending and anticipated motions.

**HYDRA CUP'S SUMMARY OF STATUS**

1   There are currently four pending motions and three anticipated motions concerning Hydra

2   Cup's proposed amended pleadings. Granting Hydra Cup's soon-to-be-filed Motion for Leave to

3   Amend the Scheduling Order and Pleadings presents the optimal path of least resistance, allowing

4   the Court to rule on or moot six pending and anticipated motions with one order, leaving one

5   remaining motion and BlenderBottle's expected response to Hydra Cup's amended pleadings.

| Four Pending Motions | Three Anticipated Motions | Six Potentially Mooted Motions (via Anticipated Motion for Leave to Amend) | Two Remaining Motions (via Anticipated Motion for Leave to Amend) |
|---|---|---|---|
| Hydra Cup's Motion for Reconsideration of BlenderBottle's *Ex Parte* Application Striking Hydra Cup's Pleadings (ECF No. 124) | Hydra Cup's Motion for Leave to Amend the Scheduling Order and Pleadings (to be filed within 14 days of this Status Report) | Hydra Cup's Motion for Reconsideration (ECF No. 124) (but Hydra Cup should retain its right to amend as a matter of course) | Hydra Cup's anticipated Motion for Sanctions for BlenderBottle's August 1st Non-Compliant Motion for Sanctions (to be filed Feb. 17th) |
| Hydra Cup's July 30th Motion for Leave to Amend Pleadings (ECF No. 129) | Hydra Cup's Motion for Sanctions for BlenderBottle's August 1st Improper Motion for Sanctions (to be filed on February 13th) | Hydra Cup's July 30th Motion for Leave to Amend (ECF No. 129) | BlenderBottle's Expected Response to Hydra Cup's Anticipated Third Amended Answer |
| BlenderBottle's Motion to Dismiss and Strike the Second Amended Answer (ECF No. 121) | Hydra Cup's Motion to Exceed Discovery Limitations (to be filed when discovery continues, if necessary depending on whether the scope of "follow-up" discovery includes BlenderBottle's massive untimely production on the *final* day of discovery). *See infra* note 18 and accompanying text. | BlenderBottle's Motion to Dismiss and Strike the Second Amended Answer (ECF No. 121) | |
| BlenderBottle's Motion for Sanctions for the Second Amended Answer (ECF No. 131) | | BlenderBottle's Motion for Sanctions for the Second Amended Answer (ECF No. 131) (mooted, but still sanctionable) | |
| | | Hydra Cup's anticipated Motion for Leave to Amend the Scheduling Order and Pleadings | |
| | | Hydra Cup's anticipated Motion to Exceed Discovery Limitations (likely mooted as "follow-up" discovery) | |

The core of this dispute regarding Hydra Cup's requests to amend and extend distills to three essential points:

- First, BlenderBottle's eleventh-hour production of over 21,000 files necessitates both amending pleadings and extending discovery to account for substantial newly revealed information and missing information that fundamentally impacts multiple claims and defenses.

- Second, BlenderBottle systematically obstructed Hydra Cup's good-faith attempts to amend its pleadings to withdraw and correct challenged claims while simultaneously weaponizing the *ex parte* process and Rule 11 to attempt to intimidate and force abandonment of legitimate claims through aggressive threats and improper tactical motion practice.

- Third, BlenderBottle's procedural maneuvering and discovery misconduct have created artificial complexity that can be resolved through straightforward application of the Federal Rules' liberal amendment standards.

With these points in mind, the Court has several viable paths for allowing amendment, each independently sufficient but collectively demonstrating the inevitability of amendment under any analysis. The most efficient path—and the one best serving judicial economy—is granting leave to amend and extend via Hydra Cup's comprehensive, up-to-date, soon-to-be-filed Motion for Leave to Amend the Scheduling Order and Pleadings. Hydra Cup's updated Motion for Leave is necessary due to BlenderBottle's production of over 21,000 files[1] in the final weeks of discovery that fundamentally altered the informational landscape of this litigation independently necessitating updating Hydra Cup's pleadings and discovery as well as a modest extension of discovery to accommodate the large amount of new information and newly identified missing information. This approach would immediately resolve six pending and anticipated filings through a single order while minimizing future disputes and delays and allowing the case to proceed toward substantive resolution.[2]

---

[1] For clarity, Hydra Cup uses the term "file" to refer to a single pdf or native file, meaning this number does not include the .TXT or .TIFF files BlenderBottle produced that are simply duplicates of the 21,000+ pdf files.

[2]

**HYDRA CUP'S STATED STATUS REGARDING ANTICIPATED REQUESTED RELIEF**

Hydra Cup anticipates requesting comprehensive relief through its upcoming Motion to Amend the Scheduling Order and Pleadings, seeking the following:

(I)   Leave to amend its pleadings to (i) withdraw 21 specifically identified counterclaims and defenses that are no longer worth pursuing given evolving evidence, and (ii) add claims for trade dress infringement as well as for damages under 15 U.S.C. § 1120 and tortious interference stemming from BlenderBottle's assertion of fraudulently procured IP rights based on new information learned from BlenderBottle's massive untimely production on the final day of discovery.

(II)   Leave to amend the Scheduling Order to extend the remaining 60-day discovery period by an additional 60 days (120 days total)—an extension necessary to accommodate (i) completing Hydra Cup's five already-permitted depositions that BlenderBottle previously attempted to block, (ii) completing already-permitted follow-up discovery on information learned at the upcoming depositions and on BlenderBottle's massive late production of over 21,000 files; (iii) compliance with procedural requirements that add up to more than 60 days, and (iv) reasonable scheduling flexibility.

(III) Clarification that the already-permitted remaining discovery encompasses (i) all information contained within or referenced by BlenderBottle's end-of-discovery document production, (ii) missing information specifically identified through review of those files, and (iii) information obtained through upcoming depositions and related follow-up.

(IV) Leave to file its Amended Motion to Compel as part of the already permitted "follow-up" discovery—guaranteed to be needed by the large amount of newly identified missing information revealed by BlenderBottle's large untimely production on the *final* day of discovery—within either (i) 60 days after the final deposition, or, if post-deposition written discovery is necessary, (ii) 30 days after BlenderBottle's responses to post-deposition discovery.

(V)   An order addressing expert discovery, ruling the parties' incomplete first attempt at expert discovery is (i) null and void due to BlenderBottle's discovery obstruction, and (ii) to proceed as normal after proper completion of fact discovery, not limited by any prior activity or ruling.

**HYDRA CUP'S STATEMENT OF BACKGROUND FACTS RELEVANT TO CASE STATUS**

**A.    BlenderBottle's Amended Complaint, Hydra Cup's Initial Response, and BlenderBottle's Immediate Threats.**

1.    After BlenderBottle improperly blocked Hydra Cup's depositions and refused to stipulate to an extension of discovery back in February 2024 near the end of discovery, Hydra Cup

moved to extend discovery by 60 days to conduct its five depositions and any necessary

follow-up discovery. Ex. 1, McKay Decl., 8-10.[3]

2.  Also in February 2024, BlenderBottle produced 16,139 files only a few weeks before the

discovery deadline. *Id*. Then, on the *final* day of discovery, BlenderBottle produced 4,923

"HIGHLY CONFIDENTIAL" files and provided answers to key interrogatories—crucial

information responsive to written discovery requests originally served on BlenderBottle in

July 2023. *Id*. BlenderBottle's untimely production after Hydra Cup moved to compel and

extend discovery revealed the existence of substantial additional responsive information and

witnesses that BlenderBottle improperly withheld until the end of discovery. *Id*.

3.  On 10 May 2024, BlenderBottle amended its pleadings to add Defendant Raymus in his

individual capacity.[4] Hydra Cup initially responded on May 31st; however, Hydra Cup's

initial response was incomplete due to last-minute technical complications and

simultaneously preparing for five depositions, briefing two motions to compels, drafting and

responding to pleadings, and preparing for mediation. Ex. 1, McKay Decl., 4.[5] The very next

business day, on June 3rd, BlenderBottle's counsel, Attorney Razai, sent an unsolicited email

threatening Rule 11 sanctions. *Id*. at 4 (citing Ex. 2, Pl.'s Razai-McKay Email Re. Sanctions

(3 June 2024)). When Hydra Cup's counsel, Attorney McKay, did not immediately respond,

Attorney Razai escalated with an unexpected mildly aggressive phone call. *Id*. Rather than

engaging in substantive legal discussion, Attorney Razai mentioned Hydra Cup's Motion to

Dismiss incorrectly quoted a case Attorney Razai was on and then made a cursory reference

to *MedImmune* arguing all Hydra Cup's new counterclaims were categorically frivolous

because BlenderBottle did not assert them in this case before turning to personal remarks

about his concern for Attorney McKay. *Id*. Attorney McKay expressed appreciation for the

---

[3] *See* Defs. Mo. to Ext., ECF No. 66 (12 Feb. 2024).

[4] Pl.'s Sec. Am. Compl., ECF No. 102 (10 May 2024).

[5] *See* Stip. to Mod. Sched. for Mediation, ECF No. 103 (20 May 2024); Defs.' Mo. to Dismiss, ECF No. 105 (withdrawn by ECF No. 108 on 4 June 2024); Defs.' Sec. Am. Answ. (withdrawn on by ECF No. 106 on 31 May 2025).

1   concern, and informed he would research his options and provide an update concerning

2   Hydra Cup's next steps within a few days. *Id.*

3   **B.**   **The Parties' Mutually Agreed to Extend the Deadlines for Both Parties to Respond to**
4   **Pleadings; Therefore, Hydra Cup Retained its Right to Amend Once as a Matter of**
5   **Course, and BlenderBottle's *Ex Parte* Application to Strike Hydra Cup's Pleadings was**
6   **Improper.**

7   4.   Hours after Attorney Razai's threatening call, BlenderBottle's co-counsel, Attorney

8   Rosenbaum, contacted Attorney McKay requesting an extension of time for BlenderBottle to

9   respond to Hydra Cup's filings. *Id.* at 4-5.[6] Because Hydra Cup also needed a modest

10   extension of time to respond to pleadings, the parties reached a mutual agreement extending

11   both parties' deadlines to respond to pleadings. *See id.* Within days, the Court approved the

12   parties' Joint Motion to Extend Deadlines to Respond to Pleadings, and Hydra Cup's

13   incomplete filings were withdrawn from the docket to be refiled within the next week. *Id.* at

14   5-6.[7] Significantly, with mediation in two days and knowing it needed most of the short

15   extension to correct its Motion to Dismiss, Hydra Cup immediately informed BlenderBottle

16   of its intention to exercise its right to amend once as a matter of course to fix any issues in its

17   pleadings.[8] BlenderBottle's silence in response to this notice reasonably suggested its

18   acknowledgment of Hydra Cup's right to amend as a matter of course. *See id.* Or so Hydra

19   Cup thought.

20   **C.**   **BlenderBottle Improperly Blocked Hydra Cup's Attempt to Amend, Served its Motion**
21   **for Sanctions, and, Worst of All, Obstructed Hydra Cup's Attempts to Withdraw and**
22   **Correct Challenged Claims During Rule 11' *Mandatory* Safe Harbor Period.**

23   5.   Following the parties' mediation on June 7th and the Court's June 21st order staying

24   discovery, Hydra Cup attempted to exercise its right to amend as a matter of course on July

25   1st by filing its Third Amended Answer to fix various issues in its hastily filed Second

26   Amended Answer. *Id.* at 5-6. BlenderBottle's response was swift and aggressive—Attorney

---

[6] *See* also Exs. 3-5, Emails Re. Parties' Mutual Consent to Ext. Time to Resp. to Pleadings (3 June 2024) (showing that BlenderBottle initially requested an extension of time, which resulted in BlenderBottle consenting to a mutual stipulation for both parties to extend their deadlines to respond to pleadings).

[7] *See id*; *see also* Ct.'s Or. Granting Joint Mo. to Ext. Resp. Time for Pleadings (ECF No. 109) and Withdrawing Defs.' May 31st Resp. (ECF Nos. 105 and 106), ECF No. 110 (5 Jun. 2024).

[8] *Id.* (citing Ex. 6, Defs.' Email Notice of Intent Am. as a Right (12 Jun. 2024)).

Razai immediately threatened sanctions at 11:52 p.m. right after Hydra Cup filed its pleadings. *Id*. at 6-7.[9]

6.   The next day, BlenderBottle filed an *Ex Parte* Application to Strike Hydra Cup's Third Amended Answer, which the Court granted based on BlenderBottle's material misrepresentation of the parties' earlier joint stipulation to extend the deadlines to respond to pleadings. *Id*. *See infra* note 14 and accompanying text.

7.   On July 10th, BlenderBottle served its Motion for Sanctions targeting Hydra Cup's Second Amended Answer, triggering the 21-day safe-harbor period during which Hydra Cup was permitted to withdraw or correct challenged claims to moot BlenderBottle's Motion for Sanctions. Ex. 1, McKay Decl., at 7.[10]

8.   Hydra Cup made multiple attempts to cure during this 21-day safe-harbor period. *Id*. at 7-8. On July 11th, Hydra Cup requested BlenderBottle's consent to amend its pleadings to withdraw and correct the claims and defenses challenged by BlenderBottle's Motion for Sanctions. *Id*. On July 17th, Hydra Cup provided a detailed summary of the withdrawals and corrections that it was making along with a draft of its proposed Third Amended Answer[11] that withdrew patent infringement counterclaims, declaratory judgment actions regarding secondary meaning for Related Trademarks, several affirmative defenses as well as consolidated and clarified remaining allegations, updated claims, and added supporting exhibits. *Id*.[12]

---

[9] *Id*. (citing Ex. 7, Pl.'s Razai-McKay Email Re. Defs.' Am. As Right (2 July 2024)).

[10] Ex. 9, Pl.'s Email Re. Mo. for Rule 11 Sanctions (10 July 2024).

[11] BlenderBottle argues there was no "red-lined" version, but Attorney McKay explained that he uses Vim text editor to write and wrangle data, and then uses a custom Bash script and Pandoc to covert documents to .docx/.odt/.pdf, so all changes were made in a simple Markdown (i.e., text with markdown) .md file. Ex. 1, McKay Decl.

[12] *See* Ex. 10, Defs.' Email Req. Pl.'s Consent to Am. Answer (11 Jul. 2024); Ex. 11, Defs.' Email Req. Stip. to Am. Answer with Draft Third Am. Answer (17 July 2024) (informing, *inter alia*, Hydra Cup "dropped the following counterclaims: patent infringement . . . [and] declaratory judgment actions for lack of secondary meaning.").

9.  BlenderBottle immediately rejected Hydra Cup's cure attempts, insisting on nothing less than complete withdrawal of all declaratory judgment counterclaims targeted at the Equivalent Patents. *Id.*[13]

10. When Hydra Cup filed its Motion for Reconsideration on July 17th exposing the material misrepresentations in BlenderBottle's improper *Ex Parte* Application,[14] Attorney Razai, again, immediately responded with more baseless threats of sanctions. *Id.*

**D.  On July 30th, Hydra Cup filed its Motion to Amend to Cure Challenged Claims; on August 1st, BlenderBottle Filed its Motion for Sanctions; on August 2nd, BlenderBottle Acknowledged Hydra Cup's Curing Attempts.**

11. Despite BlenderBottle's obstruction, Hydra Cup persisted in its attempts to cure challenged claims, filing a Motion to Amend on July 30th attempting to formally withdraw and correct challenged claims and defenses; two days later, on August 1st, BlenderBottle filed its Motion for Sanctions. *Id.* at 8.[15]

12. Only after filing its Motion for Sanctions did BlenderBottle finally acknowledge, on August 2nd, some of Hydra Cup's attempted withdrawals and corrections, *ostensibly* agreeing not to seek sanctions on certain withdrawn claims while ignoring other attempts to cure and maintaining its categorical position that all new counterclaims should be dropped. *Id.*[16] BlenderBottle further informed it was still proceeding with its Motion for Sanctions despite Hydra Cup's numerous attempts to withdraw and correct the challenged claims. *Id.*

---

[13] *See* Ex. 13, Pl.'s Email Rej. Def.'s (18 Jul. 2024) (rejecting Hydra Cup's attempts to withdraw and correct challenged claims and defenses, opining "[t]he proposed amended pleading does not address the majority of the issues identified . . . [and] it creates several new issues.").

[14] *See generally* Defs.' Mo. for Recons., ECF No. 124 (17 Jul. 2024) (describing how BlenderBottle omitted and misrepresented key facts and, to support those misrepresentations, presented its exhibits in an intentionally misleading sequence with misleading timestamps). Ct. Order Grant. Pl.'s *Ex Parte* App. to Strike (ECF No. 119) (striking Defs.' Third Am. Answ. (ECF No. 118)).

[15] Defs.' Mo. to Am., ECF No. 129 (30 Jul. 2024); Pl.'s Mo. for Sanctions, ECF No. 132 (1 Aug. 2024).

[16] *See also* Ex. 14, Pl.'s Email Post-Safe-Harbor Re. Defs.' Cure Attempts (2 Aug. 2024) (acknowledging Hydra Cup's attempts to withdraw the two patent infringement counterclaims during the safe harbor period, but informing BlenderBottle was still proceeding with its Motion for Sanctions as filed after Hydra Cup's cure attempts).

**E.    December 2024 - February 2025: The Revival of Hydra Cup's Efforts to Amend and Extend—Requested Stipulations, Meet and Confers, Notices of Intent, and Plans for Upcoming Motions.**

13.    Following the summer of pre-discovery motion practice, Hydra Cup's review of the 21,000+ files that BlenderBottle produced at the end of discovery, and thoroughly researching all related legal issues to iterate on its discovery and trial plan in light of the large amount of new information and newly identified missing information revealed in BlenderBottle's untimely production, on 3 December 2024, Hydra Cup requested BlenderBottle stipulate to the following: (i) clarifying the scope of "follow-up" discovery to attempt to mitigate further disputes and delays after discovery was restarted; (ii) allowing discovery necessitated by BlenderBottle's late production of 21,000+ files revealing a substantial amount of newly identified missing information; and (iii) extending discovery by 60 days to accommodate procedural requirements and Hydra Cup's updated motion to compel that was now guaranteed to be necessary based on the large amount of newly identified missing information revealed by BlenderBottle's large production on the *final* day of discovery. Ex. 15, Defs.' Req. Stips. (3 Dec. 2024).

14.    On 4 December 2024, BlenderBottle's rejected Hydra Cup's requested stipulations, stating "BlenderBottle does not agree to stipulate to Hydra Cup's request to re-open discovery" and opining Hydra Cup's proposed Motion to for Leave to Amend was premature. *Id*. On December 17th, Hydra Cup acknowledged BlenderBottle's concerns and agreed to defer certain motions pending the Court' rulings on dispositive motions. *See* Ex. 18, Defs.' Email Re. Stips. (17 Dec. 2024). Hydra Cup further informed that although it had thoroughly considered all of BlenderBottle's concerns, Hydra Cup would proceed with filing its Motion for Leave to Amend, as it is the most efficient path forward and is intended to prevent future disputes and delays by deciding these issues before discovery restarts. *Id*.

15.    On December 20th, Hydra Cup sent BlenderBottle a working draft version of Hydra Cup's proposed Motion for Leave to Modify and Amend and requested that BlenderBottle participate in a meet and confer to discuss the issues; BlenderBottle responded, agreeing to

meet and confer on December 30th. Exs. 19-20, Emails Re. Dec. 30th Meet and Confer (20 Dec. 2024).

16. Before the December 30th meet and confer, Hydra Cup requested BlenderBottle stipulate to Hydra Cup voluntarily withdrawing eleven counterclaims that Hydra Cup had either previously attempted to withdraw or no longer opined were worth pursuing based on evolving information. *See* Ex. 21, Defs.' Email Req. Stip. Re. Withdraw and Correct Challenged Claims (30 Dec. 2024).

17. On December 30th, the parties met and conferred to discuss Hydra Cup's requested stipulations and related issues. *See* Exs. 22-23, Emails Summarizing Dec. 30th Meet and Confer (30-31 Dec. 2024). During the December 30th meet and confer, BlenderBottle expressed that Hydra Cup's Motion for Leave to Amend is premature and too early to file while discovery is stayed pending the Court's ruling on the parties' dispositive motions, as it is unknown what claims will survive said dispositive motions and that it is generally improper to file a motion while so many other motions are pending before the court. *Id* Hydra Cup acknowledged BlenderBottle's concerns regarding portions of the proposed Motion for Leave to Amend that overlap with a "discovery motion" subject to L.R. 251's requirements, assured BlenderBottle that Hydra Cup would remove all requests to exceed discovery limitations, and confirmed Hydra Cup was only seeking leave to amend pleadings to withdraw and correct challenged claims and defenses and to modify the Scheduling Order to extend discovery by 60 days as well as to clarify that its anticipated amended motion to compel and BlenderBottle's untimely production on the final day of discovery are both included as part of already-permitted "follow-up" discovery. *Id*.[17]

18. BlenderBottle informed it would consider stipulating to Hydra Cup voluntarily withdrawing certain counterclaims and defenses if Hydra Cup agreed to pay for BlenderBottle's attorneys' cost in responding to said counterclaims. *Id*. Hydra Cup immediately rejected

---

[17] *See* Ct. Order Granting Parties Mos. to Ext. and Am., ECF No. 99, at note 2, 9:27-28 (3 May 2024) (stating "Defendant's extension is limited to taking depositions of Plaintiff's four witnesses and to conduct any follow-up discovery from these depositions.").

BlenderBottle's request as an absurd attempt at procedural extortion, reminding

BlenderBottle that it already attempted to drop these claims during the Rule 11 safe-harbor

period—thereby making BlenderBottle's non-compliant Motion for Sanctions sanctionable

—and that dropping claims that were no longer worth pursuing provided nothing but benefits

to all. *Id*. As the meet and confer conference concluded, BlenderBottle maintained its

position that it was not satisfied with the meet and confer. *Id*. To attempt to meet

BlenderBottle in the middle, Hydra Cup offered to discuss any specific provision or exhibit

that BlenderBottle had further concerns with, but BlenderBottle declined. *Id*.

19. On 7 January 2025, Attorney McKay informed he was splitting the previously proposed

Motion for Leave to Modify, Amend, Clarify, Exceed, and Extend Discovery into two

separate motions: (1) the soon-to-be-filed Motion for Leave to Amend the Scheduling Order

and Pleadings; and (2) its Motion to Exceed Discovery Limitations to requests additional

written discovery and third party depositions based on BlenderBottle's large untimely

production revealing newly identified missing information—a motion necessitated by the

current discovery limitations stemming from the Court's order limiting the already-permitted

"follow-up" discovery to information learned from Hydra Cup's upcoming depositions. *See*

Ex. 26, Defs.' Email Notice Re. Split. Upcoming Motions and Dropping Claims (7

Jan. 2025). As noted by BlenderBottle, without this clarification, Hydra Cup will not be

allowed to seek discovery on BlenderBottle's massive last-minute document dump without

first filing a Motion to Exceed Discovery Limitations when discovery restarts, which will

again break up discovery, lead to further disputes, and cause significant delay. *See id*.[18]

20. Also on 7 January 2025, Hydra Cup requested BlenderBottle stipulate to Hydra Cup

voluntarily dismissing eleven additional counterclaims that were no longer worth pursuing

and to adding counterclaims for common law trademark infringement as well as for damages

under 15 U.S. Code § 1120 and tortious interference for harm caused by BlenderBottle's

assertion of fraudulently procured trademarks and patents. *Id*. Hydra Cup also requested

---

[18] *See id.*

BlenderBottle participate in a meet and confer if BlenderBottle felt a second meet and confer was necessary to discuss Hydra Cup's additional requests to stipulate to add and drop counterclaims. *Id*. The next day, BlenderBottle responded that it was reviewing Hydra Cup's updated requests for stipulations to withdraw, correct, and add claims and would respond soon. *Id*.

21. On January 13th, Hydra Cup filed a Notice of Intent to Withdraw Certain Challenged Counterclaims and Defenses to provide the Court notice of its intent to dismiss the additional counterclaims and defenses that Hydra Cup is requesting to withdraw in its upcoming Motion for Leave to Amend the Scheduling Order and Pleadings. Defs.' Not. of Int. to Am., ECF No. 141 (13 Jan. 2025). In response, on January 17th, the Court issued an order expressing its concern to move forward efficiently considering the numerous pending motions related to Hydra Cup's attempts to amend its pleadings, suggesting the parties meet and confer to attempt to stipulate on the disputed issues, and instructing the parties to file a Joint Status Report informing the Court how granting Hydra Cup's soon-to-be-filed Motion for Leave to Amend the Scheduling Order and Pleadings will affect the related pending and anticipated motions and this case. Ct. Or., ECF No. 142 (17 Jan. 2025).

22. On January 23rd, Hydra Cup served its Motion for Sanctions on BlenderBottle, informing BlenderBottle that its August 1st Motion for Sanctions was not compliant with Rule 11's *mandatory* safe harbor provision because Hydra Cup attempted to withdraw and correct the very claims at issue in BlenderBottle's Motion for Sanctions, which BlenderBottle later partially acknowledged only after filing its Motion for Sanctions—a direct violation of Rule 11's safe-harbor provision. *See* Ex. 1, McKay Decl., at 8. Hydra Cup also requested a meet and confer to discuss the issues, but BlenderBottle has not yet responded. *Id*.

23. On January 28th, BlenderBottle emailed Hydra Cup informing "BlenderBottle will not stipulate to Defendants' filing of yet another amended pleading when so many motions regarding the pleadings are already pending." Ex. 27, Pl.'s Email Re. Potential Consent to

No-Delete Am. Answer (28 Jan. 2025). But then BlenderBottle changed things up, suggesting it may be interested in a modest stipulation, further informing "[h]owever, BlenderBottle would consider agreeing to permit Defendants to file a notice of withdrawal of specified counterclaims and affirmative defenses in its operative pleading." *Id*.

24. Hydra Cup responded that any withdrawals of claims or defenses must be made in a motion to amend, but expressed appreciation at BlenderBottle's progress towards helpful solutions and suggested the same result could be achieved with BlenderBottle's partial consent to Hydra Cup's request to amend its pleadings—consent BlenderBottle made clear it was *not* giving at the parties meet and confer, but also suggesting the idea may still be under consideration. Ex. 28, Defs.' Resp. Email to Pl.'s Possible Consent to No-Delete Am. Answer (28 Jan. 2025).

25. On January 28th, the parties met and conferred regarding Hydra Cup's requested stipulations and Hydra Cup's proposed amended pleadings. *See* Ex. 1, McKay Decl, at 14-16. BlenderBottle maintained that it would *not* consent to any of Hydra Cup's requested stipulations. *Id*. at 15-16. But BlenderBottle did suggest it would consider consenting to Hydra Cup submitting a "delete-only" Third Amended Answer, wherein BlenderBottle would consent to Hydra Cup submitting a Third Amended Answer with only the specified counterclaims and defenses withdrawn and with no additions or other changes to the pleadings. *Id*. Hydra Cup expressed appreciation at the suggested solution, but informed it was far short of what Hydra Cup needed. *Id*. Hydra Cup informed that it needed to make additional changes to its pleadings that would surpass BlenderBottle's "delete-only" restriction, so Hydra Cup would proceed with filing its Motion for Leave to Amend the Scheduling Order and Pleadings to seek relief from the Court. *Id*.

26. Hydra Cup requested BlenderBottle provide its final version of the Status Report by 8am on Friday morning and informed it would put together the final combined Status Report and send the final version to BlenderBottle for final approval before filing with the Court. *Id*.

27. After Hydra Cup sent BlenderBottle its working draft of its version of the status report on January 30th to facilitate discussions and to help BlenderBottle focus on the issues Hydra Cup was discussing in its version of the Status Report (which BlenderBottle requested in the meet and confer session), BlenderBottle informed it opined Hydra Cup's Status Report was a brief that focused on the "substance of the case," and BlenderBottle complained that Hydra Cup's *working draft* was over 20 pages long.  *Id*.[19] BlenderBottle further informed it would file its own status report without Hydra Cup, instructing "[p]lease do not call your brief a 'joint' filing or suggest to the Court that BlenderBottle has consented or acquiesced in your decision to file it." *Id*.

28. Hydra Cup replied, informing BlenderBottle that no patents, trademarks or other "substance of the case" were discussed in its Status Report at all, and that Hydra Cup was simply stating undisputed facts concerning amended pleadings and related discovery disputes supported by written communications to ensure a full and complete record showing the current status of the case was before the Court. *Id*.[20] Hydra Cup reiterated its offer to combine the parties' final Status Reports, send the final version to BlenderBottle for final approval, and to file the final Status Report with the Court if BlenderBottle would provide its version of the Status Report. *Id*. Hydra Cup also sent BlenderBottle a second updated draft of its Status Report on 31 January 2025, addressing BlenderBottle's concerns with Hydra Cup's previous version. *Id*. BlenderBottle *never* sent Hydra Cup its version of any Status Report. *Id*. BlenderBottle filed its version of its Status Report without ever even responding to Hydra Cup.  *Id*.

**HYDRA CUP'S STATUS REPORT REGARDING THE PENDING AND ANTICIPATED MOTIONS RELATED TO HYDRA CUP'S AMENDED PLEADINGS**

---

[19] Ex. 29, Pl.'s Email Re. Defs.' Draft of Status Report (30 Jan. 2025) (opining "I asked you to please refrain from arguing the *substance of the case* in your portion of the status report, and to simply provide the Court with the status report it requested. . . . [and] [y]ou have ignored my request and sent us a brief.") (emphasis added).

[20] *See* Ex. 30, Defs.' Resp. Email Re. Pl.'s Complaints and with Updated Status Report (31 Jan. 2025) (providing an updated version of Hydra Cup's Status Report, attempting to fix issues BlenderBottle complained about with Hydra Cup's previous version).

## I. THE CONVERGENCE OF MULTIPLE AMENDMENT PATHS DEMONSTRATES ITS INEVITABILITY.

Given the Court's high likelihood of granting Hydra Cup's leave to amend under any of the pending or anticipated motions requesting to amend pleadings, and considering that such amendment would moot the majority of pending motions, granting Hydra Cup's soon-to-be-filed Motion for Leave to Amend the Scheduling Order and Pleadings represents the clearest path forward.

There are currently four pending motions relating to Hydra Cup's pursuit to amend its pleadings. *See supra* Summary Sect.[21] And to address new information learned over the past year and its evolving discovery and trial plan, Hydra Cup also prepared three additional related motions it anticipates filing over the upcoming weeks. *Id*.[22] Allowing Hydra Cup to amend and extend via its soon-to-be-filed Motion for Leave to Amend would rule on or moot six pending and anticipated motions. *Id*.[23] Therefore, if Hydra Cup is allowed to amend and extend pursuant to its upcoming Motion for Leave, the only remaining Motions for the Court to decide will be Hydra Cup's anticipated Motion for Sanctions and BlenderBottle response to Hydra Cup's amended pleadings. *Id*.

### A. Four Threshold Issues Remain True Regardless of the Path to Amendment.

It is important to note, four important threshold issues remain true under any of the paths to amendment discussed below in Section B:

- First, allowing Hydra Cup to amend its pleadings and to extend discovery by 60 days allows the Court to rule on most pending and anticipated motions with one order, including the following: (i) Hydra Cup's Motion for Reconsideration (ECF No. 124); (ii) Hydra Cup's July 30th Motion for Leave to Amend (ECF No. 129); (iii) Hydra Cup's anticipated Motion for Leave to Amend the Scheduling Order and Pleadings; (iv) Hydra Cup's anticipated Motion to Exceed Discovery Limitations (if necessary); (v) BlenderBottle's Motion to Dismiss (ECF No. 121); and (vi) BlenderBottle's Motion for Sanctions (ECF No. 131).

---

[21] *See supra* Summary Sect. Defs.' Mo. for Recons., ECF No. 124 (17 Jul. 2024) (describing how BlenderBottle omitted and misrepresented key facts and presented its exhibits in an intentionally misleading sequence with misleading timestamps to abuse the ex parte system); *see also* Ct. Order Grant. Pl.'s Ex Parte App. to Strike (ECF No. 119). Defs.' Mo. to Am., ECF No. 129 (30 Jul. 2024). Pl.'s Mo. to Dismiss and Strike, ECF No 121 (8 July 2024). Pl.'s Mo. for Sanct., ECF No. 132 (1 Aug. 2024).

[22] Defs.' Mo. for Leave to Am. the Scheduling Order and Pleadings, Mo. for Sanctions for Pl.'s August 1st Non-Compliant Mo. for Sanctions, and Mo. to Exceed Discovery Limitations (if necessary).

[23] Defs.' Mo. for Recons. (ECF No. 124), Mo. for Leave to Amend (ECF No. 129), anticipated Mo. for Leave to Am. the Scheduling Order and Pleadings, anticipated Mo. to Exceed Discovery Limitations (if necessary), Pl.'s Mo. to Dismiss (ECF No. 121) and Mo. for Sanctions (ECF No. 131).

- Second, BlenderBottle's blatant violation of Fed. R. Civ. P. 11's mandatory safe-harbor provision—i.e., moving for sanctions despite many attempts to withdraw and correct challenged claims—leading to all of these pending and anticipated motions independently warrants allowing amendment while also compelling the Court to impose sanctions for BlenderBottle's failure to comply with Rule 11's mandatory safe harbor period.

- Third, the parties' documented mutual agreement to extend the deadlines to respond to pleadings on 3 June 2024—approved by the Court—preserves Hydra Cup's right to amend once as a matter of course under Fed. R. Civ. P. 15(a)(1) that was improperly blocked by BlenderBottle's improper *Ex Parte* Application to Strike that was founded upon BlenderBottle's material misrepresentation.

- Fourth, the potential for prejudice from amending and extending is minimal considering the Scheduling Order is currently undefined, the remaining discovery period has not yet started, expert discovery remains incomplete, no trial date exists to create scheduling pressure, BlenderBottle already admitted it can simply reuse the same arguments if its needs to refile its Motion to Dismiss, and any timing concerns trace directly to BlenderBottle's own tactical choices—particularly its eleventh-hour production of 21,000+ files, its failed attempt to block depositions, and its sabotage of the Rule 11 safe harbor period.

**B.    Potential Paths Forward: Amending and Extending is Inevitable.**

With four pending motions from Summer 2024 and three soon-to-be-filed related motions from Hydra Cup, the procedural history and future presents multiple viable paths forward, but careful analysis reveals each leads to the same destination: amendment of Hydra Cup's pleadings.

***Path 1: Granting Hydra Cup's Upcoming Motion to Amend the Scheduling Order and Pleadings Presents the Optimal Solution in Light of the Substantial Amount of Information BlenderBottle Produced on the Final Day of Discovery and BlenderBottle's Improper Obstruction of Hydra Cup's Attempts to Amend During the Safe Harbor Period.***

Granting Hydra Cup's upcoming Motion for Leave to Amend the Scheduling Order and Pleadings—which both supplements and amends Hydra Cup's previous requests to amend under the pending motions—represents the most efficient solution given BlenderBottle's improper obstruction of Hydra Cup's attempts to withdraw and correct challenged claims during Rule 11's mandatory safe harbor period and BlenderBottle's untimely production of over 21,000 files at the end of discovery. The volume and timing of this production independently justify both amending pleadings and extending discovery.

Due to the wide array of new information and newly identified missing information from BlenderBottle's untimely production of documents at the end of discovery and because

16

BlenderBottle improperly blocked, rejected, and ignored Hydra Cup's multiple attempts to withdraw and correct challenged counterclaims and defenses before BlenderBottle filed its Motion for Sanctions, Hydra Cup seeks leave to amend its Second Amended Answer to withdraw and correct the challenged counterclaims and defenses as well as to add counterclaims for trade dress infringement of Hydra Cup's unregistered shaker bottle and lid trade dress and tortious interference and damages caused by BlenderBottle enforcing fraudulently obtained trademarks and patents. The thousands of files BlenderBottle produced on the *final* day of discovery reveal substantial additional responsive information and newly identified missing information still being improperly withheld, requiring updating pleadings and discovery.

Similarly  extending the remaining discovery period from 60 to 120 days is necessary for Hydra Cup to complete its five depositions and to pursue its amended motion to compel in light of the substantial amount of information BlenderBottle produced on the *final* day of discovery. After BlenderBottle improperly blocked Hydra Cup's depositions and refused to stipulate to an extension of discovery back in February 2024, Hydra Cup moved to extend discovery by 60 days to conduct its five depositions and any necessary follow-up discovery. BlenderBottle produced 16,139 files only a few weeks before the discovery deadline. Then, on the *final* day of discovery, BlenderBottle produced 4,923 confidential files and answers to key interrogatories—information responsive to written discovery requests originally served on BlenderBottle in July 2023. Ex. 1, McKay Decl. BlenderBottle's untimely production after Hydra Cup moved to compel and extend discovery revealed the existence of substantial additional responsive information and witnesses that BlenderBottle improperly withheld until the end of discovery. *Id*. This tactical delay, combined with BlenderBottle improperly blocking all of Hydra Cup's depositions, severely impaired Hydra Cup's ability to collect information and to follow up on these new revelations within the discovery period. *Id*. Therefore, due to the large amount of new information, newly identified missing information, procedural requirements, and the parties' continually conflicting schedules, completing five depositions and proper "follow-up" discovery is not possible within the remaining 60 days.[24]

---

[24] *See, e.g.,* Fed. R. Civ. P. 30(a)(5)(A) (requiring 14 days notice for depositions); Fed. R. Civ. P. 33(b)(3), 34(a)(2)(A), 36(a)(3) (requiring 30 days response time for written discovery requests); L.R. 251 (requiring the parties prepare a joint

And while Hydra Cup hears BlenderBottle's concerns that Hydra Cup's anticipated Motion for Leave to amend and extend is premature due to the parties' pending dispositive motions, Hydra Cup is attempting to amend and extend as early as possible to prevent future disputes and delays. In other words, if Hydra Cup is forced to wait until discovery restarts or until after its depositions to file its anticipated Motion to Amend the Scheduling Order and Pleadings, discovery will be split up and delayed for additional motion practice, causing further significant delays that could be avoided by allowing Hydra Cup to amend and extend before discovery restarts. *Id*. Thus, by filing this Motion before discovery is continued, Hydra Cup is attempting to group all remaining discovery together to minimize future disputes, avoid future delays, and provide clarity to both parties.

It is important to note, allowing amendment under Paths 2-4 below still requires Hydra Cup to file its anticipated Motion for Leave to Amend the Scheduling Order and Pleadings to account for BlenderBottle's large untimely production. So while allowing Hydra Cup to amend its pleadings under Path 2-4 discussed below presents valid paths forward and will moot most pending motions, there will still be a void in Hydra Cup's pleadings and the need to extend discovery due to BlenderBottle's massive last-minute production of over 21,000+ files. Therefore, while Paths 2-4 below will ultimately achieve the same result, reaching said result will require extra steps.

### *Path 2: BlenderBottle's Flagrant Rule 11 Safe Harbor Violations Independently Compel Amendment Via Granting Hydra Cup's July 30th Motion to Amend.*

BlenderBottle's brazen blatant violations Fed. R. Civ. P. 11(c)(2) provide yet another independent basis for allowing amendment while simultaneously requiring sanctions. *See Supra* FACTS, B-D. Between July 11th and July 30th alone, Hydra Cup made multiple formal and informal attempts to withdraw and correct challenged claims—efforts BlenderBottle actively obstructed before filing its Motion. *Id*. This conduct directly violates Fed. R. Civ. P. 11(c)(2)'s core requirement that parties have a full 21-day window to cure challenged claims. *Id.* Most significantly, BlenderBottle's acknowledgment of some cure attempts after filing its Motion for Sanctions further revealed its true improper intent: to weaponize Rule 11 regardless of Hydra Cup's corrective actions.

---

[1] statement to submit 21 days before the motion hearing for a motion to compel).

*See id.* This manipulation of Rule 11's safe harbor provision compels both allowing amendment and imposing sanctions to vindicate the rule's essential purpose. *Id*. *See also* Fed. R. Civ. P. 11(c)(2).

### Path 3: Reconsideration of BlenderBottle's Improper Ex Parte Application Would Correct the Record and Preserve Hydra Cup's Right to Amend Once as a Matter of Course.

Another equally valid (but less efficient) path forward to allowing Hydra Cup to amend its pleadings that would properly correct the record is granting Hydra Cup's Motion to Reconsider BlenderBottle's improper *Ex Parte* Application to Strike Hydra Cup's July 1st amended pleadings. *See Supra* FACTS, B-C. Without BlenderBottle's material misrepresentations about the parties' mutual agreement to extend the deadlines for both parties to respond to pleadings, the Court could not have granted BlenderBottle's *Ex Parte* Application, as Hydra Cup was properly exercising its right to amend once as a matter of course, which it even informed BlenderBottle it intended to exercise without any objection from BlenderBottle. *Id*. The parties' email correspondence clearly shows that BlenderBottle's counsel initiated discussions about extending response deadlines, which resulted in the parties reaching an explicit mutual agreement extending both parties' deadlines to respond to pleadings—a fact conventionally omitted from BlenderBottle's *Ex Parte* Application to Strike. *Id*. The materiality of these misrepresentations cannot be overstated. *See id*. The Court's Order explicitly relied on BlenderBottle's mischaracterization of events, finding that Hydra Cup had exhausted its amendment rights based on a premise that directly contradicted the parties' documented agreement to extend deadlines. *See id*. This fundamentally flawed foundation alone warrants reconsideration, which would ultimately end with the Court allowing Hydra Cup to submit its amended pleadings while also retaining Hydra Cup's right to amend once as a matter of course. *Id*.

### Path 4: Amendment Appears Inevitable Following BlenderBottle's Massive Untimely Production.

The massive end-of-discovery document production independently requires amendment regardless of other considerations. The timing and volume of this production—over 21,000 files in the final weeks of discovery, responsive to requests originally served in July 2023—fundamentally

altered the informational landscape of this litigation.[25] The February productions contained critical materials withheld for over six months. And, most tellingly, BlenderBottle's large production on the final day of discovery included "representative samples" of various categories of requests that identified substantial additional responsive information still being improperly withheld. This combination of late production and revealed gaps independently justifies both amendment and extended discovery.

Even if the Court were to reject all other paths discussed above, considering the massive amount of new information and newly identified missing information BlenderBottle revealed on the final day of discovery, amending and extending is still highly likely to prove proper after completion of Hydra Cup's five upcoming depositions, its already-permitted follow-up discovery, and its anticipated amended motion to compel. Simply put, the large amount of newly identified missing information in BlenderBottle's last-minute production presents more than enough new information and newly identified missing information justifying amendment and a modest 60-day extension of discovery; Hydra Cup's already permitted depositions and follow-up discovery will only bolster Hydra Cup's arguments in favor of amending and extending.

## CONCLUSION

The convergence of multiple independent grounds for amendment, combined with the minimal potential for prejudice and Hydra Cup's diligent pursuit despite BlenderBottle's continual obstruction, compels allowing Hydra Cup to amend and extend now via its soon-to-be-filed Motion for Leave to Amend the Scheduling Order and Pleadings. This approach promotes judicial economy by resolving multiple pending motions through a single order while creating clear baselines for remaining discovery and expert preparation while preventing future disputes and delays.

**Dated**: 31 January 2025

---

[25] Other courts have frowned upon BlenderBottle for using similar gray-hat trickle-down discovery tactics in other cases. *See, e.g.*, *Trove Brands, LLC /d/b/a/ BlenderBottle v. Hut Grp. Ltd.*, No. 2:20-CV-00803, ECF No. 77 at *2 (Dist. Ct. Utah, 20 July 2022) (finding "BlenderBottle's June 7 production was untimely. . . [and] [a]lthough the documents were produced within the fact discovery period, BlenderBottle does not dispute the documents were in its possession or available to it at the time of its original discovery response nearly a year earlier.").

By: /s/Meghan Pratschler/
Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St. 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415) 335-9226

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendant TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus*

21

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF

notification service, which sent notification of such filing to all pro se parties and counsel of record

on 31 January 2025.

KNOBBE MARTENS OLSON & BEAR
Sean Murray (SBN 213,655)
sean.murray@knobbe.com Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Jacob R. Rosenbaum (SBN 313,190)
jacob.rosenbaum@knobbe.com
Christian D. Boettcher (SBN 342,950)
christian.boettcher@knobbe.com

KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

By: /s/Meghan Pratschler/
Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St. 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415) 335-9226

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendants TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus*

**EXHIBITS**

Exhibit 1, Declaration of Attorney Casey Scott McKay in Support of Hydra Cup's Status Report

Exhibit 2, BlenderBottle's Razai-McKay Email Threatening Sanctions in Reply to the Second Amended Answer (3 June 2024)

Exhibit 3, BlenderBottle's Rosenbaum-McKay Email Requesting Extension to Respond to Pleadings (3 June 2024)

Exhibit 4, Hydra Cup's McKay-Rosenbaum Response Email Proposing Mutual Stipulation to Extend Deadlines for Parties to Respond to Pleadings (3 June 2024)

Exhibit 5, BlenderBottle Rosenbaum-McKay Reply Email Agreeing to Mutual Stipulation to Respond to Pleadings (3 June 2024)

Exhibit 6, Hydra Cup's Email Notifying of Intent to Amend Pleadings as Matter of Course (12 June 2024)

Exhibit 7, BlenderBottle's Razai-McKay Email Threatening Sanctions in Retaliation to Hydra Cup Amending as Matter of Course (2 July 2024)

Exhibit 8, Hydra Cup's McKay-Razai Email Responding to Retaliatory Threat of Sanctions Regarding Hydra Cup's Amending as Matter of Course (3 July 2024)

Exhibit 9, BlenderBottle's Email Serving Rule 11 Motion for Sanctions (10 July 2024)

Exhibit 10, Hydra Cup's Email Requesting Consent to Amend Pleadings (11 July 2024)

Exhibit 11, Hydra Cup's Email Requesting Consent to Amend Pleadings with Proposed Third Amended Answer (17 July 2024)

Exhibit 12 was removed.

1    Exhibit 13, BlenderBottle's Email Rejecting Hydra Cup's Request to Amend Pleadings (18

2    July 2024)

3    Exhibit 14, BlenderBottle's Post-Rule-11-Motion Email Acknowledging Hydra Cup's

4    Attempts to Cure Challenged Claims (2 August 2024)

5    Exhibit 15, Hydra Cup's Email Requesting Stipulations (3 December 2024)

6    Exhibit 16, BlenderBottle's Response Email Rejecting Hydra Cup's Request to Stipulate (4

7    December 2024)

8    Exhibit 17, Hydra Cup's Email Reply Offering Holiday and Conditional Stipulations (17

9    December 2024)

10    Exhibit 18, BlenderBottle's Response Email Rejecting Hydra Cup's Offer of Holiday and

11    Conditional Stipulations (17 December 2024)

12    Exhibit 19, Hydra Cup's Email Requesting Meet and Confer and Serving Draft Motion to

13    Modify (20 December 2024)

14    Exhibit 20, BlenderBottle's Email Setting December 30th Meet and Confer (20 December

15    2024)

16    Exhibit 21, Hydra Cup's Email Requesting Consent Amend Pleadings to Withdraw and

17    Correct Claims and Defenses (30 December 2024)

18    Exhibit 22, BlenderBottle's Email Summarizing December 30th Meet and Confer (30

19    December 2024)

20    Exhibit 23, Hydra Cup's Email Summarizing December 30th Meet and Confer (31 December

21    2024)

22    Exhibit 24, Hydra Cup's Email Notifying of Splitting Motion to Modify (2 January 2025)

Exhibit 25, BlenderBottle's Email Rejecting Meet and Confer on Hydra Cup's Request to Withdraw and Correct Claims (3 January 2025)

Exhibit 26, Hydra Cup's Email Notifying of Updated Split-Motions and Requesting Consent to Withdraw and Add Counterclaims (7 January 2025)

Exhibit 27, BlenderBottle's Email Suggesting "No-Delete" Amendment of Pleadings (28 January 2025)

Exhibit 28, Hydra Cup's Email Response to BlenderBottle's "No-Delete" Email (28 January 2025)

Exhibit 29, BlenderBottle's Email Complaining About Status Report (30 January 2025)

Exhibit 30, Hydra Cup's Response to BlenderBottle's Complaints Regarding Status Report (31 January 2025)