Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415) 335-9226

-and-

Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendant TRRS Magnate, LLC dba Hydra Cup*

**IN THE UNITED STATES DISTRICT COURT**
**THE EASTERN DISTRICT OF CALIFORNIA**

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — X

**TROVE BRANDS, LLC D/B/A THE BLENDERBOTTLE COMPANY**

        *Plaintiff,*

                                                                   **Case No: 2:22-cv-02222-TLN-CKD,**

        *v.*

**TRRS MAGNATE LLC D/B/A HYDRA CUP AND THOMAS RAYMUS,**

        *Defendants.*

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — X

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST PLAINTIFF BLENDERBOTTLE**

Defendants TRRS Magnate LLC d/b/a Hydra Cup and Thomas Raymus (collectively "Hydra Cup"), by and through counsel, hereby move this Court for sanctions against Plaintiff Trove Brands, LLC d/b/a the BlenderBottle Company ("BlenderBottle") and its counsel pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this Court's inherent authority.

## GROUNDS FOR MOTION

1. On 10 May 2024, BlenderBottle amended its pleadings to add Defendant Raymus in his individual capacity. When Hydra Cup initially responded on May 31st with an incomplete filing due to complications and simultaneous preparation of multiple matters, BlenderBottle immediately threatened sanctions through an unsolicited email on June 3rd, followed by an aggressive phone call focused more on personal remarks than substantive legal discussion.

2. Hours after these threats, BlenderBottle's other counsel requested an extension to respond to Hydra Cup's filings. The parties reached a mutual agreement extending both sides' response deadlines, which the Court approved on June 5th, followed by Hydra Cup filing its Second Amended Answer the following week. Despite Hydra Cup clearly communicating its intention to exercise its right to amend once as a matter of course, BlenderBottle later mischaracterized this mutual agreement to obtain an *ex parte* order blocking Hydra Cup's amendments.

3. When Hydra Cup attempted to exercise its right to amend pleadings once as a matter of course on July 1st, BlenderBottle, again, threatened sanctions within hours and filed an *Ex Parte* Application to Strike based on BlenderBottle failing to inform the Court about the parties previous mutual agreement to extend the deadlines to respond to pleadings.

4. Though Hydra Cup made multiple attempts to amend its pleadings during Rule 11's mandatory safe-harbor period—including requests on July 11th and 17th to withdraw challenged claims—BlenderBottle categorically rejected these efforts, demanding nothing less than complete withdrawal of all declaratory judgment counterclaims.

5. Even after Hydra Cup's multiple attempts to amend during the safe harbor period, BlenderBottle proceeded to file its sanctions motion on August 1st, only acknowledging some of Hydra Cup's attempts to amend after moving for sanctions—clear evidence that BlenderBottle's sanctions motion was designed to harass rather than address legitimate pleading concerns.

6. This pattern of tactical abuse, factual misrepresentation, and procedural manipulation warrants meaningful sanctions to protect the integrity of the Rule 11 process and deter future misconduct.

## ISSUES

I. Whether BlenderBottle violated Rule 11's safe harbor provision by obstructing Hydra Cup's multiple attempts to amend during the safe harbor period—which would constitute withdrawal of "the challenged paper" under Rule 11(c)(2) and thus trigger and reset the safe harbor provision—and then proceeding with its sanctions motion targeting claims Hydra Cup attempted to withdraw and correct during the safe harbor period, thus rendering BlenderBottle's sanctions motion both procedurally improper and independently sanctionable?

II. If the Court disagrees with Hydra Cup on Issue I and finds Hydra Cup's attempts to withdraw and correct challenged claims and defenses during the safe harbor period insufficient to trigger Rule 11's safe harbor's complete protection, whether BlenderBottle nevertheless violated Rule 11's safe harbor provision by pursuing sanctions against the remaining claims and defenses after accounting for Hydra Cup's withdrawal and correction of numerous claims and defenses during the safe harbor period?

III. Whether BlenderBottle's sanctions motion violates Rule 11 by materially misrepresenting facts through conflating multiple cease and desist letters, exaggerating the scope of IP challenges, concealing litigation patterns against competitors, undermining its own patent equivalence position, and omitting prosecution history showing similarity between contested patents.

IV. Whether BlenderBottle's sanctions motion violates Rule 11 by willfully misrepresenting legal authority by ignoring controlling authority supporting declaratory judgment jurisdiction for related patents, relying on clearly distinguishable cases involving hypothetical products or unrelated patents, and citing authority that either undermines its own position or involves fundamentally different factual scenarios?

V. Whether BlenderBottle's tactical deployment of sanctions threats at strategic litigation points, combined with its improper pursuit of a non-compliant sanctions motion and material misrepresentations, demonstrates an improper purpose warranting sanctions against BlenderBottle?

3

## SUMMARY

BlenderBottle's non-compliant sanctions motion must be dismissed and sanctioned for the following reasons that demonstrate both its frivolous nature and improper purpose:

(a) BlenderBottle violated Rule 11's *mandatory* safe harbor provision by actively obstructing Hydra Cup's multiple good-faith attempts to cure the challenged claims during the safe harbor period—including rejecting informal withdrawal requests, ignoring a motion to amend pleadings, and continuing to pursue sanctions targeting the very claims Hydra Cup sought to withdraw—culminating in BlenderBottle's revealing acknowledgment of Hydra Cup's curing attempts only *after* filing its sanctions motion thereby revealing its improper purpose.

(b) Even if the Court finds that Hydra Cup's multiple attempts to withdraw and correct challenged claims during the safe harbor period did not trigger complete protection, BlenderBottle nevertheless violated Rule 11's safe harbor provision by knowingly pursuing sanctions against the remaining claims after Hydra Cup had demonstrably withdrawn and corrected the majority of reasonably challenged claims, including the patent infringement counterclaims and the lack of secondary meaning claims, which BlenderBottle only acknowledged after filing its sanctions motion.

(c) BlenderBottle's sanctions motion is founded upon calculated factual misrepresentations that demonstrate a failure to conduct the reasonable inquiry required by Rule 11, including deliberately mischaracterizing three separate cease and desist letters as a single "pre-suit letter," falsely portraying targeted challenges to less than 10% of its IP portfolio as attacks on its "entire IP portfolio," concealing its pattern of asserting these same patents against similarly situated competitors, undermining its own position by inadvertently providing physical evidence of patent equivalence, and omitting extensive prosecution history establishing the substantial similarity between the challenged patents.

(d) BlenderBottle's sanctions motion violates Rule 11's requirement for reasonable legal research and analysis by completely disregarding controlling authority supporting declaratory judgment jurisdiction while relying on inapplicable cases involving radically different facts—such as citing cases about hypothetical products and genuinely unrelated patents to attack claims involving an integrated patent family with a documented enforcement history—thereby transforming what should have been, at most, a motion to dismiss into a frivolous sanctions motion.

(e) BlenderBottle deployed its sanctions motion as an improper tactical weapon rather than a legitimate sanctions request, as evidenced by its pattern of launching threats at strategically calculated moments—including mere hours after Hydra Cup's initial response and days before scheduled mediation—coupled with its categorical rejection of reasonable cure attempts and its maintenance of sanctions requests targeting claims it knew Hydra Cup had tried to withdraw during the safe harbor period.

**REQUESTED RELIEF**

Hydra Cup requests the Court grant this Motion and issue the following sanctions designed to deter future misconduct:

1. deny BlenderBottle's non-compliant Motion for Sanctions (ECF No. 132);

2. order BlenderBottle pay all attorneys' fees and costs incurred by Hydra Cup in responding to BlenderBottle's non-compliant sanctions motion;

3. order BlenderBottle pay all attorneys' fees and costs incurred by Hydra Cup in preparing and filing this Motion against BlenderBottle's non-compliant sanctions motion; and

4. issue a written admonishment frowning upon BlenderBottle's misbehavior to document its pattern of abuse, material misrepresentations, and failure to comply.

**CERTIFICATE OF ATTEMPTED MEET AND CONFER**

1. Attorney McKay certifies that, pursuant to the Standing Civil Order § 4.A.(a), Hydra Cup requested a meet and confer session from BlenderBottle to thoroughly discuss all issues in this Motion for Sanctions, but BlenderBottle did not respond.

2. On 30 December 2024, Hydra Cup first notified BlenderBottle it was seeking sanctions for BlenderBottle's non-compliant sanctions motion unless BlenderBottle withdrew and corrected its improper sanctions motion.

3. During the December 30th meet and confer concerning Hydra Cup's requests to add and drop various claims and defenses, BlenderBottle informed it would consider stipulating to Hydra Cup voluntarily withdrawing certain counterclaims and defenses if Hydra Cup agreed to pay for BlenderBottle's attorneys' cost in responding to said counterclaims. *Id*. Hydra Cup rejected BlenderBottle's request as an attempt at procedural extortion, reminding BlenderBottle that it already attempted to drop these claims during the safe-harbor period under Fed. R. Civ. P. 11(c)(2), thereby making BlenderBottle's non-compliant sanctions motion sanctionable. Hydra Cup then informed it was seeking sanctions for BlenderBottle knowingly continuing to pursue a non-compliant sanctions motion, and informed BlenderBottle that Hydra Cup would soon serve its Motion for Sanctions on BlenderBottle.

4. On 7 January 2025, Hydra Cup requested BlenderBottle stipulate to Hydra Cup voluntarily dismissing eleven additional counterclaims that were no longer worth pursuing. Ex. 18, Defs.' Email Req. Consent to Am. Pleadings (7 Jan. 2025).

5. On January 28th, BlenderBottle emailed Hydra Cup informing "BlenderBottle will not stipulate to Defendants' filing of yet another amended pleading when so many motions regarding the pleadings are already pending." Ex. 19, Pl.'s Email Re. Potential Consent to No-Delete Am. Answer (28 Jan. 2025). But then BlenderBottle suggested it may be interested in a modest stipulation, further informing "[h]owever, BlenderBottle would consider agreeing to permit Defendants to file a notice of withdrawal of specified counterclaims and affirmative defenses in its operative pleading." *Id*.

6. Hydra Cup responded that any withdrawals of claims or defenses must be made in a motion to amend, but expressed appreciation at BlenderBottle's progress towards helpful solutions and suggested the same result could be achieved with BlenderBottle's partial consent to Hydra Cup's request to amend its pleadings—consent BlenderBottle made clear it was *not* giving at the parties meet and confer, but also suggesting the idea may still be under consideration. Ex. 19, Defs.' Resp. Email to Pl.'s Possible Consent to No-Delete Am. Answer (28 Jan. 2025).

7. Hydra Cup served its Motion for Sanctions on BlenderBottle on 23 January 2025, triggering Rule 11's 21-day safe harbor period. *See* Ex. 3, Defs.' Email Serving Sanctions Mo. on Pl. (23 Jan. 2025).

8. BlenderBottle did not attempt to withdraw or correct the challenged sanctions motion during the 21-day safe harbor period required by Fed. R. Civ. P. 11(c)(2).

**Dated**: 3 March 2025

Respectfully submitted,

By: /s/Meghan Pratschler/
Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St. 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415) 335-9226

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 712
Washington, DC 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendants TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus*

7

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF notification service, which sent notification of such filing to all pro se parties and counsel of record on 3 March 2025.

Ali S. Razai (SBN 246,922)
ali.razai@morganlewis.com
Christian D. Boettcher (SBN 342,950)
christian.boettcher@morganlewis.com

MORGAN, LEWIS & BOCKIUS, LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626
Telephone: (714) 830-0600
Facsimile: (714) 830-0700

-and-


Sean Murray (SBN 213,655)
sean.murray@knobbe.com
Jacob R. Rosenbaum (SBN 313,190)
jacob.rosenbaum@knobbe.com

KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

By: /s/Meghan Pratschler/
Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St. 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415) 335-9226

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendants TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus*