Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415). 335-9226

-and-

Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC, 20009
202.743.1972
casey@mclaw.io

**IN THE UNITED STATES DISTRICT COURT**
**THE EASTERN DISTRICT OF CALIFORNIA**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

**TROVE BRANDS, LLC D/B/A THE BLENDERBOTTLE COMPANY,**

      *Plaintiff,*

                                              **Case No: 2:22-cv-02222-TLN-CKD,**

      *v.*

**TRRS MAGNATE LLC D/B/A HYDRA CUP AND THOMAS RAYMUS, AN INDIVIDUAL,**

      *Defendants.*

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFF BLENDERBOTTLE**

Defendants TRRS Magnate LLC d/b/a Hydra Cup and Thomas Raymus (collectively "Hydra Cup"), by and through counsel, in its case against Plaintiff Trove Brands, LLC d/b/a the BlenderBottle Company ("BlenderBottle"), respectfully move this Court for an order imposing sanctions against BlenderBottle and its counsel pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this Court's inherent authority. As explained below, BlenderBottle's sanctions motion violates Rule 11's mandatory safe harbor provision, relies on substantial factual and legal misrepresentations, and was filed with the improper purpose of intimidating Hydra Cup. The Court's intervention is necessary to protect judicial integrity and deter future abuses.

**ISSUES**

I.   Whether BlenderBottle violated Rule 11's safe harbor provision by obstructing Hydra Cup's multiple attempts to amend during the safe harbor period—which would constitute withdrawal of "the challenged paper" under Rule 11(c)(2) and thus trigger and reset the safe harbor provision—and then proceeding with its sanctions motion targeting claims Hydra Cup attempted to withdraw and correct during the safe harbor period, thus rendering BlenderBottle's sanctions motion both procedurally improper and independently sanctionable?

II.  If the Court disagrees with Hydra Cup on Issue I and finds Hydra Cup's attempts to withdraw and correct challenged claims and defenses during the safe harbor period insufficient to trigger Rule 11's safe harbor's complete protection, whether BlenderBottle nevertheless violated Rule 11's safe harbor provision by pursuing sanctions against the remaining claims and defenses after accounting for Hydra Cup's withdrawal and correction of numerous claims and defenses during the safe harbor period?

III. Whether BlenderBottle's sanctions motion violates Rule 11 by materially misrepresenting facts through conflating multiple cease and desist letters, exaggerating the scope of IP challenges, concealing litigation patterns against competitors, undermining its own patent equivalence position, and omitting prosecution history showing similarity between contested patents.

IV.  Whether BlenderBottle's sanctions motion violates Rule 11 by willfully misrepresenting legal authority by ignoring controlling authority supporting declaratory judgment jurisdiction for related patents, relying on clearly distinguishable cases involving hypothetical products or unrelated patents, and citing authority that either undermines its own position or involves fundamentally different factual scenarios?

V.   Whether BlenderBottle's tactical deployment of sanctions threats at strategic litigation points, combined with its improper pursuit of a non-compliant sanctions motion and material misrepresentations, demonstrates an improper purpose warranting sanctions against BlenderBottle?

# SUMMARY

BlenderBottle's non-compliant sanctions motion must be dismissed and sanctioned for the following reasons that demonstrate both its frivolous nature and improper purpose:

(a) BlenderBottle violated Rule 11's *mandatory* safe harbor provision by actively obstructing Hydra Cup's multiple good-faith attempts to cure the challenged claims during the safe harbor period—including rejecting informal withdrawal requests, ignoring a motion to amend pleadings, and continuing to pursue sanctions targeting the very claims Hydra Cup sought to withdraw—culminating in BlenderBottle's revealing acknowledgment of Hydra Cup's curing attempts only *after* filing its sanctions motion thereby revealing its improper purpose.

(b) Even if the Court finds that Hydra Cup's multiple attempts to withdraw and correct challenged claims during the safe harbor period did not trigger complete protection, BlenderBottle nevertheless violated Rule 11's safe harbor provision by knowingly pursuing sanctions against the remaining claims after Hydra Cup had demonstrably withdrawn and corrected the majority of reasonably challenged claims, including the patent infringement counterclaims and the lack of secondary meaning claims, which BlenderBottle only acknowledged after filing its sanctions motion.

(c) BlenderBottle's sanctions motion is founded upon calculated factual misrepresentations that demonstrate a failure to conduct the reasonable inquiry required by Rule 11, including deliberately mischaracterizing three separate cease and desist letters as a single "pre-suit letter," falsely portraying targeted challenges to less than 10% of its IP portfolio as attacks on its "entire IP portfolio," concealing its pattern of asserting these same patents against similarly situated competitors, undermining its own position by inadvertently providing physical evidence of patent equivalence, and omitting extensive prosecution history establishing the substantial similarity between the challenged patents.

(d) BlenderBottle's sanctions motion violates Rule 11's requirement for reasonable legal research and analysis by completely disregarding controlling authority supporting declaratory judgment jurisdiction while relying on inapplicable cases involving radically different facts—such as citing cases about hypothetical products and genuinely unrelated patents to attack claims involving an integrated patent family with a documented enforcement history—thereby transforming what should have been, at most, a motion to dismiss into a frivolous sanctions motion.

(e) BlenderBottle deployed its sanctions motion as an improper tactical weapon rather than a legitimate sanctions request, as evidenced by its pattern of launching threats at strategically calculated moments—including mere hours after Hydra Cup's initial response and days before scheduled mediation—coupled with its categorical rejection of reasonable cure attempts and its maintenance of sanctions requests targeting claims it knew Hydra Cup had tried to withdraw during the safe harbor period.

**REQUESTED RELIEF**

Hydra Cup requests the Court grant this Motion and issue the following sanctions designed to deter future misconduct:

(a)  deny BlenderBottle's non-compliant Motion for Sanctions (ECF No. 132);

(b)  order BlenderBottle pay all attorneys' fees and costs incurred by Hydra Cup in responding to BlenderBottle's non-compliant sanctions motion;

(c)  order BlenderBottle pay all attorneys' fees and costs incurred by Hydra Cup in preparing and filing this Motion against BlenderBottle's non-compliant sanctions motion; and

(d)  issue a written admonishment frowning upon BlenderBottle's misbehavior to document its pattern of abuse, material misrepresentations, and failure to comply.

# AUTHORITIES

## Supreme Court Cases

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
    498 U.S. 533 (1991)...............................................................................................4

*Chambers v. NASCO*,
    501 U.S. 32 (1991)................................................................................................5

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990)....................................................................4, 10-11

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).............................................................................1, 16, 19

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980)..............................................................................................5


## Federal Circuit Cases

*AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*,
    890 F.3d 986 (Fed. Cir. 2018)..........................................................16

*Arkema Inc. v. Honeywell Int'l, Inc.*,
    706 F.3d 1351 (Fed. Cir. 2013).........................................................16

*Fox Grp., Inc. v. Cree, Inc.*,
    700 F.3d 1300 (Fed. Cir. 2012)....................................................16-17

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
    824 F.2d 953 (Fed. Cir. 1987)..........................................................16

*In re VoIP-Pal.com, Inc.*,
    No. 2022-123, 2022 WL 843418 (Fed. Cir. Mar. 22, 2022)...............15

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
    482 F.3d 1330 (Fed. Cir. 2007)........................................................16

*Vanguard Research, Inc. v. PEAT, Inc.*,
    304 F.3d 1249 (Fed. Cir. 2002).........................................................16


## Ninth Circuit Cases

*Barber v. Miller*,
    146 F.3d 707 (9th Cir. 1998).............................................................6

*Ferdik v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992)...........................................................8

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
    801 F.2d 1531 (9th Cir. 1986)..........................................................15

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
    403 F.3d 683 (9th Cir. 2005)...........................................................7

*Heuttig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.*,
    790 F.2d 1421 (9th Cir. 1986)........................................................11

*Holgate v. Baldwin*,
    425 F.3d 671 (9th Cir. 2005)...................................................4, 6, 12

*Islamic Shura Council of S. California v. F.B.I.,*
    757 F.3d 870 (9th Cir. 2014)……………………………...…………………....6, 11

*Lahiri v. Universal Music & Video Distrib. Corp.,*
    606 F.3d 1216 (9th Cir. 2010)……………………………………………..………4

*Lloyd v. Schlag,*
    884 F.2d 409 (9th Cir. 1989)……………………………………………...………11

*Radcliffe v. Rainbow Const. Co.,*
    254 F.3d 772 (9th Cir. 2001)…………………………………………...…………6

*Sneller v. City of Bainbridge Island,*
    606 F.3d 636 (9th Cir. 2010)………………………...…………….…...……6-10

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.,*
    665 F.3d 1269 (Fed. Cir. 2012)……………...……..……...……….……...……12

*Truesdell v. S. California Permanente Med. Grp.,*
    293 F.3d 1146 (9th Cir. 2002)……………………...…..……………….6, 10-11

**Other Circuit Cases**

*Kiobel v. Millson,*
    592 F.3d 78 (2d Cir. 2010)…………………………………...………..……...10

*Lawrence v. Richman Group of CT LLC,*
    620 F.3d 153 (2d Cir. 2010)………………………………………...…...…………6

**District Court Cases**

*Applera Corp. v. Michigan Diagnostics, LLC,*
    594 F. Supp. 2d 150 (D. Mass. 2009)…………………………..……………....16

*Blake By & Through Blake v. Nat'l Cas. Co.,*
    607 F. Supp. 189 (C.D. Cal. 1984)……………………………………………....15-16

*California Sportfishing Prot. All. v. Callaway,*
    2013 WL 4482849 (E.D. Cal. Aug. 20, 2013)…………………………………..7, 9

*Govino, LLC v. Goverre, Inc.,*
    No. 817CV01237JLSJCG, 2017 WL 10399451 (C.D. Cal. Dec. 11, 2017)……………………16-17

*Gutierrez v. Bank of Am.,*
    N.A., No. 2:14-CV-01246-TLN, 2015 WL 1021438 (E.D. Cal. Mar. 9, 2015)……………...…...……4

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.,*
    No. SACV1701613CJCDFMX, 2020 WL 816135 (C.D. Cal. Jan. 23, 2020)…..……………….10

*McMahon v. Pier 39 Ltd. P'ship,*
    No. C03-00251 CRB, 2003 WL 22939233 (N.D. Cal. Dec. 5, 2003)………………….…..…..17

*Oliver v. In-N-Out Burgers,*
    945 F. Supp. 2d 1126 (S.D. Cal. 2013)…………………….…………………...…..……4, 5

*Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.,*
    138 F. Supp. 3d 303 (S.D.N.Y. 2014)……………………………………….…………...17

*Ramachandran v. City of Los Altos,*
    No. 18-CV-01223-VKD, ECF No. 421 (N.D. Cal. Jan. 3, 2025)………………..……………...4, 6

*Seaboard Int'l, Inc. v. Cameron Int'l Corp.*,
  No. 1:13-CV-00281-MLH-SK, 2013 WL 3936889 (E.D. Cal. July 30, 2013)……………..……....16

*Uziel v. Superior Ct.*,
  No. CV 19-1458-DSF (JEM), 2021 WL 5830040 (C.D. Cal. Oct. 19, 2021)………………..…..17

*Weird Sci. LLC v. Sindlev*,
  No. 2:24-CV-00645-HDV-MRWX, ECF No. 27 (C.D. Cal. May 16, 2024)…………………....18

*Wolinski v. Lewis*,
  No. 217CV0583MCEACP, 2018 WL 4488471 (E.D. Cal. Sept. 19, 2018)……………..…….…..6

*Yuckming Chiu v. Citrix Sys., Inc.*,
  No. SA CV 11-1121 DOC, 2011 WL 6018278 (C.D. Cal. Nov. 23, 2011)…………………....10

**Federal Statutes**

28 U.S.C. §
  1927……………………...……………………………………………………………………..…4

**Federal Rules**

Federal Rule of Civil Procedure
  11………………………………………………...……………………………………..passim
  15………..………………………………………...………………………………..7

vii

1

**CONTENTS**

FACTS........................................................................................................................................1

    A. BlenderBottle's Amended Complaint, Hydra Cup's Initial Response, and BlenderBottle's Immediate Threats of Sanctions.........................................................................................1

    B. BlenderBottle Improperly Abused the *Ex Parte* System to Strike Hydra Cup's Amended Answer After the Parties' Mutually Agreed to Extend Deadlines for Both Parties to Respond.........................1

    C. BlenderBottle Obstructed Hydra Cup's Attempts to Invoke Rule 11's Safe Harbor.....................2

    D. Hydra Cup Moved to Amend on July 30th; BlenderBottle Moved for Sanctions on August 1st; BlenderBottle Acknowledged Hydra Cup's Curing Attempts on August 2nd.....................................3

LAW..........................................................................................................................................4

ARGUMENT..............................................................................................................................5

  I. BlenderBottle's Flagrant Violation of Rule 11's Safe Harbor Provision Requires Dismissal and Sanctions....................................................................................................................................5

    A. BlenderBottle Continually Obstructed Hydra Cup's Attempts to Cure Challenged Claims...........6

      1. BlenderBottle Filed its Sanctions Motion Despite Hydra Cup's Attempts to Amend During the Safe-Harbor Period..................................................................................................................7

      2. After Hydra Cup Moved to Amend and After BlenderBottle Filed its Sanctions Motion, BlenderBottle Finally Acknowledged Hydra Cup's Curing Attempts.............................................8

      3. Because Moving to Amend Effectively Withdraws the Challenged Pleading and Resets Rule 11's Safe Harbor Function, BlenderBottle Should Have Withdrawn and Refiled its Sanctions Motion Instead of Knowingly Pursuing a Non-Compliant, Mooted Sanctions Motion..................8

    B. BlenderBottle's Non-Compliant Sanctions Motion Must Be Rejected and Sanctioned...............10

  II. BlenderBottle's Motion is Sanctionable Due to Material Misrepresentations and Failure to Conduct a Reasonable Inquiry....................................................................................................................11

    A. BlenderBottle Misrepresented Material Facts to Unjustly Bolster its Claims..............................11

      1. BlenderBottle's Sanctions Motion Makes Impermissibly Broad Attacks While Mischaracterizing the Scope and Nature of Hydra Cup's Claims Without Proper Analysis..........11

      2. BlenderBottle Willfully Ignored and Misrepresented Key Factual Allegations.......................12

        a. The D235 Patent and its Closely Related "Classic Standard Shaker" Patent Family...........13

        b. False Characterization of Three Cease and Desist Letters as a Single "Pre-Suit Letter."....13

        c. Enforcement History Against Similar Competitors Selling Similar Products.....................13

        d. Inadvertently Mailing Products Embodying the Equivalent Patents....................................14

        e. Material Misrepresentations of June 3rd Communications..................................................14

        f. Prosecution History of the Closely Related "Classic Standard Shaker" Patent Family........14

    B. BlenderBottle's Sanctions Motion Willfully Misrepresented Legal Authority............................15

viii

1. BlenderBottle Ignored Controlling Authority Contradicting its Position..................................15

2. BlenderBottle Cited Authority Undermining its Position..........................................................16

3. Other Cited Authority Reveals a Concerning Pattern of Legal Misrepresentation...................17

C. BlenderBottle's Pattern of Calculated Misrepresentation Warrants Sanctions............................18

III. BlenderBottle's Improper Purposes and Weaponization of Rule 11................................................18

CONCLUSION........................................................................................................................................ 20

CERTIFICATE OF SERVICE.................................................................................................................22

EXHIBITS...............................................................................................................................................24

**FACTS**

The events leading to this Motion reveal a pattern of tactical abuse by BlenderBottle, beginning with its reactionary response to Hydra Cup's initial response to the Second Amended Complaint and culminating in BlenderBottle's improper sanctions motion. Throughout this period, BlenderBottle consistently misrepresented facts, blocked Hydra Cup's attempts to cure alleged deficiencies, and wielded threats of sanctions as a tactical weapon.

### A. BlenderBottle's Amended Complaint, Hydra Cup's Initial Response, and BlenderBottle's Immediate Threats of Sanctions.

Hydra Cup initially responded to BlenderBottle's Second Amended Complaint on 31 May 2024; however, due to complications and the concurrent demands of preparing for five depositions, briefing two motions to compel, handling various pleadings and motions, and preparing for mediation, Hydra Cup's initial response was incomplete. Ex. 1, McKay Decl., at 3: ¶¶ 21-23.[1] The next business day following Hydra Cup's response, BlenderBottle's counsel, Attorney Razai, sent an unsolicited email threatening sanctions—notably omitting all other counsel from the communication. Ex. 4, Pl.'s Razai-McKay Email Re. Sanctions (3 June 2024). When Hydra Cup's counsel, Attorney McKay, did not immediately respond, Attorney Razai escalated with an unexpected mildly aggressive phone call. Ex. 1, McKay Decl., at 3: ¶¶ 24-25. Rather than engaging in substantive legal discussion, Attorney Razai made a cursory reference to *MedImmune*, concluding that all Hydra Cup's new counterclaims were categorically frivolous because BlenderBottle did not assert them in this case before turning to personal remarks about his concern for Attorney McKay's health and career. *Id*.

### B. BlenderBottle Improperly Abused the *Ex Parte* System to Strike Hydra Cup's Amended Answer After the Parties' Mutually Agreed to Extend Deadlines for Both Parties to Respond.

Hours after Attorney Razai's threatening call, BlenderBottle's co-counsel, Attorney Rosenbaum, requested an extension of time for BlenderBottle to respond to Hydra Cup's filings. *Id*. at 4: ¶¶ 26-28.[2] Because Hydra Cup also needed a modest extension of time to respond to pleadings, the parties mutually

---

[1] *See* Pl.'s Sec. Am. Complaint, ECF No. 102 (10 May 2024); Defs.' Sec. Am. Answ. (withdrawn); Defs.' Mo. to Dismiss, ECF No. 105 (withdrawn);  Stip. re. Mediation, ECF No. 103 (20 May 2024).

[2] *See* Ex. 5, Rosenbaum-McKay Emails Re. Parties' Mutual Consent to Ext. Time to Resp. to Am. Pleadings (3 Jun. 2024) (showing that BlenderBottle initially requested an extension of time, which resulted in both parties mutually consenting to extend their deadlines to respond to pleadings).

consented to extending both sides' response deadlines for the amended pleadings. *See id*. Within days, the Court approved the parties' mutual agreement to extend response deadlines; Hydra Cup's incomplete filings were withdrawn from the docket and Hydra Cup's response to the Second Amended Complaint was due within 10 days. *Id*. at 4-5: ¶¶ 29-30.[3] Significantly, with mediation two days away and knowing it needed most of the short 10-day extension to correct its motion to dismiss, Hydra Cup immediately notified BlenderBottle of Hydra Cup's intention to exercise its right to amend once as a matter of course to fix issues in its lengthy pleadings. *Id*. at 5: ¶ 30; *see also* Ex. 6, Defs.' Email Re. Am. Pleadings as Matter of Course (12 Jun. 2024). BlenderBottle's silence in response to this notice reasonably suggested its acknowledgment of Hydra Cup's right to amend once as a matter of course. *See* Ex. 1 McKay Decl., at 5: ¶ 30.

On July 1st, Hydra Cup attempted to amend its pleadings by exercising its right to amend once as a matter of course. *Id*. BlenderBottle's response was swift and aggressive—Attorney Razai threatened sanctions at 11:52 p.m. (PST) on July 1st. *Id;* Ex. 7, Pl.'s Razai-McKay Email Re. Defs.' Am. as Right (1 July 2024). The next day, BlenderBottle filed an *Ex Parte* Application to Strike the Third Amended Answer, which the Court granted based on BlenderBottle failing to inform the Court that BlenderBottle consented to a 10-day extension of the deadline for Hydra Cup to respond to the Second Amended Complaint. Ex. 1 McKay Decl., at 5: ¶¶ 31-33. And when Hydra Cup moved for reconsideration of BlenderBottle's improper *Ex Parte* Application on July 17th, BlenderBottle immediately reacted with additional baseless threats of sanctions. Ex. 1, McKay Decl., at 6: ¶¶ 35-38.[4]

## C.    BlenderBottle Obstructed Hydra Cup's Attempts to Invoke Rule 11's Safe Harbor.

On July 10th, BlenderBottle served its sanction motion on Hydra Cup. *Id*. at 5-6: ¶¶ 33-41. Hydra Cup then made multiple attempts to cure challenged claims during the mandatory Rule 11  21-day safe harbor period. *See* i*d*.

---

[3] *See* Ct.'s Or. Granting Joint Mo. to Ext. Resp. Time for Pleadings (ECF No. 109) and Withdrawing Defs.' May 31st Resp. (ECF Nos. 105 and 106), ECF No. 110 (5 Jun. 2024).

[4] *See generally* Defs.' Mo. for Recons., ECF No. 124 (17 Jul. 2024). Ct. Order Grant. Pl.'s *Ex Parte* App. to Strike (ECF No. 119) (striking Defs.' Third Am. Answ. (ECF No. 118)); Ex. 1, McKay Decl., at 5-6.

On July 11th, Hydra Cup requested BlenderBottle consent to Hydra Cup amending its pleadings to withdraw and correct the claims and defenses challenged by BlenderBottle's sanctions motion. *Id*. BlenderBottle requested a copy of the proposed pleadings to review. *Id*.

On July 17th, Hydra Cup provided BlenderBottle with a detailed summary of the withdrawals and corrections that it was making along with a draft of its proposed Third Amended Answer that withdrew patent infringement counterclaims, declaratory judgment actions regarding secondary meaning for Related Trademarks, several affirmative defenses as well as consolidated and clarified remaining allegations, updated claims, and added supporting exhibits. *See id*.; Ex. 11, Defs.' Email Req. Stip. to Am. Answer (17 Jul. 2024) (providing a draft Third Amended Answer and informing, *inter alia*, Hydra Cup "dropped the following counterclaims: patent infringement of Defendant's licensed rights in Tianqi's D029 and D047 Patents; declaratory judgment actions for lack of secondary meaning against [the two Related Trademarks]").

The following day, July 18th, BlenderBottle rejected Hydra Cup's requests to amend, insisting on nothing less than complete withdrawal of all declaratory judgment counterclaims involving the Equivalent Patents. *See* Ex. 12, Pl.'s Email Rej. Defs.' Req. to Am. Pleadings (18 Jul. 2024) (rejecting Hydra Cup's attempts to withdraw and correct challenged claims and defenses, opining "[t]he proposed amended pleading does not address the majority of the issues identified . . . [and] it creates several new issues.").

**D.    Hydra Cup Moved to Amend on July 30th; BlenderBottle Moved for Sanctions on August 1st; BlenderBottle Acknowledged Hydra Cup's Curing Attempts on August 2nd.**

On July 30th, the day before the safe harbor period ended, Hydra Cup filed its motion to amend, officially triggering Rule 11's safe harbor protection; BlenderBottle responded by filing its sanctions motion on August 1st. Ex. 1, McKay Decl., 6-7: ¶¶ 39-45.[5]

On August 2nd, after filing its sanctions motion, BlenderBottle acknowledged *some* of Hydra Cup's attempted withdrawals and corrections, even agreeing to not seek sanctions on a few withdrawn claims while maintaining its categorical position on others and informing BlenderBottle was still proceeding with its sanctions motion despite Hydra Cup's numerous attempts to withdraw and correct the challenged claims at issue in BlenderBottle's sanctions motion. *Id*.; *see* Ex. 13, Pl.'s Post-Safe-Harbor Email Re. Defs.' Am.

---

[5] *See* Defs.' Mo. to Am., ECF No. 129 (30 Jul. 2024); Pl.'s Rule 11 Mo., ECF No. 132 (1 Aug. 2024).

Pleadings (2 Aug. 2024) (informing BlenderBottle acknowledged that "*Defendants have attempted to withdraw their counterclaims for patent infringement through amendment*. [And thus] BlenderBottle will not seek sanctions based on Defendants' assertion of patent infringement claims without standing if Defendants confirm that they will not be pursuing those claims as part of this action.") (emphasis added).

BlenderBottle proceeded with seeking sanctions despite Hydra Cup's numerous attempts to withdraw and correct the challenged claims.

## LAW

While sanctions constitute "an extraordinary remedy, one to be exercised with extreme caution," courts possess multiple, complementary authorities to sanction litigation misconduct and retain broad discretion in determining whether and to what extent sanctions are appropriate. *Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126, 1130 (S.D. Cal. 2013) (citations omitted).[6]

Rule 11 imposes an affirmative duty on attorneys to certify that every document presented to the court meets three fundamental requirements: (1) it results from reasonable inquiry,[7] (2) it is well-grounded in fact and law, and (3) it is not presented for any improper purpose. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

While Rule 11 focuses on document certification, 28 U.S.C. § 1927 targets conduct that "multiplies the proceedings. . . . unreasonably and vexatiously" and requires a finding of bad faith or recklessness combined with an additional factor such as frivolousness, harassment, or improper purpose. *Oliver*, 945 F. Supp. 2d at 1129. The bad faith requirement under § 1927 sets a high threshold, requiring evidence that an attorney either knowingly or recklessly raised frivolous arguments, or argued meritorious claims for the purpose of harassment. *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

---

[6] *See also Ramachandran v. City of Los Altos*, No. 5:18-CV-01223-VKD, ECF No. 421, at *2 (N.D. Cal. Jan. 3, 2025) (noting "sanctions are reserved for "the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."); *cf. Gutierrez v. Bank of Am., N.A.*, No. 2:14-CV-01246-TLN, 2015 WL 1021438, at *5 (E.D. Cal. Mar. 9, 2015) ("Although the Court finds that Plaintiffs filed identical filings for improper purposes, the Court does not find that Plaintiffs' actions approach a level of conduct sufficient to impose sanctions at this time.").

[7] *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (noting the key inquiry is whether a competent attorney, after reasonable investigation, could have believed in the merit of the document's factual and legal positions).

1    Beyond these statutory and rule-based powers, federal courts possess inherent authority to sanction

2    bad faith conduct in litigation, which requires an explicit finding of bad faith and clear evidence justifying

3    its use. *Chambers v. NASCO*, 501 U.S. 32, 43 (1991); *Oliver*, 945 F. Supp. 2d at 1129; *Roadway Express,*

4    *Inc. v. Piper*, 447 U.S. 752, 764 (1980).

5    **ARGUMENT**

6    Strict compliance with the safe harbor provision under Fed. R. Civ. P. 11(c)(2) is mandatory and

7    imposes continuing obligations of candor. BlenderBottle's sanctions motion violated these fundamental

8    requirements by (i) deliberately obstructing Hydra Cup's multiple cure attempts during the safe harbor

9    period and proceeding with its sanctions motion after Hydra Cup moved to amend its pleadings, (ii)

10   misrepresenting key facts about patent relatedness and enforcement history, (iii) willfully ignoring

11   controlling authority while relying on inapplicable authority, (iv) and deploying its sanctions motion as a

12   tactical weapon to unjustly enhance its own claims and intimidate Hydra Cup into dropping valid

13   counterclaims. BlenderBottle's sanctions motion therefore represents precisely the type of calculated

14   procedural abuse and tactical misrepresentation that Rule 11 itself prohibits, requiring not only outright

15   rejection but also the imposition of sanctions to vindicate the integrity of Rule 11's procedural safeguards

16   and deter future attempts to weaponize the sanctions process.

17   **I.    BLENDERBOTTLE'S FLAGRANT VIOLATION OF RULE 11'S SAFE HARBOR PROVISION**
18   **REQUIRES DISMISSAL AND SANCTIONS.**

19   The cornerstone of Rule 11's protective framework is its mandatory safe harbor provision under

20   Fed. R. Civ. P. 11(c)(2)—a 21-day window during which a party can withdraw or correct challenged

21   claims to avoid sanctions. Rather than honoring the provision's remedial purpose, BlenderBottle actively

22   blocked Hydra Cup's attempts to cure while simultaneously preserving its own ability to seek sanctions—a

23   calculated obstruction that manifested through rejecting informal requests to amend, ignoring a formal

24   motion to amend, and maintaining sanctions demands targeting claims it knew Hydra Cup had tried to

25   withdraw during the safe harbor period. What's worse, BlenderBottle only acknowledged Hydra Cup's

26   curing attempts after filing its sanctions motion, revealing its true intent to weaponize Rule 11 regardless of

27   Hydra Cup's corrective actions.

5

**A.    BlenderBottle Continually Obstructed Hydra Cup's Attempts to Cure Challenged Claims.**

A Rule 11 motion failing to comply with the *mandatory* safe harbor requirements should not be filed, and, if filed, must be rejected in its entirety. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001); *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005) ("We must reverse the award of sanctions when the challenging party failed to comply with the safe harbor provisions, even when the underlying filing is frivolous."); *Barber v. Miller*,  146 F.3d 707, 710 (9th Cir. 1998) ("An award of sanctions cannot be upheld" if the opposing party "was not given the opportunity to respond to the motion by withdrawing his claim."); *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638-39 (9th Cir. 2010) (recognizing amending the pleadings triggers the safe harbor). BlenderBottle violated Rule 11's mandatory safe harbor provision by (a) obstructing Hydra Cup's attempts to amend pleadings to withdraw and correct challenged claims during the safe harbor period, and (b) continuing to pursue its non-compliant sanctions motion targeting claims and defenses that BlenderBottle knew Hydra Cup attempted to withdraw and correct during the safe harbor period.

Under Fed. R. Civ. P. 11(c)(2)'s 21-day safe harbor provision, a party may avoid sanctions by withdrawing or correcting the challenged paper during this 21-day safe harbor period; if it does so, the sanctions motion cannot be filed with the court; and if a non-compliant sanctions motion is filed, it must be outright rejected for violating Rule 11's mandatory safe harbor provision. *Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 872-73 (9th Cir. 2014) ("A motion for sanctions may not be filed . . . unless there is strict compliance with Rule 11's safe harbor provision.") (citing *Holgate*, 425 F.3d at 678 (holding that we "enforce [Rule 11's] safe harbor provision strictly"));[8] *see also Sneller*, 606 F.3d at 639. The Ninth Circuit has consistently emphasized that these procedural requirements are not mere technicalities but *mandatory* prerequisites for seeking sanctions. S*ee id*.; *see also Barber*, 146 F.3d at 710-11. Thus, Rule 11's mandatory safe harbor provision requires strict compliance and is strictly enforced in the Ninth Circuit. *Radcliffe*, 254 F.3d at 789; *Holgate*, 425 F.3d at 678 (non-compliance with Rule 11's

---

[8] *See also Barber*, 146 F.3d at 710; *Ramachandran*, No. 5:18-CV-01223-VKD, ECF No. 421, at *2 ("Within this "safe harbor" period, if a party withdraws or corrects the "offending paper," the motion for sanctions cannot be filed with the court.") (citing *Truesdell v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1152 (9th Cir. 2002)); *Wolinski v. Lewis*, No. 217-cv-0583-MCE-ACP, ECF No. 32, at 4 (E.D. Cal. Sept. 19, 2018) ("If the offending party either timely withdraws or appropriately corrects the challenged contention during the twenty-one-day period, the motion for sanctions may not be filed."). *Lawrence v. Richman Group of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010) (filing an amended pleading "resets the clock" for compliance with Rule 11(c)(2)'s safe harbor provision).

safe harbor provision requires dismissal of a sanctions motion without regard to the underlying challenged paper).

Filing a motion to amend under Fed. R. Civ. P. 15 may be the only guaranteed way to comply with Rule 11's safe harbor provision. *See Sneller*, 606 F.3d at 639 ("Filing a motion for leave to amend the complaint under Rule 15 thus constitutes effective withdrawal because it is the only procedure available under the rules to withdraw individual challenged claims.") (citing *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687–88 (9th Cir. 2005) (noting "withdrawals of individual claims against a given defendant are governed by Fed. R. Civ. P. 15")); *cf. Blue Ocean Printing Inc. v. Twin Sisters Prods. LLC*, No. SACV-111738-JVSJPRX, 2012 WL 13019947, at *2 fn. 2 (C.D. Cal. Feb. 14, 2012) (noting if the "movant actually moved to amend" within the safe harbor period, "this likely would have been sufficient to cure the defect.") (citing  *Sneller*, 606 F.3d at 639).[9]

### 1.  *BlenderBottle Filed its Sanctions Motion Despite Hydra Cup's Attempts to Amend During the Safe-Harbor Period.*

BlenderBottle violated Rule 11's mandatory safe harbor provision by filing and maintaining its sanctions motion while actively obstructing Hydra Cup's attempts to withdraw and correct challenged claims during the safe harbor period. *See supra* Facts, §§ C-D. After BlenderBottle served its sanctions motion on Hydra Cup on 10 July 2024, Hydra Cup made diligent efforts to address the alleged deficiencies: first requesting consent to its amend pleadings on July 10th and again on July 17th, specifically informing it was withdrawing its patent infringement counterclaims, declaratory judgment actions regarding trademark secondary meaning, and multiple affirmative defenses as well as consolidating, clarifying, and updating other allegations, among other things. *Id*. BlenderBottle's response was immediate rejection—both times—demonstrating its intent to preserve sanctions unless Hydra Cup categorically dropped all new counterclaims. *See id*.

---

[9] *See also California Sportfishing Prot. All. v. Callaway*, No. 2:10-CV-1801 TLN GGH, 2013 WL 4482849, at *5 (E.D. Cal. Aug. 20, 2013) (noting "amendment or dismissal of claims after a motion for sanctions has been presented, but within the safe harbor period, acts as a withdrawal of challenged claims and therefore obviates a Rule 11 motion."). *Accord Dailey v. United States*, No. 2:23-CV-04485-WLH-PVC, 2024 WL 4800084, at *2 (C.D. Cal. Sept. 20, 2024) (finding the "request for leave to amend was proper, if informal, withdrawal of the challenged claims" where the plaintiff "requested leave from the [c]ourt to amend the Complaint to address the problems identified").

7

### 2. *After Hydra Cup Moved to Amend and After BlenderBottle Filed its Sanctions Motion, BlenderBottle Finally Acknowledged Hydra Cup's Curing Attempts.*

When informal curing attempts failed, Hydra Cup moved to amend its pleadings on July 30th—still within the safe harbor period. *Id*.; s*ee Sneller*, 606 F.3d at 639 (finding a motion to amend pleadings constitutes an effective withdrawal even if it adds new claims or defenses the challenger disagrees with). Rather than evaluating these corrections in good faith, BlenderBottle filed its sanctions motion two days later, effectively punishing Hydra Cup for attempting to utilize the safe harbor provision. *See Facts*, §§ C-D.

Worst of all, the day after BlenderBottle filed its sanctions motion, it finally acknowledged some of Hydra Cup's attempts to withdraw and correct, informing it would not seek sanctions for certain withdrawn claims. *Id*. This belated *partial* acknowledgment reveals that BlenderBottle was well aware of at least some of Hydra Cup's curing attempts, yet deliberately proceeded with its non-compliant sanctions motion despite such attempts, thereby thrusting BlenderBottle's misconduct into sanctionable territory. *Id*.

### 3. *Because Moving to Amend Effectively Withdraws the Challenged Pleading and Resets Rule 11's Safe Harbor Function, BlenderBottle Should Have Withdrawn and Refiled its Sanctions Motion Instead of Knowingly Pursuing a Non-Compliant, Mooted Sanctions Motion.*

BlenderBottle will argue that Hydra Cup's amendments were insufficient or created new issues, but the Ninth Circuit has explicitly rejected such arguments, holding that "for Rule 11 purposes, it makes no difference that the proposed amended complaint may have included additional offending claims." *Sneller*, 606 F.3d at 639-40. "The proper procedure for challenging any newly-alleged offending claims . . . is to file a new Rule 11 motion." *Id*. In other words, when a party withdraws an offending paper during the safe harbor period but replaces it with an amended version that still contains sanctionable content, courts require the moving party to initiate a new 21-day safe harbor period specifically addressing the amended paper's deficiencies. *Id*. This saves courts from wasting time and resources reviewing mooted issues. *See id*.

This is also in line with the text of Rule 11(c)(2) specifically referring to withdrawal or correction of "the challenged paper" as a whole, not individual claims or defenses, as well as in accord with controlling authority holding that an amended pleading completely replaces the previous operative pleading. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (finding after a pleading is amended,

"the original pleading no longer performs any function."). Therefore, when a party amends their pleading during the safe harbor period, they have effectively withdrawn the entire "challenged paper," directly triggering Rule 11's safe harbor provision's protection. *See Sneller*, 606 F.3d at 639-40. And once the original "challenged paper" is withdrawn by moving to amend, the existing sanctions motion becomes procedurally improper, requiring the moving party to withdraw the non-compliant sanctions motion. *Id*. Any concerns about the amended pleading must be addressed through a new Rule 11 sanctions motion. *Id*.

Furthermore, BlenderBottle's partial awareness of only two curing attempts after filing its sanctions motion shows BlenderBottle ignored Hydra Cup's many curing attempts and failed to perform a reasonable inquiry into the facts and law supporting its sanctions motion before filing—if BlenderBottle had reviewed Hydra Cup's July 17th email summary of amendments, much less the proposed amended pleadings, it would have noticed Hydra Cup was attempting to cure challenged claims and would not have included such *mooted* claims in its sanctions motion. *See supra* Facts, §§ C-D. Otherwise, if BlenderBottle actually did perform a reasonable inquiry and was fully aware that Hydra Cup was attempting to cure challenged claims, there is no proper purpose or reasonable justification for BlenderBottle continuing to pursue a non-compliant sanctions motion over claims and defenses it knew Hydra Cup repeatedly attempted to withdraw and correct, especially after Hydra Cup moved to amend. *See id*.

BlenderBottle deliberately ignored Hydra Cup's multiple attempts to cure during the mandatory safe harbor period. When Hydra Cup tried to withdraw and correct challenged claims, BlenderBottle not only rejected these good-faith efforts but doubled down by threatening additional sanctions. *Id*. This conduct directly violates established controlling authority holding that "amendment or dismissal of claims after a motion for sanctions has been presented, but within the safe harbor period, acts as a withdrawal of challenged claims and therefore obviates a Rule 11 motion." *California Sportfishing*, 2013 WL 4482849, at *5 (citing *Sneller*, 606 F.3d 636); *see supra* notes 8-9 and accompanying text.

What's worse, BlenderBottle then proceeded with its sanctions motion despite knowing it was procedurally defective. *See supra* Facts, §§ C-D. BlenderBottle's willful blindness to Rule 11's safe harbor requirements and refusal to drop mooted claims and defenses suggests BlenderBottle knew its sanctions motion was frivolous without the claims Hydra Cup attempted to withdraw. *See id*.

Again, non-compliant sanctions motion should not be filed, and, if filed, must be rejected. *Sneller*, 606 F.3d 638-40. At a minimum, BlenderBottle should have updated its sanctions motion to remove sanctions requests targeting withdrawn claims. *Sneller*, 606 F.3d at 639-40. Instead, BlenderBottle knowingly wasted time and resources pursuing sanctions over claims it knew Hydra Cup had tried to withdraw. Even worse, BlenderBottle continued advocating for its non-compliant sanctions motion even after being repeatedly informed of its procedural and substantive defects. Even after Hydra Cup's numerous curing attempts and after Hydra Cup notified the Court it was withdrawing claims to attempt to prevent the Court from analyzing mooted claims, BlenderBottle still refused to stipulate to allow Hydra Cup to amend its pleadings. *See* Defs.' Not. of Int. to Am., ECF No. 141 (13 Jan. 2025). This persistence, combined with BlenderBottle's pattern of using sanctions threats as tactical weapons, reveals its true purpose: not to correct legitimate pleading deficiencies, but to compel Hydra Cup into withdrawing all new counterclaims through procedural extortion. *See infra* §§ II-III

**B.    BlenderBottle's Non-Compliant Sanctions Motion Must Be Rejected and Sanctioned.**

BlenderBottle's conduct here—actively obstructing safe harbor compliance while pursuing an improper sanctions motion—represents precisely the type of abuse Rule 11's strict requirements aim to prevent. *See Yuckming Chiu v. Citrix Sys., Inc.*, No. SA CV 11-1121 DOC, 2011 WL 6018278, at *8 (C.D. Cal. Nov. 23, 2011) (stating Rule 11's safe harbor requirements are an "absolute prerequisite" to filing a sanctions motion and that non-compliant sanctions motion can warrant sanctions) (citing *Truesdell*, 209 F.R.D. at 174). After Hydra Cup's numerous attempts at withdrawing and correcting challenged claims and defenses, BlenderBottle knew its sanctions motion was frivolous for pursuing sanctions challenging claims Hydra Cup previously attempted to withdraw and correct during the mandatory safe harbor period.[10] Yet BlenderBottle still pursued its non-compliant sanctions motion. Put differently, despite knowing it was forcing the Court to analyze and rule on mooted issues concerning withdrawn claims and defenses, BlenderBottle still proceeded with its non-compliant sanctions motion to attempt to intimidate Hydra Cup into dropping all of its declaratory judgment action counterclaims. Thus, beyond rejecting BlenderBottle's

---

[10] "Rule 11 sanctions do not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains well grounded in fact." *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. SACV1701613CJCDFMX, 2020 WL 816135, at *10 (C.D. Cal. Jan. 23, 2020) (quoting *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) and citing *Cooter*, 496 U.S. at 393 ("The central purpose of Rule 11 is to deter baseless filings.")).

1  non-compliant sanctions motion, the Court should impose sanctions to deter future attempts to weaponize

2  Rule 11 while circumventing its procedural safeguards. *See id*.

3  **II.   BLENDERBOTTLE'S MOTION IS SANCTIONABLE DUE TO MATERIAL MISREPRESENTATIONS**
4  **AND FAILURE TO CONDUCT A REASONABLE INQUIRY.**

5      BlenderBottle's sanctions motion not only fails procedurally but is substantively sanctionable due

6  to its pervasive misrepresentations of both fact and law. These misrepresentations, combined with

7  BlenderBottle's failure to conduct the reasonable inquiry required by Rule 11, demonstrate that its

8  sanctions motion was filed either without proper investigation or with deliberately deceptive intent. Either

9  scenario warrants sanctions.

10     **A.   BlenderBottle Misrepresented Material Facts to Unjustly Bolster its Claims.**

11     Rule 11 requires attorneys to conduct reasonable investigation and present facts accurately. *Islamic*

12  *Shura Council*, 757 F.3d at 872 ("Rule 11 is intended to deter baseless filings in district court and imposes

13  a duty of "reasonable inquiry" so that anything filed with the court is 'well grounded in fact, legally

14  tenable, and not interposed for any improper purpose.'") (quoting *Cooter*, 496 U.S. at 393.).[11]

15  BlenderBottle instead built its sanctions motion on systematic misrepresentations: portraying three cease

16  and desist letters as one, claiming no jurisdictional allegations while ignoring explicit pleadings, and

17  concealing its own enforcement history. *See* Defs.' Answ., 31-38: ¶¶ 12-44 (specifically alleging

18  declaratory judgment jurisdictional allegations ignored by BlenderBottle). These calculated distortions

19  reflect either a complete failure to investigate or deliberate deception. *Id*.

20     *1.   BlenderBottle's Sanctions Motion Makes Impermissibly Broad Attacks While*
21         *Mischaracterizing the Scope and Nature of Hydra Cup's Claims Without Proper Analysis.*

22     Instead of identifying specific sanctionable conduct as Rule 11 requires, BlenderBottle's sanctions

23  motion relies on sweeping, categorical attacks that reveal a complete failure to analyze individual claims.

24  *See* Pl.'s Mo., 2, 4-6, 16-20. For example, BlenderBottle broadly asserts that the "vast majority" of Hydra

25  Cup's "claims and defenses were unsupported by the facts, the law, or both" while only addressing a small

---

[11] *See also Truesdell*, 293 F.3d at 1146. The following factors are considered in evaluating an attorney's inquiry: access to relevant information, the attorney's experience versus the specialized expertise required, the relationship of challenged claims to the overall pleading, time available for investigation, case complexity, and whether allegations involve knowledge, purpose, or intent. *See Lloyd v. Schlag*, 884 F.2d 409, 412 (9th Cir. 1989); *Heuttig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.*, 790 F.2d 1421, 1426–27 (9th Cir. 1986). *See also Cooter*, 496 U.S. at 401-02, 405 (recognizing "[a]n inquiry that is unreasonable when an attorney has months to prepare a complaint may be reasonable when he has only a few days before the statute of limitations runs.").

subset of Hydra Cup's counterclaims and defenses. *See id.* at 9:19-20. This approach fundamentally

violates Rule 11's requirement that a motion for sanctions specify the allegedly sanctionable conduct for

each challenged claim. Fed. R. Civ. P. 11(c)(2) ("must describe the specific conduct"); *see also Holgate*,

425 F.3d at 677-78.

This failure is particularly evident in BlenderBottle's treatment of the declaratory judgment actions

targeting BlenderBottle's eleven Equivalent Patents. *See id.* at 4-6; *see* Ex. 2, List of Relevant IP and

Products. BlenderBottle's sanctions motion fundamentally misrepresents Hydra Cup's declaratory

judgment actions as broad attacks on BlenderBottle's "entire IP portfolio."[12] In reality, Hydra Cup's

counterclaims target less than 10% of BlenderBottle's IP portfolio, focusing specifically on the classic

standard shaker patent family that originates from the expired D235 Patent at issue in this case. *See* Defs.'

Answ., 31-38: ¶¶ 12-44, 48-56: ¶¶ 73-101. This mischaracterization was calculated to portray Hydra Cup's

focused challenges as overreaching attacks, when in fact they represent a targeted effort to resolve all

actively disputed claims involving closely related patents in a single proceeding. *See id.*

Such a mischaracterization also resulted in an insufficient analysis: rather than conducting the

required claim-by-claim analysis, BlenderBottle improperly groups all these actions together under a single

umbrella argument, ignoring the requirement to analyze these issues by patent and claim—i.e., while the

patents are all closely related and substantially similar, each declaratory judgment action involves distinct

facts and arguments that require an independent analysis. *See id.* Fed. R. Civ. P. 11(c); s*ee also Streck, Inc.

v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1281–82 (Fed. Cir. 2012) (noting the existence of a "case

or controversy must be evaluated on a claim-by-claim basis" in patent litigation) (citation omitted).

### 2.    *BlenderBottle Willfully Ignored and Misrepresented Key Factual Allegations.*

BlenderBottle's assertion that Hydra Cup's "pleading contains no allegation suggesting a case or

controversy exists regarding BlenderBottle's unasserted intellectual property" is demonstrably false. Pl.'s

Mo. at 5:20-22. The record reveals numerous well-pleaded bases for declaratory judgment jurisdiction

supported by a wide array of controlling authority. *See generally* Defs.' Answ., 31-38: ¶¶ 12-44

---

[12] *See id.* 19:23-26 (claiming the declaratory judgment actions against the Equivalent Patents and Related Trademarks sends the "implicit message . . . that, unless BlenderBottle drops this case and permits Defendants to copy its trade dress and patented designs, BlenderBottle's entire IP portfolio will be in jeopardy.").

1  (allegations specifically to support declaratory judgment actions); *see also id*. at 48-56: ¶¶ 73-101

2  (comparing Asserted Patents and Trade Dresses and Equivalent Patents).

3       **a. The D235 Patent and its Closely Related "Classic Standard Shaker" Patent Family.**

4       BlenderBottle's sanctions motion attempts to portray its eleven Equivalent Patents as "unrelated" to

5  the Asserted Patents, ignoring extensive evidence of their common lineage and development as an

6  integrated portfolio. Pl.'s Mo., 19:13-28 (claiming Hydra Cup "acted with the improper purpose of

7  threatening BlenderBottle's *unrelated* IP assets.") (emphasis added). All challenged patents trace their

8  origins to a common ancestral patent—the D235 Patent asserted in this case—sharing virtually identical

9  design features and overlapping claims. *See* Defs.' Answ., 31-38: ¶¶ 12-44. Indeed, BlenderBottle

10  frequently threatens litigation over various combinations of Asserted Patents and Equivalent Patents

11  against single products similar to the Accused Products. *See id*. at 31-38: ¶¶ 12-44. BlenderBottle even

12  threatened to sue Hydra Cup over three Equivalent Patents multiple times. *Id*.

13       **b. False Characterization of Three Cease and Desist Letters as a Single "Pre-Suit Letter."**

14       BlenderBottle's treatment of the three cease and desist letters represents one of its most egregious

15  misrepresentations. *See* Pl.'s Mo., 6:12-22 (mischaracterizing three cease and desist letters as a mere

16  "mention[]" in a *single* "pre-suit letter"). Its sanctions motion first claims no allegations of controversy

17  exist, then contradicts itself by acknowledging a single "pre-suit letter," and finally deliberately

18  mischaracterizes three separate threatening cease and desist letters as a single communication that merely

19  "mentioned" patents. *See id*. at 5-7. Given the wide array of controlling authority holding that cease and

20  desist letters constitute affirmative acts establishing controversy, this misrepresentation was clearly

21  calculated to mislead the Court by minimizing evidence of controversy. *See infra* § II.B; *see also* Defs.'

22  Answ., 31-38: ¶¶ 12-44.

23       **c. Enforcement History Against Similar Competitors Selling Similar Products.**

24       BlenderBottle's current position contradicts its own enforcement practices. *See* Defs.' Answ., 31-

25  38: ¶¶ 12-44 (declaratory judgment jurisdiction allegations); *see id*. at 35, notes 6-7 and accompanying

26  text. In litigation against other competitors, BlenderBottle routinely asserts the majority of its classic

27  standard shaker patent family as an integrated unit. *See id*. This established pattern of comprehensive

28  enforcement against similarly situated competitors exposes the artificial nature of BlenderBottle's current

13

attempt to characterize these patents as "unrelated" solely to avoid declaratory judgment jurisdiction. *See id*.

### d. Inadvertently Mailing Products Embodying the Equivalent Patents.

BlenderBottle undermined its own position through its conduct during discovery. *See id*. at 31-38: ¶¶ 12-44. When Hydra Cup requested samples of products embodying the Asserted Patents, BlenderBottle inadvertently sent products embodying the very Equivalent Patents it now claims are unrelated, only later partially correcting its mistake, showing that even BlenderBottle itself cannot meaningfully differentiate between these supposedly "unrelated" patents. *See* Defs.' Answ., 31-38: ¶¶ 12-44.

### e. Material Misrepresentations of June 3rd Communications.

BlenderBottle's sanctions motion presents a fundamentally misleading account of the June 3rd communications between counsel. *See* Pl.'s Mo., 2:21-28, 3:1-2; *but see* Facts, §§ A-B and note 4 and accompanying text. While the BlenderBottle's sanctions motion characterizes these interactions as a substantive "meet and confer" discussion about allegedly frivolous claims, the reality was markedly different. *See* Facts, §§ B-C and note 4 and accompanying text. The interaction consisted primarily of unsolicited personal remarks about abilities to keep up with BlenderBottle's many attorneys at trial and the potential career impacts from a motion for sanctions, with minimal legal substance beyond a cursory reference to basic case law from a well-known case. *See* Facts, §§ A-B and note 4 and accompanying text. This mischaracterization proved particularly significant because BlenderBottle later relied on it in filing its sanctions motion and its improper *Ex Parte* Application to Strike. *See id*.

### f. Prosecution History of the Closely Related "Classic Standard Shaker" Patent Family.

BlenderBottle's claim that Hydra Cup is attacking its unrelated entire IP portfolio is further contradicted by the prosecution history for BlenderBottle's IP. *See* Defs.' Answ, 31-38: ¶¶ 12-44. Hydra Cup's pleadings, for example described how all of the designs and inventions claimed by BlenderBottle's Asserted and Equivalent Patents are virtually indistinguishable. *Id*. Some of BlenderBottle's Asserted Patents and Trade Dresses and Equivalent Patents even claim the exact same design. *Id*.[13] Other allegations described the different office actions received for various Asserted and Equivalent Patents finding BlenderBottle's patents substantially similar. *See id*.

---

[13] *See, e.g.*, Defs.' Answ., 107: ¶ 332, 130: ¶ 459 (explaining how the 019 Lid Trade Dress uses a D478 Patent drawing as its trademark drawing in the 019 Lid Trade Dress's 455 Application). *See also* Defs.' Answ, 31-38: ¶¶ 12-44.

1    By systematically misrepresenting these key facts and communications, BlenderBottle's sanctions

2    motion demonstrates precisely the type of conduct that Rule 11 itself prohibits. These misrepresentations

3    appear calculated to create an artificial narrative supporting sanctions while concealing evidence that

4    would expose the sanctions motion's lack of merit.

5    **B.    BlenderBottle's Sanctions Motion Willfully Misrepresented Legal Authority.**

6    Rule 11 requires a party to do legal research before filing and requires lawyers to file only those

7    documents that are either supported by existing law or based on a reasonable argument for the

8    modification, extension, or change of the law. *See Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801

9    F.2d 1531, 1537-38 (9th Cir. 1986). A failure to conduct a reasonable pre-filing inquiry, or the assertion of

10   a legally unreasonable position—even after such inquiry—violates this standard. *Id*. While Rule 11

11   sanctions are not appropriate merely because the pleader has taken an incorrect view of the law or even for

12   a *reasonable* misconstruction of case law, a party is not entitled to deliberately *ignore* or misstate case law

13   that is unfavorable to its position. *See id*.[14] BlenderBottle ignored controlling authority contradicting its

14   arguments while relying on clearly distinguishable cases involving, among other things, hypothetical

15   products and unrelated patents, revealing BlenderBottle's attempt to transform routine dismissal arguments

16   into grounds for sanctions.

17   ***1.    BlenderBottle Ignored Controlling Authority Contradicting its Position.***

18   BlenderBottle's sanctions motion completely failed to acknowledge controlling authority directly

19   contradicting its position cited in Hydra Cup's pleadings and motion to dismiss. *See* Defs.' Answ, 31-38:

20   ¶¶ 12-44. As explained in Hydra Cup's pleadings and motion to dismiss, the Federal Circuit has

21   consistently held that "a history of litigation involving related patents against the same products can play a

22   significant role in establishing declaratory judgment jurisdiction." S*ee id*. at 35-36.[15] And this principle

---

[14] *See also Blake By & Through Blake v. Nat'l Cas. Co.*, 607 F. Supp. 189, 192-93 (C.D. Cal. 1984) (finding that such "conduct is simply inadequate to constitute a good faith attempt to change the law.").

[15] *See also In re VoIP-Pal.com, Inc.*, No. 2022-123, ECF No. 10, at *2 (Fed. Cir. Mar. 22, 2022) (citing *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (finding "a sufficient controversy existed for declaratory judgment jurisdiction where the patentee had accused the declaratory judgment plaintiff of misappropriating the same technology in related litigation")). *See also Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1344-45 (Fed. Cir. 2007) (finding "related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents.") (citing *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) and *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987) (finding "a justiciable declaratory judgment controversy in a patent non-infringement and invalidity action where the defendant had sued the declaratory judgment plaintiff in state court for misappropriation of trade secrets involving the same technology, thereby engaging in 'a course of conduct that shows a willingness to protect that technology.'")); *Seaboard Int'l, Inc. v. Cameron Int'l*

1  carries particular force when, as here, the patents are part of the same family and involve identical

2  technology and designs. *See id*. BlenderBottle did not even attempt to distinguish the overwhelming

3  amount of controlling authority contradicting its sanction motion. *See generally* Pl.'s Mo., 1-19.

4  BlenderBottle's failure to even acknowledge, let alone distinguish,[16] this precedent is especially troubling

5  given how perfectly it maps to the present facts. *See supra* § II.A.2.

6          ***2.    BlenderBottle Cited Authority Undermining its Position.***

7           Rather than addressing controlling authority on the specific issues at hand, BlenderBottle relies on

8  cases that either support Hydra Cup's position or involve radically different facts. *See generally* Pl.'s Mo.,

9  1-19. BlenderBottle cites *MedImmune*[17] and its progeny for the basic proposition that declaratory judgment

10  jurisdiction requires an "affirmative act" by the declaratory judgment plaintiff. *See id*. at 5:16-28, 6:1-28.

11  While the statement is true, it does not provide any specific support for BlenderBottle's arguments in favor

12  of sanctions against Hydra Cup. *See id*. In fact, *MedImmune* supports Hydra Cup's arguments, as Hydra

13  Cup's pleadings identified five distinct affirmative acts by BlenderBottle, which BlenderBottle omitted

14  from its sanctions motion. *See supra* § II.A.2.

15          BlenderBottle's other cited cases actually highlight the strength of Hydra Cup's position through

16  contrast: *AIDS Healthcare* involved a purely hypothetical product that didn't exist yet;[18] *Applera* involved

17  55 genuinely unrelated patents with no allegations of closely related patent or of any other affirmative acts

18  —and its merely secondary authority;[19] *Fox Group* addressed withdrawn claims within an asserted patent,

19  not related unasserted patents;[20] *Govino* dealt with trademark letters being used to establish patent

---

*Corp.*, No. 1:13-CV-00281-MLH-SK, ECF No. 46, at 9 (E.D. Cal. July 30, 2013).

[16] *See Blake*, 607 F. Supp. At 193 (finding a motion for sanctions frivolous where it did not attempt to distinguish known controlling precedent because "it is impossible for this Court to regard the motion as arguing that the precedent should be modified").

[17] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132-35 (2007).

[18] *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*, 890 F.3d 986, 991-94 (Fed. Cir. 2018) (finding no jusiticiable controversy because "here the record does not refer to threats of litigation on importation of existing product, or even an identification of any product whose importation may violate patent rights").

[19] *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150, 158-160 (D. Mass. 2009) (dismissing counterclaims relating to 55 *unrelated* unasserted patents where movant failed to show any affirmative act, only arguing "an actual controversy exists because the parties have established adverse legal interests." ).

[20] *Fox Grp., Inc. v. Cree*, Inc., 700 F.3d 1300, 1307-08 (Fed. Cir. 2012) (concluding that by the time of the summary judgment motions, both parties had notice that only claims 1 and 19 were at issue and therefore there was no case or controversy).

16

disputes;[21] and *Radiancy* involved a single demand letter that was explicitly withdrawn after the accused infringer explained the large number of differences between two utility patents—and its merely secondary authority.[22] *See* Pl.'s Rule 11 Mo., 5-6.

None of these cases remotely resemble the present situation involving related patents from the same family, multiple cease and desist letters, ongoing litigation over identical designs, inadvertently mailing products embodying Equivalent Patents, and consistent enforcement against competitors. *See id*.; *see supra* § II.A.2; *see also* Defs.' Answ., 31-38: ¶¶ 12-44.

### 3. Other Cited Authority Reveals a Concerning Pattern of Legal Misrepresentation.

BlenderBottle's reliance on *McMahon v. Pier 39 Ltd. P'ship*,[23] and *Uziel v. Superior Ct.*,[24] is particularly revealing. *See* Pl.'s Mo., at 19: 5-12. BlenderBottle cites these cases to argue that Hydra Cup's "gargantuan, frivolous pleading was filed for the improper purpose of harassing BlenderBottle." *Id*. However, both cases involved sanctions against *pro se* litigants who filed *multiple successive* complaints based on previously rejected theories. *See* notes 25-26 and accompanying text. These cases do not provide any particular support to sanction Hydra Cup's pleadings in this case where there has only been this single, ongoing action. *See id*.

BlenderBottle's sanctions motion exemplifies the type of filing that Rule 11 exists to deter. By ignoring controlling authority while misrepresenting distinguishable cases, the sanctions motion appears designed to harass and intimidate rather than address genuine litigation misconduct. Such conduct warrants sanctions, particularly in a Rule 11 motion that should embody the highest standards of candor and legal analysis.

---

[21] *Govino, LLC v. Goverre, Inc.*, No. 817CV01237JLSJCG, 2017 WL 10399451, at *4 (C.D. Cal. Dec. 11, 2017) (find that while "the Complaint identifies Govino's design patents, it asserts causes of action related to its trademark and trade dress rights, which are entirely distinct from patent rights.").

[22] *Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, 138 F. Supp. 3d 303, 320-21 (S.D.N.Y. 2014), as amended (Apr. 1, 2014) (finding one demand letter did not create a jusiticable controversy where it was withdrawn after the accused infringer highlighted numerous differences between two utility patents).

[23] No. C03-00251 CRB, ECF No. 74, at *6 (N.D. Cal. Dec. 5, 2003) (holding that plaintiffs' restatement of the same underlying claims in thirteen successive lawsuits was harassment under Rule 11 due to "successive complaints based upon propositions of law previously rejected.").

[24] No. CV 19-1458-DSF (JEM), 2021 WL 5830040 (C.D. Cal. Oct. 19, 2021) (involving a plaintiff who filed retaliatory lawsuits, pursued frivolous appeals, and attempted to circumvent state court rulings through improper federal court filings).

**C.    BlenderBottle's Pattern of Calculated Misrepresentation Warrants Sanctions.**

BlenderBottle's pattern of systematic misrepresentations—from minute details to broad characterizations—demonstrates a calculated attempt to distort the record. *See supra* §§ II.A-B. These distortions appear deliberately engineered to serve BlenderBottle's narrative, showing precision when advantageous while claiming oversight on damaging facts.[25] The irony is striking: BlenderBottle's sanctions motion itself exemplifies the very conduct Rule 11 is designed to prevent.[26] This pattern of tactical misrepresentation warrants meaningful sanctions to protect the integrity of the Rule 11 process and deter similar abuses.

**III.    BLENDERBOTTLE'S IMPROPER PURPOSES AND WEAPONIZATION OF RULE 11.**

BlenderBottle's actions reveal a systematic abuse of the sanctions process, threatening sanctions just hours after Hydra Cup filed its response, days before mediation, and just after Hydra Cup moved to amend. Instead of addressing legitimate pleading deficiencies, the motion was used as a tool for intimidation.[27] By strategically deploying threats at predetermined intervals, this tactical abuse of Rule 11 compromises the integrity of the sanction's procedure. Such abuse, if unchecked, would create a dangerous precedent, warranting the imposition of meaningful sanctions to safeguard the proper administration of justice.

BlenderBottle's deployment of Rule 11 reveals a calculated strategy of using sanctions threats as weapons rather than legitimate procedural tools. *See supra* §§ II.A-B. Most telling is the timing: BlenderBottle threatened sanctions one business day after Hydra Cup responded to BlenderBottle's Second Amended Complaint and again just hours after Hydra Cup attempted to correct issues in its pleadings by filing its Third Amended Answer. *See supra* Facts, §§ A-C. BlenderBottle's immediate reaction makes a mockery of Rule 11's requirement for careful pre-filing investigation. *Id*. BlenderBottle's threats were clearly pre-planned shots designed to intimidate rather than address genuine litigation misconduct. *Id*.

---

[25] *See, e.g.*, Pl.'s Mo., 6:8-12 (misquoting the designated unique identifier "Equivalent Patents" as the lower case "equivalent" to falsely suggest the term is being used as a strict adjective rather than as a designated unique identifier).

[26] It is important to note the Rule 11 context here where candor and accuracy are paramount. *See Weird Sci. LLC v. Sindlev*, No. 2:24-CV-00645-HDV-MRWX, ECF No. 27 (C.D. Cal. May 16, 2024) (noting "a Rule 11 motion for sanctions is not an appropriate substitute for a motion to dismiss.").

[27] The Advisory Committee Notes explicitly warn that Rule 11 motions "should not be made or threatened for minor, inconsequential violations" and must not be used "to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, [or] to increase the costs of litigation." Fed. R. Civ. P. 11, advisory committee's notes. *See id*. at 11(b)(1) (stating that an attorney must not file a pleading with the court that is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

The strategic timing of BlenderBottle's threats becomes even more transparent when viewed in the context of ongoing settlement discussions. *See supra* Facts, § B. BlenderBottle launched its initial threat just three days before scheduled mediation, then escalated with additional threats coupled with false accusations of confidentiality violations. *Id*. This timing was clearly calculated to poison the mediation process and pressure Hydra Cup into abandoning legitimate claims. *Id*. When that failed, BlenderBottle demanded wholesale withdrawal of all counterclaims while rejecting Hydra Cup's good-faith attempts to address specific challenged claims. *Id*. This all-or-nothing approach exposes BlenderBottle's true aim: not to correct any particular pleading deficiencies, but to bludgeon Hydra Cup into total submission. *Id*.

BlenderBottle's improper motives are further laid bare by Attorney Razai's misleading declarations about key communications. *Id*. at Facts, §§ A-B. The June 3rd call, which BlenderBottle portrays as a substantive discussion of counterclaims, actually consisted mainly of personal remarks about how Attorney McKay's career and health may be affected by sanctions, and of legal discussion limited to a cursory reference to *MedImmune*. *Id*.

Even more telling are BlenderBottle's strategic omissions: it concealed that BlenderBottle initiated requests to extend pleading response deadlines and misrepresented the context showing the parties mutually consented to extend the deadlines for both parties to respond to pleadings by presenting emails with inaccurate time stamps and in a misleading sequential order. *See id*. These calculated misrepresentations were designed to construct a false narrative about Hydra Cup's intentions regarding amending pleadings. *See id*.

The damage from BlenderBottle's misconduct extends beyond tactical advantage. *Id*. Its abuse of Rule 11 has corrupted the litigation process by disrupting settlement negotiations at critical junctures, forcing Hydra Cup to constantly defend against baseless threats rather than litigate merits, and creating improper leverage in parallel filings and mediation. *See id*. Particularly egregious is BlenderBottle's pattern of launching threats immediately after Hydra Cup attempts to cure alleged deficiencies—a practice that turns Rule 11's safe harbor provision on its head by punishing good-faith efforts to address concerns. *See id*.

This conduct demands meaningful sanctions. BlenderBottle has transformed Rule 11 from a tool to promote litigation integrity into a tactical weapon. Without significant consequences, BlenderBottle's conduct provides a dangerous roadmap for future litigants: file baseless sanctions motions before investigating, ignore safe harbor requirements, and use sanctions threats to intimidate opponents into abandoning valid claims. Only through meaningful sanctions can the Court protect Rule 11's proper function and deter similar abuse by future litigants.

**CONCLUSION**

BlenderBottle's sanctions motion represents a perfect storm of sanctionable conduct, combining procedural violations, factual misrepresentations, legal distortions, and improper tactical abuse. This conduct warrants sanctions to deter future misbehavior and to protect the integrity of Rule 11 itself. Only through meaningful sanctions can the Court ensure that Rule 11 remains a tool for promoting litigation integrity rather than a weapon for procedural extortion.

**Dated**: 3 March 2025

Respectfully submitted,

By: /s/Meghan Pratschler/
Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St. 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415) 335-9226

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendant TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus*

20

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF notification service, which sent notification of such filing to all pro se parties and counsel of record on 3 March 2025.

Ali S. Razai (SBN 246,922)
ali.razai@morganlewis.com
Christian D. Boettcher (SBN 342,950)
christian.boettcher@morganlewis.com

MORGAN, LEWIS & BOCKIUS, LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626
Telephone: (714) 830-0600
Facsimile: (714) 830-0700

-and-

Sean Murray (SBN 213,655)
sean.murray@knobbe.com
Jacob R. Rosenbaum (SBN 313,190)
jacob.rosenbaum@knobbe.com

KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

By: /s/Meghan Pratschler/
Meghan Pratschler
CA Bar No.: 324970
Meghan the Attorney, LLP
95 3rd St. 2nd Floor
San Francisco, CA 94103-3103
meghan@meghantheattorney.com
(415) 335-9226

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC 20009
202.743.1972
casey@mclaw.io

*Attorneys for Defendants TRRS Magnate, LLC dba Hydra Cup and Thomas Raymus*

21

**EXHIBITS**

Exhibit 1, Declaration of Attorney Casey Scott McKay in Support of Hydra Cup's Motion for Sanctions

Exhibit 2, List of Asserted Patents, Asserted Trade Dresses, Equivalent Patents, and Asserted Products and Accused Products

Exhibit 3, Hydra Cup's Email Serving Rule 11 Sanctions Motion on BlenderBottle (23 January 2025)

Exhibit 4, BlenderBottle's Razai-McKay Email Threatening Sanctions in Reply to the Second Amended Answer (3 June 2024)

Exhibit 5, Rosenbaum-McKay Emails Agreeing to Mutual Stipulation to Respond to Pleadings (3 June 2024)

Exhibit 6, Hydra Cup's Email Notifying of Intent to Amend Pleadings as Matter of Course (12 June 2024)

Exhibit 7, BlenderBottle's Razai-McKay Email Threatening Sanctions in Retaliation to Hydra Cup Amending as Matter of Course (2 July 2024)

Exhibit 8, Hydra Cup's McKay-Razai Email Responding to Retaliatory Threat of Sanctions Regarding Hydra Cup's Amending as Matter of Course (3 July 2024)

Exhibit 9, BlenderBottle's Email Serving Rule 11 Motion for Sanctions (10 July 2024)

Exhibit 10, Hydra Cup's Email Requesting Consent to Amend Pleadings (11 July 2024)

Exhibit 11, Hydra Cup's Email Requesting Consent to Amend Pleadings with Proposed Third Amended Answer (17 July 2024)

Exhibit 12, BlenderBottle's Email Rejecting Hydra Cup's Request to Amend Pleadings (18 July 2024)

Exhibit 13, BlenderBottle's Post-Rule-11-Motion Email Acknowledging Hydra Cup's Attempts to Cure Challenged Claims (2 August 2024)

Exhibit 14, Hydra Cup's Email Requesting Consent Amend Pleadings to Withdraw and Correct Claims and Defenses (30 December 2024)

Exhibit 15, BlenderBottle's Email Summarizing December 30th Meet and Confer (30 December 2024)

Exhibit 16, Hydra Cup's Email Summarizing December 30th Meet and Confer (31 December 2024)

Exhibit 17, BlenderBottle's Email Rejecting Meet and Confer on Hydra Cup's Request to Withdraw and Correct Claims (3 January 2025)

Exhibit 18, Hydra Cup's Email Request to Amend Pleadings (7 January 2025)

Exhibit 19, BlenderBottle's Email Suggesting "No-Delete" Amendment of Pleadings (28 January 2025)

Exhibit 20, Hydra Cup's Email Response to BlenderBottle's "No-Delete" Email (28 January 2025)