UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROVE BRANDS, LLC dba THE BLENDERBOTTLE COMPANY, a Utah limited liability company,<br><br>     Plaintiff,<br><br> v.<br><br>TRRS MAGNATE LLC dba HYDRA CUP, a California limited liability company, and THOMAS RAYMUS, an individual,<br><br>     Defendants. | No. 2:22-cv-02222-TLN-CKD<br><br>**ORDER** |

   This matter is before the Court on Defendants TRRS Magnate LLC dba Hydra Cup ("Hydra Cup") and Thomas Raymus's ("Raymus") (collectively, "Defendants") Motion to Dismiss. (ECF No. 111.) Plaintiff Trove Brands LLC dba The BlenderBottle Company ("Plaintiff") filed an opposition. (ECF No. 122.) Defendants filed a reply. (ECF No. 126.) For the reasons set forth below, the Court DENIES Defendants' motion.

///

///

///

///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an intellectual property dispute. (ECF No. 99 at 2.) Plaintiff and Defendants manufacture and sell shaker bottles used to mix powder with liquid. (*Id.*) Plaintiff is a Utah limited liability company, Hydra Cup is a California limited liability company, and Raymus is the owner, CEO, and sole employee of Hydra Cup. (ECF No. 102 at 2, 19.)

Plaintiff alleges it obtained various design patents from the United States Patent and Trademark Office ("USPTO"). (*Id.* at 4.) On October 4, 2005, the USPTO issued U.S. Design Patent No. D510,235, titled "BOTTLE" (the "Bottle Patent"). (*Id.*) On December 31, 2013, the USPTO issued U.S. Design Patent No. D696,551, titled "BOTTLE LID HAVING INTEGRATED HANDLE" (the "Lid Patent"). (*Id.*) On January 21, 2014, the USPTO issued U.S. Design Patent No. D697,798, titled "CONTAINER" (the "Container Patent"). (*Id.*) Examples of the patents are pictured below.

  

**Bottle Patent**           **Lid Patent**           **Container Patent**

1    In addition to the above-mentioned design patents, Plaintiff also alleges it obtained
2 various registered and/or unregistered trade dress rights. (*Id.* at 4–7.) First, Plaintiff alleges it
3 manufactures and sells shakers bearing a distinctive trade dress in the overall design of its shaker
4 bottle lid (the "Lid Trade Dress"). (*Id.* at 4–5.) The USPTO issued U.S. Trademark Registration
5 No. 6,800,019 for the Lid Trade Dress. (*Id.* at 5.) The Lid Trade Dress is a bottle lid with a
6 recessed domed top from which a conical spout protrudes on one side and a pair of brackets on
7 the opposing side and the brackets host a pivoting arm containing a circular spout closure
8 element. (*Id.*) An example of the Lid Trade Dress is pictured below.

14    Second, Plaintiff alleges it manufactures and sell shakers bearing a distinctive trade dress
15 in the overall design of its shaker bottle (the "Bottle Trade Dress"). (*Id.*) The Bottle Trade Dress
16 includes, but is not limited to: a tall cylindrical form; a top lid element with a tall shoulder; a
17 recessed domed top from which a conical spout protrudes on one side and a pair of brackets on
18 the opposing side; and the brackets host a pivoting arm containing a circular spout closure
19 element. (*Id.*) An example of the Bottle Trade Dress is pictured below.

27    Third, Plaintiff alleges the USPTO issued U.S. Trademark Registration No. 6,245,626 for
28 the agitator trade dress (the "Agitator Trade Dress"). (*Id.* at 6.) The Agitator Trade Dress is a

3

single length of metal wire formed to symmetrically define the shape of a sphere. (*Id.*) An example of the Agitator Trade Dress is pictured below.



Fourth, Plaintiff alleges it manufactures and sells shakers bearing a distinctive trade dress in its labeling (the "Label Trade Dress"). (*Id.* at 7.) The Label Trade Dress includes: a label wrapping around the circumference of the bottle, a thick black center band, grey trimming on the top and bottom of the black band with a tab for displaying black text, and white text centered within a portion of the black band displaying a logo, company name, and product name. (*Id.*) An example of the Label Trade Dress is pictured below.



Plaintiff alleges Defendants manufacture, use, sell, offer for sale, promote, advertise, and/or import into the United States shaker bottles that infringe on Plaintiff's intellectual property rights. (*Id.* at 15.) Plaintiff initiated this action on December 14, 2022. (ECF No. 1.) Plaintiff filed the operative Second Amended Complaint ("SAC") on May 10, 2024, alleging claims for: (1) patent infringement of the Bottle, Lid, and Container Patents pursuant to 35 U.S.C. § 271; (2) trade dress infringement of the Lid Trade Dress, the Bottle Trade Dress, the Agitator Trade Dress, and the Label Trade Dress in violation of 15 U.S.C. § 1125(a); (3) trade dress infringement of the Lid Trade Dress and Agitator Trade Dress in violation of 15 U.S.C. § 1114; (4) false designation

4

1  of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a); (5) unfair competition
2  under California Business & Professions Code § 17200; and (6) unfair competition under
3  California common law.  (ECF No. 102 at 21–37.)  Defendants filed the instant motion to dismiss
4  on June 10, 2024.  (ECF No. 111.)

5  **II.     STANDARD OF LAW**

6  A motion to dismiss for failure to state a claim upon which relief can be granted under
7  Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.
8  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain
9  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.
10 Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in
11 federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the
12 grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal
13 citation and quotations omitted).  "This simplified notice pleading standard relies on liberal
14 discovery rules and summary judgment motions to define disputed facts and issues and to dispose
15 of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

16 On a motion to dismiss, the factual allegations of the complaint must be accepted as true.
17 *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every
18 reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*
19 *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege
20 "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to
21 relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

22 Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of
23 factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).
24 While Rule 8(a) does not require detailed factual allegations, "it demands more than an
25 unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A
26 pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the
27 elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678
28 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

5

1  statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences
2  are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355
3  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the
4  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws
5  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*
6  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

7      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough
8  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim
9  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
10 reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at
11 680. While the plausibility requirement is not akin to a probability requirement, it demands more
12 than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility
13 inquiry is "a context-specific task that requires the reviewing court to draw on its judicial
14 experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or
15 her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly
16 dismissed. *Id.* at 680 (internal quotations omitted).

17     In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits
18 thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 or
19 incorporated by reference. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.
20 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.
21 1998); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

22     If a complaint fails to state a plausible claim, "'[a] district court should grant leave to
23 amend even if no request to amend the pleading was made, unless it determines that the pleading
24 could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,
25 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));
26 *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in
27 denying leave to amend when amendment would be futile).
28 ///

**III.   ANALYSIS**

Defendants argue: (1) the Lid and Container patent infringement claims fail because Plaintiff's patents are instantly distinguishable and patently dissimilar from Defendants' accused shakers; (2) the Lid Trade Dress infringement claim fails because the Lid Trade Dress is instantly distinguishable and patently dissimilar from Defendants' accused shakers; (3) the Bottle Patent infringement claim fails because Defendants did not sell the allegedly infringing products until after the Bottle Patent expired; (4) Plaintiff cannot allege its asserted trade dresses acquired secondary meaning because the designs have been protected from competition by design and utility patents; (5) Plaintiff fails to allege sufficient facts to show acquired distinctiveness for its trade dress claims; (6) Plaintiff fails to state plausible California unfair competition claims; and (7) Plaintiff fails to allege facts to establish Raymus is personally liable for Hydra Cup's allegedly infringing conduct. (ECF No. 111-1 at 8–24.)  The Court will address each of Defendants' arguments in turn.

    A. <u>Lid and Container Patent Infringement Claims</u>

Defendants argue the Lid Patent discloses a standalone lid and the Container Patent discloses a standalone container, while the accused shaker products are comprised of a bottle and a lid. (*Id.* at 8–10.)  Therefore, Defendants argue the Lid and Container Patents are instantly distinguishable and patently dissimilar to the accused shaker products. (*Id.*)  Defendants further argue even if the Court focused only on the lid and container portions, there are obvious differences between the Patents and accused products. (*Id.*)  In opposition, Plaintiff argues side-by-side comparisons of the Patents and the accused products in the SAC establish substantial similarities to state a plausible claim. (ECF No. 122 at 10.)

"Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997). "In determining whether an accused product infringes a patented design, courts apply the 'ordinary observer' test, which asks whether 'if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same.'" *Five Star Gourmet Foods, Inc. v. Ready Pac Foods,*

*Inc.*, No. 518CV2436DDPKKX, 2019 WL 1260634, at *2 (C.D. Cal. Mar. 18, 2019) (citing *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013)). "Infringement of a design patent is a question of fact." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1287 (Fed. Cir. 2002). "Courts ordinarily do not dismiss a sufficiently pled patent design infringement claim based on a comparison of the subject designs, unless the claimed design and accused product are so plainly dissimilar that it is implausible that an ordinary observer would confuse them." *Five Star Gourmet Foods, Inc.*, 2019 WL 1260634, at *3 (internal citations and quotation marks omitted).

The SAC includes the following representative figures of the Lid and Container Patents and corresponding views of accused products (ECF No. 102 at 23–25):





8





Infringing Hydra Cup Shaker Bottles

Based on these depictions, the Court finds the Lid and Container Patents and the accused products are sufficiently similar to survive Defendants' motion to dismiss. Defendants vaguely argue there are "obvious differences" between the products, including differences in how the accused products are packaged and sold. (ECF No. 111-1 at 9–11.) Defendants' arguments lack clarity, and their arguments about how the accused products are sold seem to be improperly based on facts that are not present in the SAC. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The focus of any Rule 12(b)(6) dismissal . . . is the complaint."); *Khoja*, 899 F.3d at 998 ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]"). Even if there are some dissimilarities between the claimed designs and the accused products, the Court finds that such differences do not amount to plain dissimilarity. *See OddzOn Prods., Inc.*, 122 F.3d at 1405 ("The patented and accused designs do not have to be identical in order for design patent to be found."). In short, the Court concludes the designs and accused products are not "so plainly dissimilar that it is implausible that an ordinary observer would confuse them." *Five Star Gourmet Foods, Inc.*, 2019 WL 1260634, at *3.

1    Accordingly, the Court DENIES Defendants' motion to dismiss the Lid and Container
2 Patent infringement claims.

### B.    Lid Trade Dress Infringement Claim

Defendants' argument for dismissal of the Lid Trade Dress infringement claim is essentially the same as its prior argument. Defendants argue there is no likelihood of confusion because any consumer would instantly distinguish a standalone lid from a complete shaker bottle and lid. (ECF No. 111-1 at 11–12.) Defendants again raise arguments about how Defendants' products are packaged and sold, with citations to evidence outside the SAC. (*Id.* at 13.) In opposition, Plaintiff argues the SAC includes images of infringing Hydra Cup lids sufficient to state a plausible claim and put Defendants on notice of what products are accused of infringement. (ECF No. 122 at 13.)

A product's trade dress is "its total image and overall appearance; it includes 'features such as size, shape, color, color combinations, texture, or graphics.'" *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1044 n.2 (9th Cir. 1998) (citation omitted). To state a claim for trade dress infringement, a plaintiff must establish: "(1) the trade dress is nonfunctional[;] (2) the trade dress has acquired secondary meaning[;] and (3) there is substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (citing *Disc Golf Ass'n v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir. 1998)).

Defendants' argument seems to relate only to the third element — the likelihood of confusion. "Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) (citation omitted). Likelihood of confusion is "the most important element" of trade dress inquiry, and the "ultimate issue is [ ] inherently factual." *Id.* at 1264–65. "The factual elements that make up likelihood of confusion include evidence of actual confusion, the defendant's intent in adopting the mark, similarity of marks, similarity of goods and marketing channels, and the strength of the mark." *Id.* at 1265.

1           Defendants do not address any of the above listed factors.  Instead, Defendants broadly
2   argue the Lid Trade Dress, which only relates to the lid portion of the product, is distinguishable
3   from Defendants' complete shaker bottles, which include lids and bottles.  (ECF No. 111-1 at 11–
4   13.)  However, Defendants fail to persuade the Court that the lids on the accused products cannot
5   infringe on the Lid Trade Dress merely because they are attached to bottles in the photographs
6   provided in the SAC.  Defendants cite various cases for general legal propositions, but
7   Defendants fail to engage in meaningful analysis of those cases.  (*Id.* at 12.)  Further, Defendants
8   improperly raise arguments about how the accused products are packaged and sold, including
9   screenshots from Amazon.com, which are not alleged in the SAC.  (*Id.* at 13.)  In the SAC,
10  Plaintiff includes pictures of the Lid Trade Dress and allegedly infringing products that include
11  lids that look substantially similar to the Lid Trade Dress.  (ECF No. 102 at 27–28.)  For similar
12  reasons discussed in the context of the Lid and Container Patents, the Court declines to resolve
13  this highly factual question on a motion to dismiss, especially considering the subpar arguments
14  from Defendants on this issue.
15          Therefore, the Court DENIES Defendants' motion to dismiss the Lid Trade Dress
16  infringement claim.
17                          C.      Bottle Patent Infringement Claim
18          Defendants argue the Court should dismiss the Bottle Patent infringement claim because
19  the Bottle Patent expired on October 4, 2019, prior to when Defendants sold the allegedly
20  infringing products.  (ECF No. 111-1 at 14.)  To support this proposition, Defendants cite a
21  declaration from Raymus and screenshots from Amazon.com.  (*Id.* at 14 n.3.)  In opposition,
22  Plaintiff argues Defendants improperly rely on outside evidence and raise a factual dispute not
23  appropriate for resolution at the pleading stage.  (ECF No. 122 at 13.)
24          The Court agrees with Plaintiff.  It is improper to consider evidence outside the SAC to
25  resolve the motion to dismiss.  *See Schneider*, 151 F.3d at 1197 n.1.  Further, Defendants fail to
26  cite any authority to support their argument that Plaintiff must allege a specific date or timeframe
27  of the infringement.  (ECF No. 111-1 at 14–15.)  As such, the Court DENIES Defendants' motion
28  to dismiss the Bottle Patent infringement claim.

D. <u>Secondary Meaning</u>

Defendants' fourth and fifth arguments, which the Court will address together, both challenge whether Plaintiff sufficiently alleges its trade dresses have acquired secondary meaning — the second element of a trade dress infringement claim. *See Art Attacks Ink, LLC*, 581 F.3d at 1145. The Court will first address whether there are sufficient factual allegations as to this element and then whether it is possible for Plaintiff to establish secondary meaning when Plaintiff also held patents for the designs.

"[A] mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning." *Clicks Billiards, Inc.*, 251 F.3d at 1262. "The trade dress of a product or service attains secondary meaning when the purchasing public associates the dress with a particular source." *Id.* (citation omitted). "Whether a particular trade dress has acquired secondary meaning is a question of fact." *Id.* (citation omitted).

As to the sufficiency of the allegations, Defendants contend there are only allegations about secondary meaning for the Bottle Trade Dress and insufficient allegations for Plaintiff's other trade dress claims. (ECF No. 111-1 at 19–20.) In opposition, Plaintiff cites multiple allegations in the SAC about products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and Label Trade Dress being sold worldwide, receiving considerable media attention, and being extensively advertised. (ECF No. 122 at 16 (citing ECF No. 102 at ¶¶ 31–36).) Plaintiff also cites allegations in the SAC about the Lid Trade Dress and Agitator Trade Dress being registered, which Plaintiff argues creates a presumption that those trade dresses have acquired secondary meaning. (*Id.* (citing ECF No. 102 at ¶¶ 16, 23; *U.S. Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. 549, 552 (2020); 15 U.S.C. § 1052).) Lastly, Plaintiff argues the Label Trade Dress is inherently distinctive. (*Id.* (citing ECF No. 102 ¶ 27).) Defendants do not cite any authority on the sufficiency of Plaintiff's allegations in their motion, nor do they respond to Plaintiff's arguments in their reply. Absent meaningful argument from Defendant or any authority to the contrary, the Court concludes Plaintiff plausibly alleges all four of the trade dresses have acquired secondary meaning.

///

1    Next, Defendants argue it is impossible for Plaintiff to develop secondary meaning for its
2 asserted trade dresses because the same designs were protected from competition by design and
3 utility patents. (ECF No. 111-1 at 17.) The only case Defendants cite in support of this argument
4 is *Application of Honeywell, Inc.*, 532 F.2d 180, 181 (C.C.P.A. 1976), which Defendants quote
5 without providing any context about the case. (ECF No. 111-1 at 17.) In *Honeywell*, the court
6 denied the registration of a trademark for a portion of a configuration of a thermostat because
7 those characteristics were "functional or utilitarian features of thermostat covers per se." 532
8 F.2d at 182. In opposition, Plaintiff correctly points out that *Honeywell* did not discuss whether
9 secondary meaning can be developed while a design patent covers the alleged design. (ECF No.
10 122 at 15.) Accordingly, the Court finds Defendants' arguments based on *Honeywell* to be
11 unpersuasive.
12    In addition, Defendants argue Plaintiff is attempting to rob the public domain by
13 manipulating the patent system to purchase federal trade dresses to effectively secure perpetual
14 patents. (ECF No. 111-1 at 18.) Defendants cite *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111
15 (1938), and *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166 (1989). (*Id.*)
16 However, as with their deficient arguments about *Honeywell*, Defendants fail to engage in
17 meaningful analysis of *Kellogg* or *Bonita Boats*, and it is unclear to the Court how either case
18 supports Defendants' argument. As such, the Court finds Defendants' sweeping arguments based
19 on *Kellogg* and *Bonita Boats* to be unpersuasive. In contrast, Plaintiff cites several cases that
20 support the proposition that design patent and trade dress can provide dual protection. (ECF No.
21 122 at 15.) For example, in *Application of Mogen David Wine Corp.*, 328 F.2d 925, 930
22 (C.C.P.A. 1964), the court stated,

> In our opinion, trademark rights, or rights under the law of unfair competition, which happen to continue beyond the expiration of a design patent, do not 'extend' the patent monopoly. They exist independently of it, under different law and for different reasons. The termination of either has no legal effect on the continuance of the other.

27    Accordingly, the Court DENIES Defendants' motion to dismiss based on secondary
28 meaning.

E. <u>Unfair Competition Claim</u>

Defendants argue the California unfair competition claims based on the same alleged conduct underlying Plaintiff's federal claims should be dismissed for the same reasons as Plaintiff's federal claims. (ECF No. 111-1 at 20.) Defendants also argue Plaintiff fails to allege facts to plausibly satisfy the heightened elements of passing off, prior rights, and confusion required for California unfair competition claims. (*Id.* at 21.) In opposition, Plaintiff argues Defendants' derivative argument fails and it is well-established that trademark infringement can constitute unfair competition. (ECF No. 122 at 18.)

The Court agrees with Plaintiff. California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (citation omitted); *see also Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) ("The 'ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.'") (citation omitted). Defendants cite three cases in a footnote to support their argument that the California Unfair Competition claims are subject to a heightened pleading standard. (ECF No. 111-1 at 20–21.) Defendants fails to engage in meaningful discussion of those cases, and the Court declines to consider them.

Therefore, the Court DENIES Defendants' motion to dismiss the California unfair competition claims.

F. <u>Raymus's Personal Liability</u>

Lastly, Defendants argue Plaintiff fails to allege facts showing Raymus can be held personally liable for the alleged acts of Hydra Cup based on piercing the corporate veil. (ECF No. 111-1 at 21.) Defendants heavily rely on excerpts from Raymus's deposition transcript to support their arguments. (*Id.* at 22–24.) In opposition, Plaintiff contends Defendants cite evidence beyond the Complaint and request the Court resolve factual disputes, which is improper

14

at the pleading stage. (ECF No. 122 at 18.) Plaintiff also contends it sufficiently pleads that Raymus personally undertook infringing acts and was the driving force behind Hydra Cup's infringement. (*Id.*)

"A corporate officer who is the moving, active, conscious force behind a corporation's infringing activity is subject to personal liability — without regard to alter ego liability." *Mophie, Inc. v. Shah*, No. SACV1301321DMGJEMX, 2014 WL 10988339, at *2 (C.D. Cal. July 24, 2014) (citing *Int'l Mfg. Co. v. Landon, Inc.*, 336 F.2d 723, 729 (9th Cir. 1964)). Moreover, "[a]n officer or sole owner of a corporation is ordinarily the moving force of the corporation's infringing activity, and thus can be held personal[ly] liable." *Id.* (citations omitted).

The Court agrees with Plaintiff that there are sufficient allegations to hold Raymus personally liable for his own acts. Plaintiff alleges Raymus testified he is the sole employee of Hydra Cup and that he is "in charge" of Hydra Cup as the owner and CEO. (ECF No. 102 at ¶ 59.) Plaintiff further alleges Raymus testified that he was responsible for certain modifications of the designs of the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lids and that he was responsible for the selection and subsequent commercialization of the Hydra Cup Shaker Bottles and Hydra Cup Shaker Bottle Lids, as well as the infringing agitators and labels. (*Id.* at ¶ 58.) Lastly, Plaintiff alleges Raymus testified that he personally directs and is the driving force behind all the decisions to infringe Plaintiff's intellectual property rights. (*Id.* at ¶ 60.) Notably, Defendants fail to respond these allegations or Plaintiff's arguments on this issue in their reply. Based on the limited argument before the Court, the Court finds these allegations are sufficient to establish that Raymus is personally liable as the "moving, active, conscious force" behind Hydra Cup's infringing activity. *See Mophie, Inc.*, 2014 WL 10988339, at *2.

As such, the Court DENIES Defendants' motion to dismiss based on Raymus's personal liability.

///

///

///

///

**IV.   CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss. (ECF No. 111.) The Court will address the remainder of the pending motions in this case in future orders.

IT IS SO ORDERED.

Date: March 10, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE